

**Phone:** (718) 971-9474| **Fax:** (718) 865-0943| **Email:** Jonathan@Shalomlawny.com
**Office:** 105-13 Metropolitan Avenue Forest Hills, New York 11375

**VIA ECF & E-MAIL**                                                                 October 4, 2021

United States District Court
Southern District of New York
<u>Attn</u>: Gregory H. Woods, U.S.D.J.
500 Pearl Street, Courtroom 12C
New York, NY 10007-1312
woodsnysdchambers@nysd.uscourts.gov

Re:    Molina v. Hornblower Group, Inc., *et al.*
       Case No.: 1:20-cv-10821 (GHW) (OTW)
       Opposition to Defendants' Letter Motion for Pre-Motion Conference re Summary Judgment

Dear Judge Woods:

This office represents the Plaintiff in the above-referenced case. Plaintiff writes to oppose Defendants' letter motion for a pre-motion conference in anticipation of their motion for summary judgment. Defendants argue that summary judgment should be granted on the grounds that Plaintiff was not disabled within the meaning of the Americans with Disabilities Act (hereinafter the "ADA"), the New York State Human Rights Law (hereinafter the "NYSHRL"), New York City Human Rights Law (hereinafter the "NYCHRL"), and that, notwithstanding, Defendants' decision to terminate Plaintiff was made for legitimate, non-discriminatory reasons. Both arguments are meritless.

      i.     <u>Plaintiff was disabled within the meaning of the law.</u>

The ADA defines a disability as any of the following: (i) a physical or mental impairment that substantially limits one or more major life activities of an individual (that is, an actual disability); (ii) a record of this kind of impairment; or (iii) being regarded as having such an impairment. <u>See</u> 42 U.S.C. § 12102(1); <u>see</u> <u>also</u> 29 C.F.R. § 1630.2(g)(1).

Here, Plaintiff has adequately alleged and the discovery has shown that he had an actual disability and was unable to walk, stand, or sit for long periods of time, rendering him disabled and incapable of working after he suffered an on-the-job injury. <u>See</u> 42 U.S.C. § 12102(2)(A); see also 29 C.F.R. § 1630.2(i)(1)(i). Indeed, the regulations under the ADA Amendments Act of 2008 ("ADAAA") provide nine (9) rules of construction to help employers assess whether an impairment substantially limits a major life activity. <u>See</u> 29 C.F.R. § 1630.2(j)(1)(i)-(ix); <u>see also</u> <u>Parada v. Banco Indus. De Venezuela, C.A.</u>, 753 F.3d 62 (2d Cir. 2014).

As set forth above and in his complaint, here, Plaintiff worked for the Defendants for over a year until on or about March 14, 2020, when he was injured by a large piece of equipment that fell out of a truck onto his left foot while he was unloading the truck for an event. See Compl., Docket Entry 1, at ¶¶ 20-23. Plaintiff's left foot was crushed and he fractured his left toe; the injury caused him intense pain throughout the rest of his shift such that he sought medical attention for weeks after. Id. at ¶¶ 23-24. He was instructed by his health care providers to *refrain from putting weight on his left foot or ankle such that he was unable to engage in major life activities such as walking, standing, or sitting.* Id. at ¶ 25 (emphasis added). Defendants were on notice of Plaintiff's injuries on the same date that it occurred. Id. at ¶¶ 26-27; see also Id. at ¶¶ 28-30 (detailing further medical attention received by Plaintiff and notice of injury and disability to Defendants). In fact, Plaintiff produced in the course of discovery medical documentation which Defendants had already received from the Plaintiff during the time he was out of work due to his injury supporting the allegations in his complaint. See MOLINA004-MOLINA005, MOLINA019-MOLINA027 (not attached hereto).

Accordingly, there is no credence to Defendants' assertion that Plaintiff was not disabled within the meaning of the law. At best, there is an issue of fact as to whether Plaintiff was disabled within the meaning of the law, which renders Defendants' anticipated motion for summary judgment an unnecessary burden on judicial resources.

    ii.    <u>Defendants had an obligation to comply with the law despite COVID-19.</u>

Defendants' second purported basis for entitlement to summary judgment is that the decision to terminate Plaintiff was made for legitimate, non-discriminatory reasons. Curiously, a thorough examination of Defendants' letter motion leaves Plaintiff clueless as to what such reasons exist; Defendants do not provide any basis for their assertion.

