GORDON REES SCULLY MANSUKHANI, LLP
Michael J. Schacher, Esq. (MS-3434)
Attorneys for Defendants
500 Mamaroneck Ave Suite 503
Harrison, NY 10528
T: (914) 777-2237

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X **FILED VIA ECF**

| | |
|---|---|
| LENNY MOLINA, | Civil No.: 1:20-cv-10821-GHW |
| Plaintiff, | **ATTORNEY CERTIFICATION OF MICHAEL J. SCHACHER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND TO EXCLUDE ANY EXPERT TESTIMONY AND/OR EVIDENCE** |
| -against- | |
| HORNBLOWER GROUP, INC., HORNBLOWER NEW YORK, LLC and HORNBLOWER CRUISES AND EVENTS, LLC, | |
| Defendants. | |

---------------------------------------------------------------- X

MICHAEL J. SCHACHER, ESQ., being duly admitted to practice before the United States District Court, Southern District of New York and the Courts of the State of New York, affirms, certifies and says the following under penalty of perjury:

1.  I am an associate with the firm of GORDON REES SCULLY MANSUKHANI, LLP, attorneys for defendants, HORNBLOWER GROUP, INC., HORNBLOWER NEW YORK, LLC and HORNBLOWER CRUISES AND EVENTS, LLC (hereinafter collectively "Hornblower" or "moving defendants"), and as such, I am fully familiar with the facts, circumstances and procedural history heretofore had herein.

2.  This Certification is respectfully submitted in support of moving defendants' motion for an Order: 1) granting Summary Judgment and Complete Dismissal of plaintiff's Complaint, pursuant to Rule 56 of the Federal Rules of Civil Procedure; 2) precluding and excluding

any expert testimony and/or evidence offered by plaintiff at the time of trial, or in opposition to the instant motion in accordance with Individual Rule 3F and pursuant to Rules 26(a)(2)(B), 26(a)(2)(C), 26(a)(2)(D) and 37(c)(1) of the Federal Rules of Civil Procedure; together with such other, further or different relief, which this Honorable Court may deem just and proper. Civil Procedure, and for such other and further relief as this Honorable Court deems just and proper.

3. Annexed hereto as **Exhibit "A"** is a true and correct copy of plaintiff's Summons and Complaint, filed on December 22, 2020.

4. Annexed hereto as **Exhibit "B"** is a true and correct copy of moving defendants' Verified Answer to plaintiff's Complaint, filed on March 16, 2021.

5. Annexed hereto as **Exhibit "C"** is true and correct copies of moving defendants' Rule 26 Disclosure, which includes plaintiff's complete personnel file, which are annexed to as Exhibit "A" to defendants' Rule 26 Disclosure.

6. Annexed hereto as **Exhibit "D"** please find a true and correct copy of plaintiff's first formal disciplinary write up, specifically: Hornblower's May 15, 2019, "Documenting of Crew Coaching & Counseling Session" Form and Warning issued to plaintiff, the details of which are discussed below.

7. Annexed hereto as **Exhibit "E"**, please find a true and correct copy of plaintiff's second formal disciplinary write up, namely: Hornblower's July 5, 2019 "Disciplinary Action Form" issued to plaintiff from Executive Chef Scott Houser and Human Resources due to continued issues with plaintiff's work performance, the details of which are discussed below.

8. Annexed hereto as **Exhibit "F"** please find a true and correct copy of plaintiff's third formal disciplinary write up, specifically: Hornblower's February 24, 2020 "Disciplinary Action Form" issued to plaintiff, related to a February 7, 2020 and February 16, 2020 wedding

party incident, from Executive Chef Scott Hauser and Human Resources, the details of which are discussed below.

9. Annexed hereto as **Exhibit "G"** is a true and correct copy of Hornblower's Incident Report related to plaintiff's accident on March 14, 2020 where he allegedly injured his left big toe.

10. Annexed hereto as **Exhibit "H"** is a true and correct copy of the e-mail dated March 15, 2020, from plaintiff's Hornblower e-mail to a group e-mail, "HNY EVM Reports," wherein plaintiff's first notified Hornblower's management and Human Resources of his alleged March 14, 2020 accident and injury.

11. Annexed hereto as **Exhibit "I"** is a true and correct copy of Hornblower's furlough notification to a vast majority of Hornblower's crew, including plaintiff, titled "Notice of Furlough Effective March 17, 2020," dated and effective March 17, 2020, the details of which are discussed below.

12. Annexed hereto as **Exhibit "J"** is a true and correct copy of Hornblower's "Change in Employment Relationship" letter dated May 18, 2020 from General Manager Nilda Bracero to plaintiff, which served as plaintiff's notice of termination of his employment with Hornblower effectively immediately, the details of which are discussed below.

13. On March 30, 2021, the Court entered a Scheduling Order, wherein the Court ordered that plaintiff's expert disclosures, including expert testimony, evidence or reports, were to be served by July 30, 2021. [See Doc. No. 25]. Pursuant to FRCP 26(a)(2)(D), Hon. Gregory H. Woods' Order and associated deadline is the operative "time to disclose expert testimony." Prior to the deadline, and to the present, plaintiff has not disclosed any experts or their associated testimony, evidence or reports pursuant to FRCP 26(a)(2)(B) or 26(a)(2)(C).

14. Annexed hereto as **Exhibit "K"** is a true and correct copy of defendants' Notice of Expert Disclosure dated August 25, 2021, for their foot surgery and podiatry expert, Dr. Paul Greenberg, including his report related to his Independent Medical Examination of plaintiff. Within his expert report, Dr. Greenberg opines that as a result of the alleged accident, plaintiff sustained a common injury that healed without incident, and there is no evidence of a permanent disability or functional limitation. Id. at p. 15. Per Dr. Greenberg, further opines that patients with the type of injury sustained by plaintiff typically heal within a matter of weeks or months. Id.

15. Annexed hereto as **Exhibit "L"** is a true and correct copy of Hornblower's Co-Chief Operating Officer, Christine Metivier's Affidavit in support of the defendants' motion for summary judgment.

16. Annexed hereto as **Exhibit "M"** is a true and correct copy of Hornblower's Executive Chef Scott Hauser's Affidavit in support of the defendants' motion for summary judgment.

<u>AFFIDAVIT OF DEFENDANTS' CO-CHIEF OPERATING OFFICER CHRISTINE METIVIER:</u>

17. The Affidavit of Hornblower's Co-Chief Operating Officer, Christine Metivier (COO Metivier), dated December 27, 2021, is annexed hereto as **Exhibit "L"**. COO Metivier states in her affidavit she is currently the Co-Chief Operating Officer for Hornblower, and that she is aware of plaintiff's allegations of discrimination against Hornblower under the ADA, NYSHRL, and NYCHRL in this action. Id. at ¶¶3, 7.

18. Prior to her current position with Hornblower, COO Metivier served as Hornblower's Regional Vice President for the Northeastern United States from May of 2019 through August of 2021. Id. at ¶4. COO Metivier's duties as Regional Vice President included: 1) overseeing the New York City and Philadelphia operations including New York City's Pier 15, 40, and 61 locations; 2) overseeing the implementation of company policies and procedures related

4

to the hiring, training, furloughing and termination of employees; 3) setting budgets and business plans; 4) devising strategies to increase sales; 5) evaluating all departments' performances; 6) monitoring all departments, growth and progress, and 7) reporting to the Chief Operating Officer. Id.

19. COO Metivier notes in her affidavit that in mid-March of 2019, plaintiff was interviewed by Hornblower's Executive Chef Scott Houser for a position as PM Sous Chef for the Cruise Gallery Department for Hornblower's New York City Pier 15 and 40 locations. Id. at ¶8. Following Executive Chef Scott Houser's interview and a review of plaintiff's resume and references, he requested the authority from Hornblower's Human Resources Department to hire plaintiff for the above mentioned position. Id. at ¶9. Subsequently, Hornblower's Human Resources Department also reviewed plaintiff's resume and references, and following plaintiff passing a drug test and background check, Human Resources approved Executive Chef Scott Houser's request to hire plaintiff as a PM Sous Chef. Id. at ¶9.

20. Per COO Metivier's affidavit, plaintiff began his position as PM Sous Chef on March 27, 2019. Id. at ¶10. Upon plaintiff's hiring, Executive Chef Scott Houser began to serve as plaintiff's supervisor at Hornblower. Id. at ¶11. Upon his hiring, plaintiff was required to review multiple Hornblower documents, including, but not limited to: 1) a New Hire Package; 2) Job Description (including a "Duties and Responsibilities" and "Competencies" sections); 3) Job Description Acknowledgement Form and an Acknowledgement of Policies Form; and 4) and Hornblower's Crew Handbook. Id. at ¶12.

21. Within her affidavit, COO Metivier discusses the sum and substance of: 1) plaintiff's first disciplinary write up from Hornblower, namely, his May 15, 2019 "Documenting of Crew Coaching & Counseling Session" Form and Warning; 2) plaintiff's second disciplinary

write up from Hornblower, specifically, his July 5, 2019 "Disciplinary Action Form"; and 3) plaintiff's third disciplinary write up from Hornblower, namely, his February 24, 2020 "Disciplinary Action Form," the details of which are discussed below. Id. at ¶¶13-16.

22. COO Metivier states in her affidavit that she is aware of plaintiff's alleged injury during a Hornblower work shift on March 14, 2020. Id. at ¶11. COO Metivier states in her affidavit that she received notification of plaintiff's alleged injury on March 15, 2020 via e-mail. Id. at ¶18.

23. Within her affidavit, COO Metivier states in her affidavit that just two (2) days after receiving notification of plaintiff's alleged accident, a vast majority of Hornblower's salaried crew at Piers 15, 40 and 61, including plaintiff and his supervisor Executive Chef Scott Hauser, were furloughed due to onset of the Covid-19 pandemic. Id. at ¶19. COO Metivier notes in her affidavit that she signed a "Notice of Furlough" dated March 17, 2020, which was sent to all Hornblower crew members, including the plaintiff, regarding their furlough effective immediately. Id. at ¶20. COO Metivier's affidavit discusses the substance of Hornblower's "Notice of Furlough" letter, indicating that the furlough was due to the uncertainty surrounding the Covid-19 situation which had caused unprecedented challenges that were affecting Hornblower's business. Id.

24. Per COO Metivier affidavit, Hornblower's "Notice of Furlough" was not a termination of employment. Id. at ¶21. Further, the Notice of Furlough discussed the continued payment to employees, Hornblower's payment of health insurance costs, and further assistance that would be provided to Hornblower's employees, including to plaintiff. Id. at ¶¶21-23.

25. COO Metivier further notes in her affidavit that the decision to furlough a vast majority of Hornblower's crew members at New York City's Piers 15, 40 and 61, including plaintiff and his supervisor Executive Chef Scott Hauser, was based on the unprecedented Covid-

6

19 pandemic and its direct results, including resulting governmental restrictions (including the Executive Orders passed by then Governor Andrew Cuomo), which significantly impacted Hornblower's ability to operate their business.  Id. at ¶25.

26. COO Metivier further states in her affidavit that placing plaintiff on a furlough had absolutely nothing to do with his alleged left big toe injury three (3) days prior to the issuance of the Notice of Furlough, and only related to the onset of Covid-19 pandemic and its resulting constraints of Hornblower's operations, specifically, preventing Hornblower from operating its cruises from Piers 15, 40 and 61.  Id. at ¶¶26, 35.

27. Pursuant to COO Metivier's affidavit, in mid-May of 2020, due to the direct impacts of Covid-19, Hornblower made the difficult decision to terminate a substantial part of their crew staff at their Pier 15, 40, and 61 locations, including plaintiff.  Id. at ¶27.  Hornblower selected the less exemplary workers for termination at that time.  Id.

28. COO Metivier notes in her affidavit that on May 18, 2020, Hornblower's General Manager Nilda Bracero sent the plaintiff a "Change in Employment Relationship" letter, which served as plaintiff's notice of termination of his employment with Hornblower effectively immediately.  Id. at ¶29.  The termination letter, which is annexed to COO Metivier's affidavit, also indicates that although plaintiff termination was effective on May 18, 2020, his medical, dental, vision, or other insurance coverage through Hornblower would end on May 31, 2020, and how he could obtain health insurance thereafter.  Id. at ¶¶30-31.  In fact, COO Metivier states in her affidavit that plaintiff continued to be paid by Hornblower up until May 17, 2020 and he received health insurance through May 31, 2020.  Id. at ¶24.

29. With respect to crew terminations, COO Metivier notes in her affidavit that the May 18, 2020 "Change in Employment Relationship" letter notes Hornblower "is restructuring and

reducing its workforce in response to Covid-19 and resulting business circumstances that were not reasonably foreseeable." Id. at ¶30.  Human Resources drafted the Change in Employment Relationship letter and COO Metivier confirmed its authenticity with her affidavit. Id.  Per COO Metivier, in August of 2020, Hornblower made the difficult decision to terminate all but a relatively small portion of the remaining Pier 15 and 40 crew.  Id. at ¶30. This included the termination of plaintiff's supervisor Executive Chef Scott Hauser.  Id.

30.    Notably, within her affidavit, COO Metivier states in her affidavit that the decision to involve plaintiff in the employee terminations on May 18, 2020, was solely a non-discriminatory, legitimate business decision, due to the above three (3) write-ups plaintiff received and not due to his alleged left toe injury, disability or in retaliation resulting from his March 14, 2020 alleged accident.  Id. at ¶32.  Further, COO Metivier states in her affidavit that the indication from Hornblower's Food and Beverage Director Mark Steiner and Human Resources was that plaintiff was an inconsistent and below average worker during his employment with Hornblower. Id.  COO Metivier states in her affidavit that Hornblower's Food and Beverage Director Mark Steiner and Human Resources provided her with multiple examples of plaintiff's ongoing performance issues during his employment with Hornblower, which supported the decision to terminate plaintiff in May of 2020.  Id. at ¶32.

31.    Within her affidavit, COO Metivier states in her affidavit that Hornblower made the decision to not include the four (4) other Sous Chefs employed at Piers 15, 40 and 61 in the May 2020 terminations because those Sous Chefs' performance levels were significantly higher than plaintiff's.  Id. at ¶33.  COO Metivier further states in her affidavit that she personally reviewed the four (4) other Sous Chefs' employment files, and they revealed they were outstanding employees and did not have any Counseling Sessions or Disciplinary Action write ups, unlike the

plaintiff who had one (1) Counseling Sessions and two (2) Disciplinary Action write-ups and had demonstrated an unsatisfactory work performance. Id.

32. With respect to Hornblower's crew terminations in May of 2020, COO Metivier states in her affidavit that Hornblower's crew terminations in May of 2020 were a direct result of the unprecedented Covid-19 pandemic, including the resulting governmental restrictions (including the Executive Orders passed by then Governor Andrew Cuomo), and the resulting economic and business constraints. Id. at ¶34.

33. Specifically, within COO Metivier's affidavit she states in her affidavit that between the date of plaintiff's furlough in March 2020 and his layoff in May 2020, Hornblower was not operating any of the cruises that were supported by the Pier 15, 40 and 61 crew, due to the Covid-19 pandemic. Id. at ¶35. As such, per COO Metivier, there was no need for plaintiff's services as a PM Sous Chef, and there were no comparable temporary positions in any other of Hornblower's Departments for plaintiff to serve in during that time. Id. Further, COO Metivier states in her affidavit that training plaintiff in different field or department, such as Human Resources or IT, would have been nonsensical and placed a burden on Hornblower, considering he had no experience. Id.

34. COO Metivier also states in her affidavit that during plaintiff's furlough, he had the ability to email multiple Human Resources mailboxes (EC People mailbox, HCE payroll mailbox, HRHCE mailbox). Id. at ¶35. However, following his receipt of the Notice of Furlough, per COO Metivier's affidavit, Hornblower has no record of plaintiff contacting Hornblower's Human Resources Department to engage in any dialogue about his March 14, 2020 injury, a return to work, and/or any request for any comparable accommodations, despite being offered to contact Human Resources in his notice of furlough letter. Id.

35.     Further, COO Metivier states in her affidavit that the Covid-19 pandemic presented unprecedented business constraints and Hornblower was forced to take extraordinary measures in regards to furloughing and subsequently terminating all but a relatively small number of employees at this worksite.  Id. at ¶37.  Moreover, per COO Metivier, Hornblower's decision to furlough, and ultimately terminate plaintiff was based on legitimate, non-discriminatory business considerations, and not based on his March 14, 2020 alleged accident and injury.  Id. at ¶38.

## AFFIDAVIT OF DEFENDANT HORNBLOWER NEW YORK, LLC'S EXECUTIVE CHEF SCOTT HAUSER

36.     The Affidavit of Hornblower's Executive Chef, Scott Hauser ("Executive Chef Hauser"), dated December 27, 2021, is annexed hereto as **Exhibit "M"**.  Executive Chef Hauser states in his affidavit that he is currently employed by the defendant, HORNBLOWER NEW YORK, LLC, as the Executive Chef for their City Experiences cruises located at 62 Chelsea Piers, Suite 200, New York, New York 10011.  Id. at ¶2.

37.     Executive Chef Hauser states in his affidavit he has held the aforesaid title since being hired by Hornblower in August of 2015.  Id. at ¶3.  As the Executive Chef for Hornblower's operations at their New York City Pier 15 and 40 locations, Executive Chef Hauser is responsible for overseeing all of the Cooking, Food Preparation, Labor Control, Menu Costing and Gourmet Menus, as well as the management of all Sous Chefs and kitchen staff at these locations in conjunction with Hornblower cruises.  Id.  Executive Chef Hauser is aware of plaintiff's allegations of discrimination against Hornblower under the ADA, NYSHRL, and NYCHRL in this action.  Id. at ¶5.

38.     Executive Chef Hauser further states in his affidavit that he interviewed plaintiff for a position as PM Sous Chef for the Cruise Gallery Department for Hornblower's New York City Pier 15 and 40 locations.  Id. at ¶6.  Following his interview and review of plaintiff's resume,

as well as his recommendation and the approval of Hornblower's Human Resources Department, Hornblower hired plaintiff as a PM Sous Chef for the Cruise Gallery Department for their Pier 15 and 40 locations.  Id. at ¶7.

39.     Executive Chef Hauser further states in his affidavit that upon plaintiff's hiring at Hornblower, he immediately began to serve a plaintiff's direct supervisor at Hornblower.  Id. at ¶7.  Executive Chef Hauser also states in his affidavit that he trained plaintiff regarding to the duties and responsibilities of a PM Sous Chef on Hornblower's vessels.  Id. at ¶8.

40.     Within his affidavit, Executive Chef Hauser details what plaintiff's duties and responsibilities as a PM Sous Chef for Hornblower were, including, but not limited to: 1) confirming food and drink stocks were sufficient prior to customers' embarking, including menu and production analysis; 2) confirming all food and drink stocks were properly refrigerated, stored and contained; 3) ensuring that all freezers and coolers (plaintiff's "pod areas") were properly temperature controlled and locked upon the vessel's docking and closing at 2:00 a.m.; 4) "closing" the pier following a night cruise at 2:00 a.m., including securing and locking all office spaces, kitchen and dock entrances and exits; 5) taking all garbage and recycling off the vessel upon docking and closing at 2:00 a.m.; 6) directing kitchen staff; 7) performing a "walk-through" of the cruise ship and pier to confirm there was no food uncovered or not refrigerated, and that there was no garbage or articles on the walkways; and 8) sending a confirmation e-mail to the supervisory staff, including myself, when the above duties were complete.  Id. at ¶11.

41.     Per Executive Chef Hauser's affidavit, in light of plaintiff's poor work performance, on May 15, 2019, he received his first disciplinary write up, namely, a "Documenting of Crew Coaching & Counseling Session" Form and  Warning due to his: 1) poor communication; 2) need to "tone down attitude to get respect from staff"; 3) failure to follow-up on menu and

production analysis; 4) hostility toward co-workers; 5) "needs to tone it down around staff"; 6) failure to walk-through and follow-up with staff; and 7) need to direct staff better. Id. at ¶11. Executive Chef Hauser further states in his affidavit that the May 15, 2019 Form and Warning also notes plaintiff needed to discuss a training schedule with him. The Form and Warning noted "continuance of improper conduct may result in harsher disciplinary action, up to and including suspension and dismissal." Id. Executive Chef Hauser states in his affidavit the May 15, 2019 Form is signed by himself and plaintiff, and is annexed to his affidavit. Id.

42. With respect to plaintiff's continued issues with work performance, Executive Chef Hauser states in his affidavit that on July 5, 2019, plaintiff received his second disciplinary write up, specifically a "Disciplinary Action Form" from himself and Human Resources. Id. at ¶14. Executive Chef Hauser states that per the Form, the plaintiff was again formally written up for "Unsatisfactory Performance" and "Violation of Company Policies/Procedures." Id. In the description of the violation the Form notes: "employee (plaintiff) did not conduct a proper walk through when closing their assigned vessel leaving behind a tray of salad and watermelon." Id. Executive Chef Hauser states in his affidavit that plaintiff was given a warning and that the consequences should an incident occur again would be probation. Id. Executive Chef Hauser further states in his affidavit that the Form, which is annexed to his affidavit, was signed by himself and plaintiff on June 17, 2019, and by a representative from Human Resources (Bryan Miranda) on July 19, 2019. Id.

43. Thereafter, Executive Chef Hauser states in his affidavit that on February 24, 2020, plaintiff received a third disciplinary write up, namely, a "Disciplinary Action Form" from himself and Human Resources. Id. at ¶15. Per Executive Chef Hauser, the type of violation was noted as "Unsatisfactory Performance." Id. A description of the violation notes that, "on 2/7 (plaintiff) did

not plan accordingly.  Salmon was not ready on time.  He did not check vessel or work order to make sure items on, no milk.  On 2/16 no chocolate, cake or (illegible) - order on manifest – see attached." Id.  Executive Chef Hauser states in his affidavit plaintiff was given a warning, and notified that another incident would result in his suspension.  Executive Chef Hauser further states in his affidavit that the Form, which is annexed to his affidavit, was signed by himself and plaintiff on February 24, 2020, and was signed by Food & Beverage Director, Luigi Dioge on February 25, 2020.  Id.

44. With respect to plaintiff's job performance at Hornblower, Executive Chef Hauser states in his affidavit that the May 15, 2019 counseling session, and the July 5, 2019 and February 24, 2020 Disciplinary Action Forms were part of plaintiff's ongoing performance issues during his employment with Hornblower. Id. at ¶16.  Specifically, within his affidavit, Executive Chef Hauser states in his affidavit that during his employment with Hornblower as a Sous Chef, plaintiff was a subpar worker, and states in his affidavit that plaintiff would often: 1) not confirm food and drink stocks were sufficient prior to customers' embarking, and not conduct a proper menu and production analysis; 2) not confirm all food and drink stocks were properly refrigerated, stored and contained; 3) not confirm that all freezers and coolers (plaintiff's "pod areas") were properly temperature controlled and locked upon docking and closing at 2:00 a.m.; 4) not perform an adequate "closing" of the pier following a night cruise at 2:00 a.m., including failing to lock all offices spaces, kitchen, and dock entrances; 5) fail to take all garbage and recycling off the vessel upon docking and closing at 2:00 a.m.; 6) inefficiently direct the kitchen staff; 7) not perform an adequate "walk-through" of the cruise ship and pier to confirm there was no food uncovered or not refrigerated, and that there were no garbage or articles on the walkways; and 8) failed to send an confirmation e-mail to the supervisory staff when the above duties were complete.  Id.

45. Executive Chef Hauser states in his affidavit that he was aware plaintiff was allegedly injured during a Hornblower work shift on March 14, 2020 at 3:30 pm., when he was lifting a Cambro food cart from a van and the Cambro food cart tipped over and fell on his left foot. Id. at ¶17. Executive Chef Hauser also notes in his affidavit he did not witness the alleged accident, and was made aware of same via an email he received from plaintiff on March 15, 2020. Id. at ¶18.

46. Executive Chef Hauser states in his affidavit that due to the impact of Covid-19, on March 17, 2020, a mere two (2) days later, a majority of Hornblower's salaried crew at Piers 15, 40, and 61 including himself and Mr. Molina, were furloughed. Id. at ¶19.

47. Executive Chef Hauser also notes in his affidavit that prior to the March 17, 2020 furlough, he also supervised four (4) other Sous Chefs at Hornblower's Pier 15, 40 and 61 locations, specifically, Sous Chefs Roschan Sealey, Orif Vahobov, Earnie Carrasquillo and Ayana Hogg. Per Executive Chef Hauser under his supervisor, the four (4) other above Sous Chefs were exemplary employees and did not have any work related issues giving rise to verbal or written warnings, unlike the plaintiff who had multiple issues with his work performance and received several verbal and written warnings.

48. Put simply, the affirmations and evidence in record, coupled with the accompanying Memorandum of Law, eliminates any legitimate dispute as to whether moving defendants are entitled to Summary Judgment and, therefore, Summary Judgment and complete dismissal of plaintiff's Complaint should be entered in favor of the moving defendants pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Further, due to plaintiff's failure to disclose any expert, including any expert evidence, report or testimony, by the Court's July 30, 2021 deadline, the Court should enter an Order precluding and excluding any expert testimony and/or

evidence offered by plaintiff at the time of trial, or in opposition to the instant motion in accordance with Individual Rule 3F and pursuant to Rules 26(a)(2)(B), 26(a)(2)(C), 26(a)(2)(D) and 37(c)(1) of the Federal Rules of Civil Procedure; together with such other, further or different relief, which this Honorable Court may deem just and proper.

**WHEREFORE**, by virtue of the reasons set forth herein, as well as in the accompanying Memorandum of Law and Rule 56.1(a) Statement, it is respectfully submitted that moving defendants' Motion for Summary Judgment and Motion to Exclude any expert testimony and/or evidence, should, in all respects, be granted. I hereby certify that the foregoing statements made by me are true.

Dated: Harrison, New York
December 29, 2021

Respectfully Submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

By: _____

Michael J. Schacher, Esq.
Attorneys for Defendants
HORNBLOWER GROUP, INC.,
HORNBLOWER NEW YORK, LLC and
HORNBLOWER CRUISES AND
EVENTS, LLC
500 Mamaroneck Ave Suite 503
Harrison, NY 10528
T: (914) 777-2237
File No.: EVR-1224573

**Via: CM/ECF**

TO: Jonathan Shalom, Esq.
SHALOM LAW PLLC,
Attorneys for Plaintiff
105-13 Metropolitan Avenue
Forest Hills, New York 11375
T: (718) 971-9474