UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X **FILED VIA ECF**

LENNY MOLINA,                                          Civil No.: 1:20-cv-10821-GHW

                Plaintiff,

   -against-

HORNBLOWER  GROUP,  INC.,  HORNBLOWER
NEW YORK, LLC and HORNBLOWER CRUISES
AND EVENTS, LLC,

                Defendants.

-------------------------------------------------------------- X

### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION FOR
### SUMMARY JUDGMENT AND TO EXCLUDE ANY EXPERT TESTIMONY AND/OR
### <u>EVIDENCE</u>

<br>

Michael J. Schacher, Esq. (MS-3434)
GORDON REES SCULLY
MANSUKHANI, LLP
500 Mamaroneck Ave, Suite 503
Harrison, New York 10528
(914) 777-2237

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

STATEMENT OF FACTS ........................................................................................................ 1

      a)    Plaintiff's Hiring and Substandard Work Performance at Hornblower.................. 2

      b)    The Subject Accident ................................................................................................ 3

      c)    Plaintiff's Non-Discriminatory Furlough and Termination .................................. 3

SUMMARY OF THE ARGUMENT .................................................................................... 6

DISCUSSION ........................................................................................................................ 7

      A.    Standard for Summary Judgment ............................................................................ 7

      B.    Interpretation of Applicable Law under the ADA, NYSHRL & NYCHRL.......... 7

      C.    The Courts' "Major Life Activity" Standard & Analysis ...................................... 9

      D.    The Courts' "Reasonable Accommodation" Standard & Analysis ...................... 10

      E.    The NYCHRL Standard & Analysis....................................................................... 12

      F.    A Broken Toe does not Qualify as a Disability under the ADA, NYSHRL
            or NYCHRL............................................................................................................. 13

      G.    The Burden Shifting Framework ............................................................................ 15

      H.    Plaintiff Lenny Molina's Alleged Broken Big Toe Does not Qualify as a
            Disability under the ADA, NYSHRL, or the NYCHRL ...................................... 17

      I.     Assuming *Arguendo* Plaintiff Sustained a Qualified Disability Defendant
            has Demonstrated a Nondiscriminatory Reason for Plaintiff's Furlough
            and Termination ..................................................................................................... 20

      J.     Plaintiff could not perform the Essential Functions of a Sous Chef due to
            Hornblower's Business Closure................................................................................ 22

      K.    Plaintiff is Barred from Offering any Expert Testimony and/or Evidence at
            the Time of Trial, including in Opposition to the Instant Motion ....................... 24

CONCLUSION.................................................................................................................... 25

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Amatulli v. Delhi Construction Corp.*,
  77 N.Y.2d 525 (1991) ............................................................................................... 7

*Anderson v. Hertz Corp.*,
  507 F.Supp.2d 320 (S.D.N.Y. 2007) ...................................................................... 16

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................. 7

*Anderson v. National Grid, PLC*,
  93 F.Supp.3d 120 (E.D.N.Y. 2015) .......................................................................... 9

*Bragdon v. Abbott*,
  524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) ...................................... 8, 9

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S.CT. 2548, 91 L.Ed.2d 265 (1986) .......................................... 7

*Colon v. Linchip Logistics LLC*,
  330 F.R.D. 359 (E.D.N.Y. 2019) ........................................................................... 24

*Colwell v. Suffolk County Police Dep't*,
  158 F.3d 635 (2d Cir.1998) .................................................................................... 18

*Durick v. N.Y.C. Dep't of Educ.*,
  202 F. Supp. 3d 277 (E.D.N.Y. 2016) ...................................................................... 9

*Eisenberg v. Cty. of Nassau*,
  2019 WL 4247283 (E.D.N.Y. 2019) ...................................................................... 10

*Fagan v. United Intern. Ins. Co.*,
  128 F.Supp.2d 182 (S.D.N.Y.2001) ....................................................................... 14

*Feingold v. New York*,
  366 F.3d 138 (2d Cir. 2004) ................................................................................... 16

*Forrester v. Corizon Health, Inc.*,
  278 F.Supp.3d 618 (E.D.N.Y. 2017) ...................................................................... 12

*Fouad v. Jeport Hotel Corp.*,
  2005 WL 1866329 (S.D.N.Y. 2005) ....................................................................... 15

*Frisco v. Air Indus. Grp.*,
    2017 WL 9485663 (E.D.N.Y. 2017) ...................................................................... 10

*Gallo v. Prudential Residential Servs. Ltd. P'ship*,
    22 F.3d 1219 (2d Cir.1994) ............................................................................ 7

*George v. TJX Cos.*,
    2009 WL 4718840 (E.D.N.Y. 2009) .................................................................. 14

*Gilani v. Teneo, Inc.*,
    2021 WL 3501330 (S.D.N.Y. 2021)................................................................... 9

*Gomez v. Westchester County*,
    2020 WL 635577 (S.D.N.Y. 2020)................................................................... 15

*Greenway v. Buffalo Hilton Hotel*,
    143 F.3d 47 (2d Cir.1998) ........................................................................ 16, 17

*Guary v. Upstate Nat'l Bank*,
    618 F.Supp.2d 272 (W.D.N.Y.2009) ................................................................ 14

*Hamilton v. Westchester County*,
    3 F.4th 86 (2d Cir.2021) ......................................................................... 19, 20

*Hernandez v. International Shoppes, LLC*,
    100 F.Supp.3d 232 (E.D.N.Y. 2015) ................................................................. 8

*Hilton v. Wright*,
    673 F.3d 120 (2d Circ. 2012)..................................................................... 8, 21

*Jacobsen v. New York City Health and Hospitals Corp.*,
    2014 WL 1237421 (2014)........................................................................... 13

*James v. N.Y. Racing Ass'n*,
    233 F.3d 149 (2d Cir. 2000) ....................................................................... 16

*Jiggetts v. Allied Intern. Union*,
    2010 WL 2158331 (S.D.N.Y. 2010)................................................................. 10

*Kruger v. Hamilton Manor Nursing Home*,
    10 F.Supp.3d 385 (W.D.N.Y. 2014)............................................................. 13, 14

*Kulak v. City of New York*,
    88 F.3d 63 (2d Cir.1996) .......................................................................... 17

*Limauro v. Consolidated Edison Company of New York, Inc.*,
    2021 WL 466952 (S.D.N.Y., 2021)............................................................. 11, 23

iii

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)............................................................................ 7

*Mazza v. Bratton*,
   108 F.Supp.2d 167 (E.D.N.Y.2000) .................................................. 9

*McDonald v. City of New York*,
   786 F.Supp.2d 588 (E.D.N.Y. 2011) ................................................ 17

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).................... 15, 16

*McMillan v. City of New York*,
   711 F.3d 120 (2d Cir. 2013) .......................................................... 11, 12

*Melman v. Montefiore Medical Center*,
   2012 WL 1913930 (1st Dept. 2012) ................................................ 13

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.*,
   715 F.3d 110 (2d. Cir. 2013) ........................................................... 12

*Montgomery v. Chertoff*,
   2007 WL 1233551 (E.D.N.Y. Apr. 25, 2007) ................................. 17

*Morse v. City of New York*,
   2001 WL 968996 (S.D.N.Y. 2001).................................................. 15

*Murphy v. United Parcel Serv., Inc.*,
   119 S.Ct. 2133 (1999)...................................................................... 10

*Nweke v. Prudential Ins. Co. of America*,
   25 F.Supp.2d 203 (S.D.N.Y. 1998) ................................................ 10

*Parada v. Banco Indus. De Venez., C.A.*,
   753 F.3d 62 (2d Cir. 2014) .............................................................. 9

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)................. 16

*Rivera v. United Parcel Serv.*,
   325 F.R.D. 542 (S.D.N.Y. 2018) .................................................... 24

*Rodriguez v. DeBuono*,
   44 F.Supp.2d 601 (S.D.N.Y.1999),
   *rev'd on other grounds*, 197 F.3d 611 (2d Cir. 1999) ................. 14, 15

*Rogers v. Bank of New York Mellon*,
   2016 WL 4362204 (S.D.N.Y., 2016)............................................... 16

*Ryan v. Grae & Rybicki, P.C.*,
   135 F.3d 867 (2d Cir. 1998) ............................................................................ 10

*Sanzo v. Uniondale Union Free Sch. Dist.*,
   381 F.Supp.2d 117 (2005) ......................................................................... 16, 17

*Shannon v. N.Y.C. Transit Auth.*,
   332 F.3d 95 (2d Cir. 2003) ............................................................................. 12

*Sherman v. Cty. of Suffolk*,
   71 F. Supp. 3d 332 (E.D.N.Y. 2014) ................................................................. 9

*Smith v. City of New York*,
   385 F.Supp.3d 323 (S.D.N.Y. 2019) ............................................................... 12

*Smith v. Johnson Products Co.*,
   463 N.Y.S.2d 464 (1st Dept. 1993) ............................................................. 7, 18

*Smith v. Reg'l Plan Ass'n, Inc.*,
   2011 WL 4801522 (S.D.N.Y. 2011) ................................................................ 14

*Sumner v. United States Postal Serv.*,
   899 F.2d 203 (2d Cir.1990) ............................................................................ 15

*Texas Dep't of Cmty. Affairs v. Burdine*,
   450 U.S. 248 (1981) ........................................................................................ 17

*United States v. Diebold, Inc.*,
   369 U.S. 654 (1962) .......................................................................................... 7

*Vangas v. Montefiore Medical Center*,
   823 F.3d 174 (2d. Cir. 2016) ..................................................................... 12, 22

*Williams v. New York City Department of Health and Mental Hygiene*,
   299 F.Supp.3d 418 (S.D.N.Y., 2018) .......................................................... 17, 24

*Zick v. Waterfront Comm'n of N.Y. Harbor*,
   2012 WL 4785703 (S.D.N.Y. 2012) ....................................................... 14, 15, 18

*Zuckerman v. GW Acquisition LLC*,
   2021 WL 4267815 (S.D.N.Y. 2021) ............................................................ 11, 22

## Statutes

42 U.S.C. § 12101 ............................................................................................. 1, 19

42 U.S.C. § 12102(1) ............................................................................................... 8

42 U.S.C. § 12102(3)(A) ......................................................................................... 10

42 U.S.C. § 12102(3)(B) ........................................................................................... 15

42 U.S.C. § 12102(B)(C) ........................................................................................... 15

42 U.S.C. § 12111(5)(A) ............................................................................................. 8

42 U.S.C. § 12112(a) .................................................................................................... 8

42 U.S.C. § 1983 ........................................................................................................ 19

N.Y. Exec. Law § 296(1)(a) ........................................................................................ 1

N.Y.C. Admin Code 8-107(1)(a) ................................................................................. 2

**Rules**

Federal Rules of Civil Procedure
    Rule 26 .................................................................................................................. 24

Federal Rules of Civil Procedure
    Rule 26(a)(2)(B) ............................................................................................... 1, 25

Federal Rules of Civil Procedure
    Rule 26(a)(2)(C) ............................................................................................. 24, 25

Federal Rules of Civil Procedure
    Rule 26(a)(2)(D) .......................................................................................... 1, 24, 25

Federal Rules of Civil Procedure
    Rule 37(c)(1) ............................................................................................... 1, 24, 25

Federal Rules of Civil Procedure
    Rule 56 .................................................................................................................. 25

Federal Rules of Civil Procedure
    Rule 56(c) ............................................................................................................... 7

Federal Rules of Civil Procedure
    Rule 56.1(a) ...................................................................................................... 1, 24

Federal Rules of Civil Procedure
    Rule 6(a)(2)(B) ..................................................................................................... 24

**Treatises**

29 C.F.R. § 1630.2(j)(3)(i) ......................................................................................... 10

29 C.F.R. § 1630.2(o)(1)(iii) ...................................................................................... 11

This Memorandum of Law, together with the accompanying Certification of Michael J. Schacher, Esq. (hereinafter "Schacher Certification") together with the Exhibits annexed thereto, and the accompanying Rule 56.1(a) Statement of Undisputed Material Facts, is submitted in support of the defendants, HORNBLOWER GROUP, INC., HORNBLOWER NEW YORK, LLC and HORNBLOWER CRUISES AND EVENTS, LLC's (hereinafter collectively "Hornblower" or "moving defendants"), 1) Motion Summary Judgment and Complete Dismissal of plaintiff's Complaint, pursuant to Rule 56 of the Federal Rules of Civil Procedure, 2) motion precluding and excluding any expert testimony and/or evidence offered by plaintiff at the time of trial, or in opposition to the instant motion in accordance with Individual Rule 3F and pursuant to Rules 26(a)(2)(B), 26(a)(2)(C), 26(a)(2)(D) and 37(c)(1) of the Federal Rules of Civil Procedure; together with such other, further or different relief, which this Honorable Court may deem just and proper.

## STATEMENT OF FACTS

The underlying relevant facts are set forth in the Schacher Certification, together with the Exhibits annexed thereto, as well as in moving defendants' Rule 56.1(a) Statement of Undisputed Material Facts, and are submitted herewith and made a part hereof in support of moving defendants' Motion for Summary Judgment and Motion to Exclude.  Moving defendants respectfully refer this Honorable Court to the Schacher Certification and the Rule 56.1(a) Statement of Undisputed Material Facts for a full recitation of the relevant facts.  However, for the sake of clarity, certain salient facts are repeated herein without reference to exhibits.

Namely, this case involves allegations of disability discrimination, retaliation and wrongful termination by LENNY MOLINA (hereinafter "plaintiff"), a former employee of moving defendants, under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and the New York State Human Rights Law (hereinafter "NYSHRL"), N.Y. Exec. Law § 296(1)(a),

1

the New York City Human Right Law (hereinafter "NYCHRL"), and N.Y.C. Admin Code 8-107(1)(a).  As shall be discussed, these allegations are wholly unfounded and, therefore, plaintiff's Complaint should be dismissed in its entirety.

a) Plaintiff's Hiring and Substandard Work Performance at Hornblower

On March 27, 2019, plaintiff was hired by Hornblower as a PM Sous Chef at their Cruise Gallery Department at Piers 15 and 40 in New York City as an at will employee.  Upon his hiring, plaintiff received a Hornblower Crew Handbook and several other documents detailing Hornblower's policies and procedures.  Plaintiff was also trained by his Director/Supervisor Executive Chef Scott Hauser pertaining to the duties and responsibilities of a PM Sous Chef on Hornblower's vessels.  On May 19, 2019, plaintiff received his first disciplinary write up from Hornblower.  Specifically, plaintiff received a "Documenting of Crew Coaching & Counseling Session" Form and  Warning due to his: 1) poor communication; 2) need to "tone down attitude"; 3) failure to follow-up on menu and production analysis; 4) hostility toward co-workers; 5) failure to walk through and follow-up with staff; and 6) need to direct staff better.

Less than two (2) months later, on July 5, 2019, plaintiff received his second disciplinary write up from Hornblower, namely a "Disciplinary Action Form" from his Director/Supervisor Head Chef Scott Hauser and Human Resources.  The types of violations were "Unsatisfactory Performance" and "Violation of Company Policies/Procedures."  Subsequently, on February 24, 2020, plaintiff received his third disciplinary write up, specifically a "Disciplinary Action Form" from his Supervisor/Director Head Chef Scott Hauser and Human Resources.  The type of violation was "Unsatisfactory Performance."  Descriptions of both violations are detailed in Executive Chef Scott Hauser's annexed affidavit.  Per Executive Chef Scott Hauser, the aforementioned Counseling Sessions and two (2) Disciplinary Action write-ups were part of

plaintiff's ongoing performance issues during his brief employment with Hornblower.  Executive Chef Scott Hauser's states in his affidavit that during plaintiff's employment with Hornblower as a PM Sous Chef plaintiff was an inconsistent and below average worker.

b) The Subject Accident

Plaintiff was allegedly injured during a Hornblower work shift on March 14, 2020 at 3:30 p.m., at Pier 15, when he was lifting a Cambro food cart from a van and the food cart fell on his left foot.  Despite plaintiff's allegations in his Complaint, plaintiff did not notify Hornblower's Human Resources Department of his alleged accident on the same day it occurred.  Rather, plaintiff waited until March 15, 2020 at 1:55 p.m., to send an e-mail to Hornblower's management team notifying them about his March 14, 2020 alleged accident.

c)  Plaintiff's Non-Discriminatory Furlough and Termination

Two (2) days later, on March 17, 2020, plaintiff, along with a majority of Hornblower's entire Pier 15, 40 and 61 crew, were furloughed due to onset of the Covid-19 pandemic which caused a complete closure of Hornblower's business operations.   Notably, the furlough notification, which was not a termination letter, indicated plaintiff would receive sixteen (16) hours of regular pay and forty (40) hours of Paid Time Off ("PTO"), paying him through March 24, 2020.  Plaintiff's health care through Hornblower was unaffected by the furlough.

Subsequently, in mid-May 2020, due to unprecedented Covid-19 pandemic, associated business shutdowns and constraints, Hornblower began the termination of a majority of their crew staff at Piers 15, 40 and 61.  Plaintiff's employment with Hornblower was officially terminated on May 18, 2020.  Hornblower paid plaintiff up until his May 18, 2020 termination and his health care insurance through Hornblower remained active until May 31, 2020.  Plaintiff was terminated on May 18, 2020, not due to his alleged left big toe injury and alleged disability, but rather due to

his prior subpar performance and disciplinary write-ups as a Sous Chef, as detailed below, and in the annexed affidavit of plaintiff's Director and Supervisor, Hornblower's Executive Chef Scott Hauser.  Plaintiff's substandard track record at Hornblower is clearly inapposite to plaintiff's counsel's affidavit in support of plaintiff's EEOC Complaint, wherein counsel affirms plaintiff "maintained a virtually unblemished record of employment."

In addition, per the annexed affidavit of Hornblower's Co-Chief Operating Officer Christine Metivier ("COO Metivier"), Hornblower's March 17, 2020 "Notice of Furlough," sent two (2) days after plaintiff provided notice to Hornblower of his alleged left big toe injury, was sent to all of Hornblower's management staff and employees, including plaintiff's Supervisor/Director Executive Chef Scott Hauser.  Further, per COO Metivier, considering plaintiff's Counseling Session and two (2) Disciplinary Action write ups and his ongoing substandard performance as indicated by Hornblower's Food and Beverage Director Mark Steiner and the Human Resources Department, the legitimate, non-discriminatory business decision was made that plaintiff should be terminated on May 18, 2020.  Per COO Metivier, Hornblower's Pier 15, 40 and 61 staff terminations were a direct result of Hornblower's closure of its business operations due to the unprecedented Covid-19 pandemic, and the resulting governmental restrictions (including the Executive Orders passed by then Governor Andrew Cuomo), and the resulting economic and business constraints, which prevented them from operating cruises.  In addition, COO Metivier states in her affidavit that Hornblower made the decision to terminate their four (4) other Sous Chefs approximately three (3) months later in August of 2020 because those Sous Chefs' performance levels were significantly higher than plaintiff's and those Sous Chefs did not have any disciplinary write ups.

Moreover, the record makes clear that plaintiff's alleged injury on March 14, 2020, which he notified Hornblower of on March 15, 2020, had absolutely no effect on his furlough days just two (2) days later on March 17, 2020 due to start of the Covid-19 pandemic, which affected a vast majority of Hornblower's staff at Piers 15, 40 and 61, nor his ultimate termination on May 18, 2020.  Indeed, plaintiff's allegation in his Complaint that he was "fired in March of 2020," shortly after plaintiff's alleged injury, is simply incorrect.  The reality is plaintiff was placed on a furlough on March 17, 2020 with hundreds of other Hornblower employees due to the Covid-19 pandemic that shutdown the entire New York City area economy for several months.

Further, plaintiff's allegation that moving defendants failed to reasonably accommodate him is meritless.  As a result of the Covid-19 pandemic beginning in Mid-March of 2020, which resulted in unparalleled governmental business restrictions, Hornblower effectively shut down its New York City Piers 15, 40 and 61 cruise operations.  Per COO Metivier, during that time, as there were no Hornblower cruises leaving Piers 15, 40 and 61, there was no need for plaintiff's services as a PM Sous Chef on any vessels and there were no comparable temporary positions for plaintiff to be assigned to during that time.

Further, notwithstanding plaintiff's allegation, COO Metivier states in her affidavit that plaintiff never contacted Hornblower to make any effort in engage in any conversations pertaining to any reasonable accommodations nor in an effort to obtain any assistance from Hornblower's Human Resources Department, despite their offers.  Per the affidavits of Executive Chef Scott Hauser and COO Metivier, the evidence and testimony adduced to date demonstrates unequivocally that all decisions affecting plaintiff's employment status were for legitimate, non-discriminatory business considerations, having absolutely nothing to do with plaintiff's alleged injury or disability.  Notably conspicuously absent from the record herein is any evidence

establishing that moving defendants' furlough and ultimate termination of plaintiff was in any way motivated by, or in retaliation for, plaintiff's alleged injury or disability.

## SUMMARY OF THE ARGUMENT

Moving defendants can and do demonstrate entitlement to Summary Judgment and Complete Dismissal of plaintiff's Complaint, as the plaintiff cannot demonstrate the existence of any disability discrimination or failure to accommodate pursuant to the applicable case law. Indeed, plaintiff cannot and does not offer any testimony or evidence to establish any discrimination in conjunction with plaintiff's employment, nor any discrimination by Hornblower against the plaintiff based upon his alleged disability. Perhaps more importantly, plaintiff cannot demonstrate the existence of a qualified disability in accordance with the ADA, the NYSHRL or the NYCHRL and as interpreted by the relevant case law. In fact, per the moving defendants' expert podiatrist, Dr. Paul Greenberg, plaintiff sustained a common injury that healed without incident, and there is no evidence of a permanent disability or functional limitation.

Furthermore, plaintiff simply cannot substantiate a *prima facie* case of retaliation herein, nor can plaintiff demonstrate that the events giving rise to his valid termination due to the Covid-19 pandemic were in any way pretextual. Moreover, plaintiff was justifiably terminated in May of 2020 due to his multiple violations of company policy and his dissatisfactory work as discussed above. Given Hornblower's New York City area shutdowns due to the Covid-19 pandemic, reasonable accommodations to perform the essential job functions of a PM Sous Chef could not be offered to the plaintiff. Indeed, plaintiff never proposed any reasonable accommodations nor does he provide any facts to support the contention that he could carry out his essential job functions within a time of accommodation, which is fatal to his claim. Thus, for these reasons, which are more fully discussed below, moving defendants should be granted Summary Judgment.

Lastly, plaintiff should be precluded and excluded from offering any expert testimony and/or evidence at the time of trial, or in opposition to the instant motion due to his failure to timely serve such disclosures by the deadline entered by this Court.

**DISCUSSION**

**A.      Standard for Summary Judgment**

The standard for granting summary judgment is well established.  Summary judgment shall be granted where the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Gallo v. Prudential Residential Servs. Ltd. P'ship</u>, 22 F.3d 1219, 1223 (2d Cir.1994).  A material fact is "genuine" only if the evidence is such that a reasonable juror could return a verdict for the non-moving party. *See* <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 257 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See* <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).  The party opposing summary judgment must produce admissible evidentiary proof sufficient to establish a material question of fact.  <u>Amatulli v. Delhi Construction Corp.</u>, 77 N.Y.2d 525 (1991).  The non-moving party may not rely on "mere conclusory assertions, devoid of evidentiary facts" nor may it rely on "surmise, conjecture and speculation."  <u>Smith v. Johnson Products Co.</u>, 463 N.Y.S.2d 464 (1st Dept. 1993).

**B.      Interpretation of Applicable Law under the ADA, NYSHRL & NYCHRL**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application

7

procedures, the hiring, advancement, or discharge of employees, employee compensation, job

training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a)[1]. The

ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

Further, to establish a *prima facie* ADA and NYSHRL discrimination claim, a plaintiff

must show that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning

of the ADA; (3) he was otherwise qualified to perform the essential functions of the job, with or

without reasonable accommodation; and (4) he suffered an adverse employment action because of

his disability.  See Hernandez v. International Shoppes, LLC, 100 F.Supp.3d 232 (E.D.N.Y. 2015).

As a private employer with over one-hundred employees, moving defendants do not contest that

it is subject to the ADA.  *See* 42 U.S.C. § 12111(5)(A).  However, as discussed in detail below, it

is respectfully submitted that the plaintiff cannot satisfy the second, third and fourth prongs of his

*prima facie* burden, thereby warranting Summary Judgment dismissal the Complaint insofar as

plaintiff has not demonstrated that he was disabled under the ADA, that he was otherwise qualified

to perform the essential functions of his job, with or without reasonable accommodation, and that

he suffered an adverse employment action because of his alleged disability.

To be sure, in evaluating disability, courts follow the three-step process set forth by the

Supreme Court in Bragdon v. Abbott to determine: "(1) whether plaintiff had an impairment; (2)

---

[1] In 2008, Congress passed the ADA Amendments Act.  As noted in Hilton v. Wright, 673 F.3d 120, 128–29 (2d Circ. 2012), "[t]he Committee therefore restores Congress's original intent by making clear that an individual meets the requirement of "being regarded as having such an impairment" if the individual shows that an action (e.g. disqualification from a job, program, or service) was taken because of an actual or perceived impairment, *whether or not* that impairment actually limits *or is believed* to limit a major life activity."  Citing H.R.Rep. No. 110–730, pt. 1, at 14 (2008) (emphasis added in the original).

whether the impairment affected a 'major life activity' within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment." Mazza v. Bratton, 108 F.Supp.2d 167, 173 (E.D.N.Y.2000)(citing Bragdon v. Abbott, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)).  Notably, the failure to satisfy any of these three prongs mandates dismissal of the plaintiff's claims. See Durick v. N.Y.C. Dep't of Educ., 202 F. Supp. 3d 277, 289 (E.D.N.Y. 2016); Sherman v. Cty. of Suffolk, 71 F. Supp. 3d 332, 344 (E.D.N.Y. 2014).  Further, a *prima facie* case of retaliation under the ADA is made up of the following elements: (1) the employee was engaged in an activity protected by the ADA; (2) the employer was aware of that activity; (3) an employment action adverse to the plaintiff occurred; and (4) there existed a causal connection between the protected activity and the adverse employment action. Anderson v. National Grid, PLC, 93 F.Supp.3d 120 (E.D.N.Y. 2015).

### C.      The Courts' "Major Life Activity" Standard & Analysis

In determining whether an individual is disabled under the ADA, the Second Circuit has "rejected bright-line tests" and instructed courts to engage in a "fact-specific inquiry."  Gilani v. Teneo, Inc., 2021 WL 3501330, at *25 (S.D.N.Y. 2021) citing Parada v. Banco Indus. De Venez., C.A., 753 F.3d 62, 69 (2d Cir. 2014).  Further, appropriate considerations include "the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function."  See Gilani v. Teneo, Inc., 2021 WL 3501330, at *25 (S.D.N.Y. 2021).

As a threshold matter, the plaintiff bears the burden of demonstrating that his disability fits into the narrow definition envisioned by the ADA.  To substantially limit a major life activity, the impairment must be significant, and not merely trivial.  See Jiggetts v. Allied Intern. Union, 2010

9

WL 2158331, at *4 (S.D.N.Y. 2010), citing Nweke v. Prudential Ins. Co. of America, 25 F.Supp.2d 203 (S.D.N.Y. 1998). To be regarded as having an impairment, a plaintiff must establish that he has been subjected to a prohibited action because of actual or perceived mental or physical impairment, regardless of whether it limits a major life activity. 42 U.S.C. § 12102(3)(A). Id., see also Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869 (2d Cir. 1998)("[I]n assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities.").

The Courts have held a plaintiff must allege facts "that would allow the Court to draw an inference" of a disability's substantial effect on a major life activity. See Frisco v. Air Indus. Grp., 2017 WL 9485663, at *10 (E.D.N.Y. 2017). The Courts have dismissed plaintiff's ADA Complaints where the plaintiff's numerous conclusory statements regarding his disability do not expand on how the disability affects these major life activities. See Eisenberg v. Cty. of Nassau, 2019 WL 4247283, at *3 (E.D.N.Y. 2019). To prove a substantial limitation on the major life activity of working, a plaintiff must show that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i); see also Murphy v. United Parcel Serv., Inc., 119 S.Ct. 2133 (1999). The "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Id.

D. **The Courts' "Reasonable Accommodation" Standard & Analysis**

This Court has held that a "reasonable accommodation" generally means, "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without

disabilities." <u>Limauro v. Consolidated Edison Company of New York, Inc.</u>, 2021 WL 466952, at *7 (S.D.N.Y., 2021), <u>citing</u> 29 C.F.R. § 1630.2 (o) (1) (iii).

In <u>Zuckerman v. GW Acquisition LLC</u>, 2021 WL 4267815 (S.D.N.Y. 2021), this Court granted a motion to dismiss a plaintiff's complaint alleging a discrimination under the ADA, NYSHRL and NYCHRL.  Similar to the case at bar, in <u>Zuckerman</u>, the plaintiff was furloughed from her job in March of 2020 due to the Covid-19 pandemic.  <u>Id</u>.  In holding that plaintiff inadequately alleged her failure to accommodate claim, this Court held, "[w]ith respect to her failure to accommodate claim, even if plaintiff had adequately alleged that she suffered from an ADA-qualifying disability, the Court questions whether she adequately alleged that she could perform the essential functions of the job at issue with a reasonable accommodation."  <u>Id</u>.; <u>Citing</u> <u>Limauro</u>, <u>supra</u> at 7.  This Court continued its analysis by holding, "[p]laintiff claims that she 'would be able to perform the essential functions of her job with this proposed reasonable accommodation,' as she was capable of carrying out her job duties remotely.  But that allegation is conclusory; she provides no facts to support the contention that she could, in fact, carry out her essential job functions from home."  Further, if the plaintiff provides the employer with a request for an accommodation, then the employer will generally raise an affirmative defense by "demonstrat[ing] that such accommodations would present undue hardships and would therefore be unreasonable."  <u>Limauro</u>, <u>supra</u> at 7, citing <u>McMillan v. City of New York</u>, 711 F.3d 120, 128 (2d Cir. 2013).

In <u>McMillan</u>, the Court held that "[a]fter the essential functions of the position are determined, the plaintiff must demonstrate that he or she could have performed these functions, with or without reasonable accommodation, at the time of the termination or discipline."  <u>Id</u>.; (citation omitted).  Notably, the <u>McMillan</u> court held, "[o]f course, '[a] reasonable accommodation

can never involve the elimination of an essential function of a job.'"  Id.; citing Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003).  A "reasonable accommodation" for purposes of disability discrimination claim under the ADA and NYSHRL, is one which permits an employee with a disability to perform in a reasonable manner the activities involved in the job and does not impose an undue hardship on the employer's business.  Vangas v. Montefiore Medical Center, 823 F.3d 174 (2d. Cir. 2016).  In Vangas, the Court held that a disabled employee's request to her employer for an indefinite leave extension is not a "reasonable accommodation" for purposes of disability discrimination claim under the NYSHRL.  Id.

### E.    The NYCHRL Standard & Analysis

Although courts must analyze NYCHRL claims separately and independently from any federal and state law claims, a plaintiff bringing a claim under the NYCHRL must still show that the conduct complained of is caused by a discriminatory motive.  Smith v. City of New York, 385 F.Supp.3d 323 (S.D.N.Y. 2019).  The standard for causation under the NYCHRL closely mirrors that of the ADA and the NYSHRL: under all three statutes, the plaintiff must show that discrimination played a role in the employer's decision-making.  Id.  "The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record established as a matter of law that discrimination played no role in its actions."  Mihalik v. Credit Agricole Cheuvreux North America, Inc., supra, 715 F.3d at 110 n.8 (2d. Cir. 2013).  Notably, "a defendant may escape liability under the New York City Human Rights Law (NYCHRL) by showing that its conduct consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences."  See Forrester v. Corizon Health, Inc., 278 F.Supp.3d 618 (E.D.N.Y. 2017).

12

On motion for summary judgment in "mixed motive" employment discrimination claim under the NYCHRL, the question is whether there exist triable issues of fact that discrimination was one of the motivating factors for defendant's conduct.  Melman v. Montefiore Medical Center, 2012 WL 1913930 (1st Dept. 2012).   In Melman, the Court held that age discrimination, in violation of NYCHRL, was not a motivating factor, even in part, for a hospital's decision to pay a sixty-seven (67) year old chairman physician less than a younger physician within same department, when the hospital based its decision, among other reasons, that there had been significant problems with urology department under chairman's leadership, justifying the hospital's pay decisions.  Id.

Unlike the NYSHRL, the NYCHRL places the burden on an employer in a disability discrimination claim to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business.  Jacobsen v. New York City Health and Hospitals Corp., 2014 WL 1237421 (2014). Under the NYSHRL and NYCHRL, the relevant inquiry is whether an employee was capable of performing the core functions of the employee's position at the time that the employer refused to accommodate the employee's disability.  Id.

### F.  A Broken Toe does not Qualify as a Disability under the ADA, NYSHRL or NYCHRL

Similar to the case at bar, in Kruger v. Hamilton Manor Nursing Home, 10 F.Supp.3d 385 (W.D.N.Y. 2014), the Court held that an employee's allegations that she had a broken arm were insufficient to plead a disability under the ADA and the NYSHRL, warranting dismissal of the plaintiff's Complaint.   The Court in Kruger held that "[g]enerally, short term, temporary restrictions are not substantially limiting and do not render a person disabled under the Americans with Disabilities Act (ADA)."   The Kruger Court further held, "[b]roken and fractured bones do

not generally qualify as a disability within the meaning of the Americans with Disabilities Act (ADA)." Citing Zick v. Waterfront Comm'n of N.Y. Harbor, 2012 WL 4785703 at *5 (S.D.N.Y. 2012)("plaintiff's broken leg is simply not an injury considered a 'disability' under the ADA."); Smith v. Reg'l Plan Ass'n, Inc., 2011 WL 4801522, at *5 (S.D.N.Y. 2011)(plaintiff's fractured ankle did not qualify as a disability within the meaning of the ADA); Guary v. Upstate Nat'l Bank, 618 F.Supp.2d 272, 275 (W.D.N.Y.2009)(plaintiff's broken ankle, "which resulted in a single, twelve-week disability leave with no alleged physical limitations thereafter, is not a disability for purposes of the ADA or the parallel New York statute."); and George v. TJX Cos., 2009 WL 4718840 (E.D.N.Y. 2009) (broken arm does not qualify as a disability under the ADA).

The Kruger Court held the plaintiff's allegation that her employer regarded her as disabled was a legal conclusion without any supporting factual allegations. Id. The Court in Kruger held, "[u]nder the ADA, the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action. Id. It is notably that the above holdings regarding fractures were all decided following the ADA Amendments Act of 2008.

Notably, this Court in Zick supra at 5, held that "[a] broken leg falls among the types of temporary injuries unprotected as a 'disability' under the ADA." Citing Fagan v. United Intern. Ins. Co., 128 F.Supp.2d 182, 185 (S.D.N.Y.2001) and Rodriguez v. DeBuono, 44 F.Supp.2d 601, 617 (S.D.N.Y.1999)(holding "intermittent, episodic impairments are not disabilities, the standard example being a broken leg."), rev'd on other grounds, 197 F.3d 611 (2d Cir. 1999)).  This Court in Zick supra at 5 held, "[e]ven a more serious injury, such as a broken hip, may not be considered a 'disability' for purposes of the ADA [unless] the hip heals improperly, resulting in long-term difficulty in walking...." Citing Rodriguez, supra at 617.  In dismissing the plaintiff's ADA,

NYSHRL and NYCHRL discrimination allegations, the <u>Zick</u> Court further held that "[a] transitory impairment is an impairment with an actual or expected duration of 6 months or less." <u>Id</u>., <u>Citing</u> § 12102(3)(B). In <u>Zick</u>, this Court held that plaintiff's broken leg had an expected duration of eight (8) to ten (10) weeks, as projected by her doctor. <u>Id</u>. Thus, the <u>Zick</u> Court held that plaintiff's "injury is 'transitory' or 'minor,'" and is not covered under the 42 U.S.C. § 12102(B)(C) exception. <u>Id</u>.

In <u>Fouad v. Jeport Hotel Corp.</u>, 2005 WL 1866329, at *2 (S.D.N.Y. 2005), this Court held, "[c]ourts within this circuit, and the vast majority of courts elsewhere, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary injuries are not disabled persons within the meaning of the act." Further, recently in <u>Gomez v. Westchester County</u>, 2020 WL 635577, at *13 (S.D.N.Y. 2020), this Court held that a plaintiff's fractured ankle and metacarpal did not constitute a disability under the ADA. The <u>Gomez</u> Court held, 'temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities,' and that such impairments may include broken or fractured limbs. <u>Id</u>.; <u>citing</u> <u>Morse v. City of New York</u>, 2001 WL 968996, at *7 (S.D.N.Y. 2001)(where the Court held that plaintiff's fractured foot was not was not a disability under the ADA, and dismissed plaintiff's claims against the defendants).

### G.    The Burden Shifting Framework

Notwithstanding the foregoing, allegations of discrimination and retaliation are considered under the burden-shifting framework laid out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See* <u>Sumner v. United States Postal Serv.</u>, 899 F.2d 203, 208 (2d Cir.1990). The plaintiff bears the minimal initial burden of establishing a *prima facie* case of discrimination through direct or circumstantial evidence. <u>Anderson v. Hertz Corp.</u>,

507 F.Supp.2d 320 (S.D.N.Y. 2007). Notably, an employer that has put forth nondiscriminatory reasons for its employment action is entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." See Rogers v. Bank of New York Mellon, 2016 WL 4362204, at *10 (S.D.N.Y., 2016), citing James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000). A plaintiff who is able to make out a *prima facie* case creates a presumption of discrimination and shifts the burden of production to the defendant. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Thereafter, the defendant must meet this burden by articulating a legitimate, nondiscriminatory reason for the adverse employment action. Id. If the defendant can present a nondiscriminatory explanation, the presumption of discrimination drops out of the analysis and the burden of proof shifts back to the plaintiff. Id. at 142-43. The plaintiff must then prove "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. at 143. To defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).

Indeed, if the plaintiff is able to meet his burden of establishing a *prima facie* case, "the burden of production then shifts to the defendant who must proffer a legitimate, non-discriminatory reason for its actions in order to rebut the presumption of unlawful discrimination." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir.1998) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). At this stage, "[t]he employer merely needs to 'explain what he has done.' " Sanzo v. Uniondale Union Free Sch. Dist., 381 F.Supp.2d at 117-18 (quoting

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). The "ultimate burden" resides with the plaintiff, who must prove that "the employer's proffered reason is merely a pretext for its intentional discrimination." Greenway, 143 F.3d at 52 (citations omitted). "If the plaintiff cannot prove intentional discrimination motivated by his disability, then the defendants are entitled to summary judgment." Sanzo, 381 F.Supp.2d at 118, see Montgomery v. Chertoff, 2007 WL 1233551 (E.D.N.Y. Apr. 25, 2007) ("Neither 'conclusory statements, conjecture, [n]or speculation' suffices to defeat summary judgment.") (quoting Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996).

Further, if a defendant in a retaliation claim under the ADA meets his burden to articulate a legitimate, non-retaliatory reason for the challenged employment decision, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.  Williams v. New York City Department of Health and Mental Hygiene, 299 F.Supp.3d 418 (S.D.N.Y., 2018).  The plaintiff "has the ultimate burden of showing that the proffered reasons are a pretext for retaliation [under the ADA]." McDonald v. City of New York, 786 F.Supp.2d 588, 613 (E.D.N.Y. 2011).

### H.  Plaintiff Lenny Molina's Alleged Broken Big Toe Does not Qualify as a Disability under the ADA, NYSHRL, or the NYCHRL

In the instant case, plaintiff cannot demonstrate the existence of a qualified disability pursuant to the aforesaid case law.  The Courts have continually held that fractures do not generally qualify as a disability within the meaning of the ADA.  In fact, as discussed above, the Courts have held that more impairing fractures than what the plaintiff sustained, specifically, broken hips, legs, arms and ankles do not qualify as a disabilities under the ADA, NYSHRL and NYCHRL.  The Courts examine each case on fact by fact basis, and take into consideration the transitory nature,

17

permanency, time to heal, and limitations thereafter, as factors in determining whether an injury is a qualified disability.  See Smith supra at 5.  The Courts have held that fractures, such as plaintiff's left big toe fracture, are "transitory" and "temporary" injuries which heal in a matter of weeks and thus, do not qualify as a chronic, long-term or permanent disabling injuries.  See Zick supra at 5. Indeed, upon review of plaintiff's medical records and performing an Independent Medical Examination, defendants' expert podiatrist, Dr. Paul Greenberg, opined that plaintiff sustained a common injury that was treated appropriately and fully healed without incident.   Per Dr. Greenberg, patients with this type of injury typically heal within a matter of weeks or months. Lastly, Dr. Greenberg concluded that upon examination, plaintiff demonstrates no evidence of a permanent disability or functional limitation.  Considering the foregoing, plaintiff falls woefully short of meeting the high threshold of demonstrating that he sustained a qualified disability.

To the extent plaintiff alleges walking, standing, or sitting as a major life activity that was affected by his left big toe fracture, he has clearly not pled facts suggesting that these activities were substantially limited.  In fact, plaintiff admits in his discovery responses that following his employment with Hornblower, he took a job driving a truck.  Notably, plaintiff's medical records annexed to his discovery responses do not once mention that he is disabled nor that his ability to walk, stand, or sit was substantially limited as result of the alleged accident.  Indeed, following his alleged accident, plaintiff was provided with a walking boot which improved his ability to walk. It is also bewildering that plaintiff's fractured left big toe could somehow affect his ability to sit. Plaintiff's mere allegation that his ability to walk, stand, or sit was substantially limited for an unspecified amount of time, without any supporting evidence is too vague and does not pass the threshold to be substantially limiting.  See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir.1998).  Clearly, plaintiff's fractured left big toe did not have a substantial effect on

any "major life activity," but in reality was a transitory and temporary injury that does not qualify as a disability under the ADA, NYSHRL and NYCHRL.

Further, defendants anticipate that plaintiff will rely on Hamilton v. Westchester County, 3 F.4th 86 (2d Cir.2021) in support of his opposition to the instant motion. However, plaintiff's expected reliance on Hamilton is factually and legally misplaced. Hamilton, an inmate at the Westchester County Jail ("Jail"), brought claims against County under 42 U.S.C. § 1983 and Title II of the ADA, 42 U.S.C. § 12101, alleging deliberate indifference and failure to accommodate his disabilities resulting from a dislocated knee and torn meniscus when he stepped on crumbled concrete in the recreational yard. Id. at 88. The Southern District granted the defendants' motion to dismiss Hamilton's Complaint, and the plaintiff appealed. Id.

The Hamilton Court did not make a ruling whether the plaintiff's knee tear was a qualifying injury under the ADA, but rather reversed the Southern District's holding because the "district court's error here was to dismiss Hamilton's ADA claim solely because he had failed to plead that his injury was not temporary." Id. at 94. In fact, the Court in Hamilton notably held, "[o]f course, we agree with the County's assertion that '[w]hile an impairment lasting less than six months *can* constitute a disability since the 2008 amendments, it obviously does not follow that such an impairment *will* constitute a disability.'" Id.; (emphasis in original). Further, while not making a determination regarding whether plaintiff's injury qualified as a disability under the ADA, the Hamilton Court nevertheless discussed in detailed the serious nature of Hamilton's injury, including that "he suffered from excruciating pain, his injuries were not properly treated, and he was placed in situations where his injuries were aggravated," and that such a knee tear may not heal on its own and require surgery necessitating months of therapy thereafter. Id.

19

Here, based on the overwhelming supporting case law, it is clear that plaintiff's left big toe fracture, which healed uneventfully within a matter of weeks without the need for surgery, cannot constitute a qualifying injury under the ADA, and certainly is not analogous to the significant long-term injury and impairment suffered by the plaintiff in <u>Hamilton</u>.  <u>Id</u>.  Moreover, the facts herein are clear that plaintiff's furlough and ultimate termination by Hornblower were for legitimate, non-discriminatory business considerations, having absolutely nothing to do with plaintiff's alleged injury or disability, but rather resulting from the onset of the unprecedented Covid-19 pandemic.

### I.    Assuming *Arguendo* Plaintiff Sustained a Qualified Disability Defendant has Demonstrated a Nondiscriminatory Reason for Plaintiff's Furlough and Termination

In the present case, while it is by no means conceded that the plaintiff has demonstrated a *prima facie* case of disability discrimination, let alone the existence of a qualified disability, moving defendants can nevertheless provide a nondiscriminatory reason for the adverse employment action, specifically, the unparalleled Covid-19 pandemic and its associated business constraints and shutdowns.  Assuming *arguendo*, that plaintiff's left big toe fracture was a qualified disability under the ADA, which Hornblower in no way concedes, plaintiff's Complaint should still be dismissed because plaintiff was furloughed, along with the vast majority of Hornblower's entire New York City crew, from his position due to the coincidental onset of the Covid-19 pandemic just two (2) days after Hornblower received notice of his injury.  After an approximate two (2) month furlough period, plaintiff, along with the vast majority of other similarly situated Hornblower crew members, was notified in writing that his employment was being terminated as part of a corporate restructuring and reduction in workforce that was necessitated due to the Covid-19 pandemic and the resulting business conditions, which were not reasonably foreseeable.  None of these legitimate business considerations and employment

decisions were made for any reason even remotely relating to plaintiff's alleged disability, and such decisions were by no means retaliatory in nature or practice.

As such, under the prevailing case law, plaintiff's conclusory allegations fail as a matter of law because the plaintiff does not and cannot demonstrate that his furlough and termination "was taken because of an actual or perceived impairment."  See Hilton v. Wright, 673 F.3d 120, 128–29 (2d Circ. 2012).  Further, in terms of NYCHRL, plaintiff simply cannot prove that the conduct complained of was caused by a discriminatory motive.  Per the affidavit of COO Metivier, the truth is that discrimination played absolutely no role in the decision to furlough, and ultimately terminate plaintiff.  In fact, the vast majority of Hornblower's entire New York City crew, including plaintiff's own supervisor, Executive Chef Scott Hauser, were furloughed on March 17, 2020, and the majority of the New York City crew were ultimately terminated just months later.  Thus, notwithstanding his toe injury, plaintiff still would have been furloughed and terminated from Hornblower in March of 2020 and May of 2020, respectively.  Indeed, within his Complaint, plaintiff's misstates the day he was terminated, mistakenly alleging his termination occurred in March of 2020.

Within plaintiff's Supervisor and Director, Executive Chef Scott Hauser's affidavit, he details plaintiff's Counseling Session and two (2) Disciplinary Action write-ups, and states in his affidavit plaintiff was "subpar worker," who consistently failed to perform his required duties.  As such, plaintiff was terminated in March of 2020 because, as the record unquestionably shows, plaintiff repeatedly committed multiple violations of company policy.  Further, per the affidavit of Hornblower's COO Christine Metivier, Hornblower's four (4) other New York City Sous Chefs were not terminated in May of 2020 because none of those Sous Chefs had any prior write ups or performance issues.  This is further evidence that the decision to terminate plaintiff in May of 2020

was not pretextual.  Indeed, plaintiff's own Supervisor/Director, Executive Chef Scott Hauser was also furloughed and ultimately terminated in August of 2020.

And, while plaintiff may attempt to have this Honorable Court believe that moving defendants' proffered justification for plaintiff's termination is a pretext, the record clearly demonstrates that there is no testimony or evidence to establish that moving defendants' furlough just two (2) days after Hornblower received notice of plaintiff's alleged injury, and termination on May 18, 2020, was in any way motivated by plaintiff's alleged left big toe injury.  Plaintiff has clearly not met his burden to demonstrate that the decision to furlough and terminate him were decisions were by any means discriminatory or retaliatory in nature or practice.

> **J.    Plaintiff could not perform the Essential Functions of a Sous Chef due to Hornblower's Business Closure**

Further, plaintiff's allegation in his Complaint that Hornblower denied him reasonable accommodations is meritless.  As in Zuckerman v. GW Acquisition LLC, 2021 WL 4267815, (S.D.N.Y. 2021), where the plaintiff was furloughed due to the Covid-19 pandemic, even if plaintiff establishes an ADA-qualifying disability, he fails to adequately alleged that he "could perform the essential functions of the job at issue with a reasonable accommodation."  Due to Hornblower's business closures due to the Covid-19 pandemic, Hornblower was not operating any of its cruises out of New York City's Piers 16 and 51.  As such, plaintiff does not and cannot allege that he would have been able to perform "in a reasonable manner" the essential functions of his job as a Sous Chef because the place of business where he was employed was effectively closed three (3) days after his injury due to the Covid-19 pandemic.  See Vangas v. Montefiore Medical Center, 823 F.3d 174 (2d. Cir. 2016).

Thus, Hornblower could not have placed plaintiff in position to perform the essential functions of a Sous Chef because their vessels were no longer operating from Pier 16 and 51.

Further, plaintiff could not have reasonably expected Hornblower to place him in an office position in the Human Resources or IT Department, as that would place an undue hardship on Hornblower, as they would presumably have to train plaintiff in a field that he had no experience in, and such a request would be outrageous.  Notably, upon being placed on a furlough plaintiff was enjoying "equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities," i.e. continued pay, PTO, and health benefits until he was terminated in May of 2020 (plaintiff's health benefits continued for another two (2) weeks after his termination).  See Limauro v. Consolidated Edison Company of New York, Inc., 2021 WL 466952, at *7 (S.D.N.Y., 2021).

Per the affidavit of COO Metivier, plaintiff did not contact Hornblower's Human Resources Department to engage in a dialogue about his March 14, 2020 injury, a return to work, additional pay and/or any requests for any comparable accommodations, despite being offered to contact Human Resources in his Notice of Furlough letter.

Indeed, it is unclear exactly what plaintiff expected Hornblower to do to accommodate him during a global pandemic while their business was closed.  Per COO Metivier, training plaintiff in different field or department, such as Human Resources or IT, would have been nonsensical and placed a burden on Hornblower, considering he had no experience in those fields.  Further, plaintiff conveniently forgets that he was furloughed three (3) days after his alleged accident, not fired as he alleges in his Complaint.

Therefore, it is respectfully submitted that plaintiff cannot establish sufficient evidence from which a reasonable jury could find that plaintiff requested and was qualified for an available accommodation and, therefore, that plaintiff necessarily could not have performed the essential duties of this position.  Moreover, plaintiff has likewise failed to establish sufficient evidence by

which a reasonable jury could find that Hornblower did not engage in an interactive process with plaintiff, notwithstanding the fact that plaintiff did not request any accommodation.

### K. Plaintiff is Barred from Offering any Expert Testimony and/or Evidence at the Time of Trial, including in Opposition to the Instant Motion

Lastly, plaintiff must be precluded from offering any expert testimony and/or evidence at the time of trial, including in opposition to the instant motion, in accordance with Individual Rule 3F, and pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), 26(a)(2)(C), 26(a)(2)(D) and 37(c)(1). Plaintiff has failed to identify and/or disclose any expert witness information in this matter to date, notwithstanding that the plaintiff's expert discovery deadline expired on July 30, 2021. This utter failure by plaintiff includes the failure to make an appropriate Rule 26 expert disclosure for upon whom, it is anticipated, plaintiff will attempt to rely in opposition to that aspect of the instant motion. Such failure cannot be countenanced, and plaintiff must be precluded from offering any expert testimony, evidence, opinions and/or conclusions in this action, including any such opinions or conclusions by plaintiff's treating physicians or any other expert in opposition to this motion and would prejudice the defendants. See Williams v. County of Orange, 2005 WL 6001507 (S.D.N.Y. 2005); and Colon v. Linchip Logistics LLC, 330 F.R.D. 359, 367 (E.D.N.Y. 2019)( where the Court precluded a parties' untimely expert disclosure, holding, '[w]here, as here, an individual is not identified as a potential witness ... until after the close of discovery, the offending party subverts the purpose of mandatory disclosures and undoubtedly prejudices their opponent.' (emphasis in original); citing Rivera v. United Parcel Serv., 325 F.R.D. 542, 548 (S.D.N.Y. 2018)).

For these reasons, as well as those set forth in the Schacher Certification, together with the Exhibits annexed thereto, as well as in moving defendants' Rule 56.1(a) Statement of Undisputed Material Facts, the moving defendants are entitled to 1) Summary Judgment and Complete

Dismissal of plaintiff's Complaint, pursuant to Rule 56 of the Federal Rules of Civil Procedure, 2)

preclusion and exclusion of any expert testimony and/or evidence offered by plaintiff at the time

of trial, or in opposition to the instant motion in accordance with Individual Rule 3F and pursuant

to Rules 26(a)(2)(B), 26(a)(2)(C), 26(a)(2)(D) and 37(c)(1) of the Federal Rules of Civil Procedure;

together with such other, further or different relief, which this Honorable Court may deem just and

proper.

## **CONCLUSION**

For all the foregoing reasons, it is respectfully submitted that moving defendants' Motion

for Summary Judgment should be granted in all respects.


Respectfully Submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

By:

Michael J. Schacher (MS-3434)
Attorneys for Defendants
HORNBLOWER GROUP, INC., HORNBLOWER
NEW YORK, LLC and HORNBLOWER
CRUISES AND EVENTS, LLC
500 Mamaroneck Ave Suite 503
Harrison, NY  10528

**Via: CM/ECF**

TO:   SHALOM LAW PLLC
      Attorneys for Plaintiff
      105-13 Metropolitan Avenue
      Forest Hills, New York 11375