GORDON REES SCULLY MANSUKHANI, LLP
Michael J. Schacher, Esq. (MS-3434)
Attorneys for Defendants
500 Mamaroneck Ave Suite 503
Harrison, NY  10528
T: (914) 777-2237

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X       FILED VIA ECF

LENNY MOLINA,                                                             Civil No.: 1:20-cv-10821-GHW

                               Plaintiff,            **DEFENDANTS' LOCAL RULE 56.1(a)**

    -against-                                                            **STATEMENT OF MATERIAL FACTS**

HORNBLOWER GROUP, INC., HORNBLOWER          **IN SUPPORT OF MOTION FOR**
NEW YORK, LLC and HORNBLOWER CRUISES        <u>**SUMMARY JUDGMENT**</u>
AND EVENTS, LLC,

                               Defendants.

---------------------------------------------------------------- X

        Defendants, HORNBLOWER GROUP, INC., HORNBLOWER NEW YORK, LLC and HORNBLOWER CRUISES AND EVENTS, LLC (hereinafter collectively "Hornblower" or "moving defendants"), by and through their attorneys, GORDON REES SCULLY MANSUKHANI, LLP, submits the following as and for their Statement of Undisputed Material Facts pursuant to Rule 56.1(a) of the Local Civil Rules for the Southern District of New York, United States District Court, in support of the moving defendants' Motion for Summary Judgment and Motion to Exclude any Expert Testimony and/or Evidence:[1]

---

[1] All Exhibits referred to in moving defendants' Statement of Undisputed Material Facts are those attached to the Attorney Certification of Michael J. Schacher, Esq., dated December 29, 2021.

1

**UNDISPUTED MATERIAL FACTS**

1. Plaintiff LENNY MOLINA (hereinafter "plaintiff") was hired and began his position as a PM Sous Chef for Hornblower on March 27, 2019. [Exhibit "L" at ¶10].

2. Upon his hiring, plaintiff was required to review multiple Hornblower documents, including, but not limited to: a New Hire Package, Job Description (including a "Duties and Responsibilities" and "Competencies" sections), Job Description Acknowledgement Form and an Acknowledgement of Policies Form, and Hornblower's Crew Handbook. [Exhibit "C", Exhibit "L" at ¶12, Exhibit "M" ¶9].

3. On May 15, 2019, due to poor work performance, plaintiff received his first disciplinary write up from Hornblower. [Exhibit "D", Exhibit "L" at ¶¶13-14, Exhibit "M" ¶¶12-13].

4. Specifically, on May 15, 2019, plaintiff received a "Documenting of Crew Coaching & Counseling Session" Form and Warning due to his: poor communication, attitude and hostility toward staff, failure to follow-up on menu and production analysis, failure to walk-through and follow-up with staff, and ineffective direction of staff. [Exhibit "D", Exhibit "L" at ¶¶13-14, Exhibit "M" ¶¶12-13].

5. The May 19, 2019 Form and Warning also notes plaintiff needed to discuss a training schedule with Hornblower's Executive Chef Scott Hauser, and discussed that future write up could result in harsher disciplinary action, including possible suspension and dismissal. [Exhibit "D", Exhibit "M" ¶13].

6. Subsequently, due to his continued subpar work performance, on July 5, 2019, plaintiff received his second disciplinary write up from Hornblower, namely, a "Disciplinary

Action Form" from Executive Chef Scott Hauser and Human Resources. [Exhibit "E", Exhibit "L" at ¶15, Exhibit "M" ¶14].

7. Per the July 5, 2019 "Disciplinary Action Form," plaintiff was again formally written up for "Unsatisfactory Performance" and "Violation of Company Policies/Procedures," and the violation notes: "employee (plaintiff) did not conduct a proper walk through when closing their assigned vessel leaving behind a tray of salad and watermelon." [Exhibit "E", Exhibit "L" at ¶15, Exhibit "M" ¶14].

8. Within the July 5, 2019 "Disciplinary Action Form," plaintiff was given another warning and explained that consequences should an incident occur again would result in probation. [Exhibit "E", Exhibit "L" at ¶15, Exhibit "M" ¶14].

9. Thereafter, on February 24, 2020, plaintiff received his third disciplinary write up from Hornblower, namely, a "Disciplinary Action Form" from Executive Chef Scott Hauser and Human Resources. [Exhibit "F", Exhibit "L" at ¶16, Exhibit "M" ¶15].

10. Plaintiff's February 24, 2020 violation was noted as "Unsatisfactory Performance" due to plaintiff's failure to plan accordingly for a wedding party. [Exhibit "F", Exhibit "L" at ¶16, Exhibit "M" ¶15].

11. As a result of his February 24, 2020 violation, plaintiff was notified that another incident would result in his suspension. [Exhibit "F", Exhibit "L" at ¶16, Exhibit "M" ¶15].

12. The May 19, 2019 counseling session, and the July 5, 2019 and February 24, 2020 Disciplinary Action Forms were part of plaintiff's ongoing performance issues during his employment with Hornblower. [Exhibit "L" at ¶32, Exhibit "M" ¶16].

13. During his employment with Hornblower as a Sous Chef, Mr. Molina was an inconsistent, below average and subpar worker. [Exhibit "L" at ¶32, Exhibit "M" ¶16].

14. On March 14, 2020, at 3:30 pm., plaintiff was involved in an accident during a Hornblower work shift at Pier 15 where he allegedly injured his left big toe. [Exhibit "G", Exhibit "L" at ¶17, Exhibit "M" ¶17].

15. On March 15, 2020, plaintiff sent an email reporting the March 14, 2020 accident from his Hornblower e-mail to a group email, "HNY EVM Reports," which was received and reviewed by Hornblower's Co-Chief Operating Officer Christine Metivier and Executive Chef Scott Hauser. [Exhibit "H", Exhibit "L" at ¶18, Exhibit "M" ¶18].

16. Two (2) days later, on March 17, 2020, the majority of Hornblower's salaried crew at Piers 15, 40, and 61 including plaintiff and his supervisor Executive Chef Scott Hauser, were furloughed due to onset of the Covid-19 pandemic which prevented Hornblower from operating its cruises from Pier 15, 40, and 61. [Exhibit "I", Exhibit "L" at ¶19, Exhibit "M" ¶19].

17. The March 17, 2020 furlough did not result in a termination of plaintiff's employment with Hornblower. [Exhibit "I", Exhibit "L" at ¶21].

18. The decision to furlough the vast majority of Hornblower's crew members at Piers 15, 40 and 61, including plaintiff and his supervisor Executive Chef Scott Hauser, was due to the onset of unprecedented Covid-19 pandemic and its direct results, including resulting governmental restrictions (including the Executive Orders passed by then Governor Andrew Cuomo), which significantly impacted Hornblower's ability to operate their business. [Exhibit "L" at ¶25].

19. Subsequently, in mid-May of 2020, due to the direct impacts of Covid-19, which prevented Hornblower from operating its vessels, Hornblower made the difficult decision to terminate a substantial part of their crew staff at their Pier 15, 40 and 61 locations, including plaintiff. [Exhibit "L" at ¶27].

20. In mid-May 2020, due to the direct impact of Covid-19 which prevented cruises from departing from Piers 15, 40 and 61, Hornblower made the decision to terminate a portion of their crew at their Pier 15, 40 and 61 locations, and Hornblower selected the less exemplary workers for termination at that time. [Exhibit "L" at ¶27].

21. On May 18, 2020, Hornblower's General Manager Nilda Bracero sent plaintiff a "Change in Employment Relationship" letter, which served as plaintiff's notice of termination of his employment with Hornblower effectively immediately. [Exhibit "J", Exhibit "L" at ¶29].

22. The May 18, 2020 "Change in Employment Relationship" letter indicates Hornblower restructured and reduced its workforce in response to Covid-19 and resulting business circumstances that were not reasonably foreseeable. [Exhibit "J", Exhibit "L" at ¶30].

23. The May 18, 2020 "Change in Employment Relationship" letter also indicates that although Mr. Molina termination was effective on May 18, 2020, his medical, dental, vision, or other insurance coverage through Hornblower would end on May 31, 2020. [Exhibit "J", Exhibit "L" at ¶30].

24. The May 18, 2020 termination letter advised plaintiff that he may be eligible for Unemployment Insurance ("UI"), and the letter advised Mr. Molina how he could obtain additional information regarding UI and other resources available for workers on New York State's Department of Labor website. [Exhibit "L" at ¶31].

25. Hornblower's crew terminations in May of 2020 were a direct result of the unprecedented Covid-19 pandemic, including the resulting governmental restrictions (including the Executive Orders passed by then Governor Andrew Cuomo), and the resulting economic and business constraints, which prevented them from operating cruises. [Exhibit "L" at ¶34].

26.     Between the date of plaintiff's furlough on March 17, 2020 and his layoff on May 18, 2020, Hornblower was not operating any of their cruises that were supported by their Pier 15, 40 and 61 crew due to the Covid-19 pandemic, as such, there was no need for plaintiff's services as a PM Sous Chef, and there were no comparable temporary positions in any other of Hornblower's Departments for plaintiff to serve in during that time.  [Exhibit "L" at ¶35].

27.     Between March 17, 2020 and May 18, 2020 plaintiff did not contact Hornblower's Human Resources Department to engage in any dialogue about his March 14, 2020 injury, a return to work, and/or any request for any comparable accommodations, despite being offered to contact Human Resources in his notice of furlough letter.  [Exhibit "L" at ¶36].

28.     Thereafter, in August of 2020, Hornblower made the difficult decision to terminate all but a relatively small portion of the remaining Pier 15, 40 and 61 crew, including the termination of plaintiff's supervisor Executive Chef Scott Hauser.  [Exhibit "L" at ¶28].

29.     The Covid-19 pandemic presented unprecedented business constraints and Hornblower was forced to take extraordinary measures in regards to furloughing and subsequently terminating all but a relatively small number of employees at these worksites.  [Exhibit "L" at ¶37].

30.     On March 30, 2021, the Court entered a Scheduling Order, wherein Hon. Gregory H. Woods ordered that plaintiff's expert disclosures, including expert testimony, were to be served by July 30, 2021.  [See Doc. No. 25].

31.     Prior to the July 30, 2021 deadline, and to the present, the plaintiff has not disclosed any experts or their associated testimony, evidence or reports via FRCP 26(a)(2)(B) or 26(a)(2)(C).

32.     On August 13, 2021, plaintiff appeared for an Independent Medical Examination with defendants' expert foot surgeon and podiatrist, Dr. Paul Greenberg.  [Exhibit "K"].

Dated: Harrison, New York
December 29, 2021

                                                  Respectfully Submitted,

                                                  GORDON REES SCULLY
                                                  MANSUKHANI, LLP

By:  _____

                                                  Michael J. Schacher, Esq.
                                                  Attorneys for Defendants
                                                  HORNBLOWER GROUP, INC.,
                                                  HORNBLOWER NEW YORK, LLC and
                                                  HORNBLOWER CRUISES AND
                                                  EVENTS, LLC
                                                  500 Mamaroneck Ave Suite 503
                                                  Harrison, NY  10528
                                                  T: (914) 777-2237
                                                  File No.: EVR-1224573

**Via: CM/ECF**

TO:    Jonathan Shalom, Esq.
         SHALOM LAW PLLC,
         Attorneys for Plaintiff
         105-13 Metropolitan Avenue
         Forest Hills, New York 11375
         T: (718) 971-9474