Notwithstanding, it is anticipated Defendants will argue that the pandemic was the cause of Plaintiff's termination.[1] This argument fails and is not supported by the law.

---

[1] In a joint letter filed with the Court on March 23, 2021, Defendants asserted that "*[o]n March 17, 2020, plaintiff was placed on furlough, along with the vast majority of other Hornblower employees, as a consequence of the COVID-19 health emergency.* Like many other businesses in the New York City metropolitan area at that time, Hornblower was *forced to shut down its business operations in response to the COVID-19 pandemic, the declared state of emergency, and the social distancing restrictions and guidelines flowing therefrom.* As an employer in the hospitality industry, Hornblower has been particularly adversely impacted and, regrettably, the majority of its business operations in New York City remain shuttered to date. *After an approximate two-month furlough period, plaintiff - as well as the vast majority of other similarly situated Hornblower employees - was notified in writing that his employment was being terminated as part of a corporate restructuring and reduction in workforce that was necessitated due to COVID-19 and the resulting business conditions, which were not reasonably foreseeable.* None of these legitimate business considerations and employment decisions were made for any reason even remotely relating to plaintiff's alleged disability, and such decisions were by no means retaliatory in nature or practice. As such, plaintiff's claims herein are not actionable. See Docket Entry 23 at 2 (emphasis added).

An employer's obligation to provide a reasonable accommodation is triggered by notice of a disability.  See Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008).  Here, the complaint pleads that Plaintiff's supervisor sent Plaintiff to urgent care following his injury and that the Plaintiff then routinely submitted medical records from his health care providers indicating that he is unable to return to work; this triggered Hornblower's duty to provide a reasonable accommodation.  Indeed, even if Plaintiff himself did not actually request a reasonable accommodation, because Defendants *knew* of his disability, they were required to engage in an interactive process with the Plaintiff to determine the nature and extent of his disability in order to attempt to fashion a reasonable accommodation.  See United States Equal Employment Opportunity Commission ("EEOC"): Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, Question 40.[2]  The interactive process required involves an informal practice in which the Plaintiff and the Defendants would determine the precise limitations created by the disability and how best to respond to the need for accommodation.  See 29 C.F.R. § 1630.2(o)(3).  Defendants failed to comply with the law.

In this case, the Defendants could have easily provided Plaintiff with a reasonable accommodation in the form of unpaid leave.  See 29 C.F.R. § 1630.2(o)(2) and 29 C.F.R. § Pt. 1630, App; see also Graves v. Finch Pruyn & Co., 457 F.3d 181, 185 n.5 (2d Cir. 2006) ("Most other circuits and the Equal Employment Opportunity Commission have concluded that, in some circumstances, an unpaid leave of absence can be a reasonable accommodation under the ADA").  Indeed, the reasonable accommodation of an unpaid leave of absence would have created no hardship for Defendants.  Crucially, the corona virus and its attendant shutdown Orders cannot serve to establish hardship.  Indeed, the EEOC issued guidance that demonstrably eliminates any question that the pandemic and its effects somehow alleviate the employer's obligations under the ADA.  See EEOC: What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (For example, even under current circumstances, there may be many no-cost or very low-cost accommodations").[3]

Here, Defendants failed to even engage in an interactive process with the Plaintiff and summarily fired him despite the fact he was entitled to job-protected leave, and as set forth above, the pandemic provides no shelter to the Defendants in the dereliction of their duties under the statutory obligations posed on them because unpaid leave is a no-cost accommodation.  As such, Plaintiff will prevail on his claim and the Defendants' only defense to take refuge behind the pandemic can afford them no immunity from liability.  Accordingly, Defendants' letter motion for a pre-motion conference should be denied and this case should move forward to trial instead.  Plaintiff thanks this honorable Court for its time and attention to this case.

                                      Respectfully submitted,
                                      /s/ *Jonathan Shalom*
                                      *Attorneys for Plaintiff*

---

[2]  https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#other

[3] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws