UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

LENNY MOLINA,

                                                    Civil No.: 1:20-cv-10821-GHW

                    Plaintiff,                      **AFFIDAVIT**

    -against-

HORNBLOWER GROUP, INC., HORNBLOWER
NEW YORK, LLC and HORNBLOWER CRUISES
AND EVENTS, LLC,

                    Defendants.

------------------------------------------------------------------ X

STATE OF NEW JERSEY        )
                           ) SS:
COUNTY OF HUDSON           )

     **CHRISTINE METIVIER**, being duly sworn, hereby affirms, deposes and says:

    1.     I am over the age of 18 and understand the importance of an oath.  The statements made in this affidavit are based upon my personal knowledge.

    2.     I am currently employed by the defendants, HORNBLOWER GROUP, INC., HORNBLOWER NEW YORK, LLC and HORNBLOWER CRUISES AND EVENTS, LLC (hereinafter collectively "Hornblower"), as Co-Chief Operating Officer for Hornblower's City Experiences cruises located at 62 Chelsea Piers, Suite 200, New York, New York 10011.

    3.     I have held the aforesaid title at Hornblower since July 12, 2021.  As the Co-Chief Operating Officer for Hornblower I am responsible for: reporting to the Chief Executive Officer on all matters related to the company's business, and oversee operations of the company, including the , sales, food and beverage, vessel operations and administration, business strategies, company policies and procedures, overseeing all of Hornblower's ports of operation throughout the United States, working with team executives, analyzing and interpreting data and metrics, overseeing the

senior management of the company, expansion activities, and maintaining relationships with partners and vendors.

4.       Prior to my current position with Hornblower, I served as Hornblower's Regional Vice President for the Northeast from May of 2019 through August of 2021. My duties as Regional Vice President included: overseeing the New York City and Philadelphia operations including New York City's Pier 15, 40 and 61 locations, overseeing the implementation of company policies and procedures related to the hiring, training, furloughing and termination of employees, setting budgets and business plans, devising strategies to increase sales, evaluating all departments' performances, monitor all departments, growth and progress, and reporting to the Chief Operating Officer.

5.       Prior to my above positions at Hornblower I was employed by Entertainment Cruises, Inc. as their Regional Vice President (Northeast Division) for approximately three (3) years, Vice President and General Manager for approximately eight (8) years, and Director of Sales for approximately five (5) years.

6.       City Experiences by Hornblower offers Premier Dinner Cruises, Lunch Cruises, Brunch Cruises, New Year's Eve Cruises and private parties and wedding parties from New York City's Piers 15 and 40, as well as other locations in the United States.

7.       It is my understanding that plaintiff, LENNY MOLINA ("Mr. Molina"), a former Hornblower employee, is alleging in this lawsuit allegations of disability discrimination, retaliation and wrongful termination by Hornblower, under the Americans with Disabilities Act, 42 U.S.C. § 12101, the New York State Human Rights Law, the New York City Human Right Law, and N.Y.C. Admin Code 8-107(1)(a).

8.    In mid-March of 2019, Mr. Molina was interviewed by Hornblower's Executive Chef Scott Houser for a position as PM Sous Chef for the Cruise Gallery Department for Hornblower's New York City Pier 15 and 40 locations.

9.    Following Executive Chef Scott Houser's interview and a review of Mr. Molina's resume and references, he requested the authority from Hornblower's Human Resources Department to hire Mr. Molina for the above mentioned position.  Subsequently, Hornblower's Human Resources Department also reviewed Mr. Molina's resume and references, and following Mr. Molina passing a drug test and background check, Human Resources approved Executive Chef Scott Houser's request to hire Mr. Molina.

10.    Mr. Molina began his position as PM Sous Chef on March 27, 2019.

11.    Upon Mr. Molina's hiring, Executive Chef Scott Houser began to serve as Mr. Molina's supervisor at Hornblower.

12.    Upon his hiring, plaintiff was required to review multiple Hornblower documents, including, but not limited to: a New Hire Package, Job Description (including a "Duties and Responsibilities" and "Competencies" sections), Job Description Acknowledgement Form and an Acknowledgement of Policies Form, and Hornblower's Crew Handbook.  (Annexed as **Exhibit "A"** is a true and accurate copy of the above-mentioned documents that Mr. Molina received from Hornblower which were disclosed in Hornblower's Rule 26 Disclosures (See Exhibit "A")).

13.    On May 15, 2019, Mr. Molina received a "Documenting of Crew Coaching & Counseling Session" Form and  Warning (related to a May 11, 2019 "problem") due to his: 1) poor communication; 2) need to "tone down attitude to get respect from staff"; 3) failure to follow-up on menu and production analysis; 4) hostility toward co-workers; 5) "needs to tone it down around staff"; 6) failure to walk-through and follow-up with staff; and 7) need to direct staff better.

3

(Annexed as **Exhibit "B"** is a true and accurate copy of the May 9, 2019 "Documenting of Crew Coaching & Counseling Session" Form and Warning).

14.     The May 15, 2019 Form and Warning also notes Mr. Molina needed to discuss a training schedule with Executive Chef Scott Houser.  The Form and Warning noted "continuance of improper conduct may result in harsher disciplinary action, up to and including suspension and dismissal."   On May 15, 2019, the Form was signed by Executive Chef Scott Houser and Mr. Molina. *Id.*

15.     Subsequently, on July 5, 2019, Mr. Molina received a "Disciplinary Action Form" (related to a July 4, 2019 and July 5, 2019 incident) from Executive Chef Scott Houser and Human Resources.  Per the Form, Mr. Molina violations incurred were "Unsatisfactory Performance" and "Violation of Company Policies/Procedures."  In the description of the violation the Form notes: "employee (Mr. Molina) did not conduct a proper walk through when closing their assigned vessel leaving behind a tray of salad and watermelon."  Per the Form, Mr. Molina was given a warning and that the consequences should an incident occur again would be probation.  The Form was signed by Executive Chef Scott Houser and Mr. Molina on June 17, 2019, and by a representative from Human Resources (Bryan Miranda) on July 19, 2019.  (Annexed as **Exhibit "C"** is a true and accurate copy of the July 5, 2019 "Disciplinary Action Form").

16.     Afterward, on February 24, 2020, Mr. Molina received a second "Disciplinary Action Form" (related to a February 7, 2020 and February 16, 2020 wedding party incident) from Executive Chef Scott Hauser.  The type of violation was noted as "Unsatisfactory Performance."  A description of the violation noted that "on 2/7 (Mr. Molina) did not plan accordingly.  Salmon was not ready on time.  He did not check vessel or work order to make sure items on, no milk.  On 2/16 no chocolate cake or (illegible) - order on manifest – see attached."  Mr. Molina was given a warning, and notified that another incident would result in his suspension.  The Form was signed

4

by Executive Chef Scott Houser and Mr. Molina on February 24, 2020, and was signed by Food & Beverage Director, Luigi Dioge. (Annexed as **Exhibit "D"** is a true and accurate copy is a true and accurate copy of the February 24, 2020 "Disciplinary Action Form").

17.     I am aware Mr. Molina was allegedly injured during a Hornblower work shift on March 14, 2020 at 3:30 pm., when he was lifting a Cambro food cart from a van and the Cambro food cart tipped over and fell on his left foot. I did not witness the accident, but I have reviewed the Hornblower Incident Report, signed by Cordell Tillman the Senior Pier Manager on March 14, 2020.  (Annexed as **Exhibit "E"** is a true and accurate copy of the March 14, 2020 Incident Report).

18.     On March 15, 2020, at 1:55 p.m., Mr. Molina sent an email reporting the March 14, 2020 alleged accident from his Hornblower e-mail to a Hornblower's Human Resources group email, "HNY EVM Reports," which I received and reviewed. (Annexed as **Exhibit "F"** is a true and accurate copy of Mr. Molina's March 15, 2020 email).

19.     Two (2) days later, on March 17, 2020, 82% of Hornblower's salaried crew at Pier 15, 40, and 61 including Mr. Molina and his supervisor Executive Chef Scott Hauser, were furloughed due to onset of the Covid-19 pandemic.

20.     Specifically, a "Notice of Furlough Effective March 17, 2020" was signed by me and sent to all crew members regarding their furlough effective immediately. (Annexed as **Exhibit "G"** is a true and accurate copy of the March 17, 2020 Notice of Furlough letter signed by me). Hornblower's March 17, 2020 "Notice of Furlough" letter discusses the recent news and uncertainty surrounding the Covid-19 situation which had caused unprecedented challenges that were affecting Hornblower's business. *Id*.

21.     Hornblower's March 17, 2020 "Notice of Furlough" letter notes that unfortunately, Hornblower had to make the difficult decision that directly impacted our valued crew members,

5

including Mr. Molina, employed at Pier 15 and 40 in New York City. *Id.* Further, the "Notice of Furlough" letter notes, "[t]his letter serves as an official notice of furlough...[p]lease note that this is not a termination of employment, but a pause in employment until we are able to get the operation back up and running." *Id.*

22.     In terms of compensation, Hornblower's March 17, 2020 "Notice of Furlough" notes, "[y]ou will be paid 16 hours of regular pay and 40 hours of PTO, paying you through Tuesday, March 24th (2020). The 40 hours will come from your available PTO bank as applicable...[w]e will do our best to reach out regularly to inform you of these changes, but we encourage you to learn more and apply for any benefits you may be eligible for. A full list of all local and regional U.S. Department of Labor (DOL) programs and services including unemployment benefits by state can be found here: https://www.dol.gov/general/location." *Id.*

23.     In terms of further assistance and accommodation, including health care benefits, Hornblower's March 17, 2020 "Notice of Furlough" letter indicates that employees' "elected benefits and your qualification for future elected benefits will not be affected by this furlough." *Id.* Hornblower's March 17, 2020 letter notes, "[w]e want to do everything we can to work with you through this difficult time. Until further notice the company will pay both the employer portion and the employee portion of health insurance costs." *Id.* The letter advised employees to "be on the lookout for open enrollment changes coming next week as we will be using UltiPro (Hornblower's Human Resources server) to elect benefits during our Active Open Enrollment Period. You may continue to access UltiPro during this furlough through OKTA (an application to log into UltiPro)." *Id.*

24.     Plaintiff continued to be paid by Hornblower up until May 17, 2020 and received health insurance through May 31, 2020. Plaintiff's final paycheck included his personalized benefit details. Plaintiff's payroll statement and personalized benefit details, dated May 22, 2020, his

furlough deduction agreement; and his unemployed insurance form are annexed as **Exhibit "A"** to Hornblower's Rule 26 Disclosures (See Exhibit "G" through "J").

25.     The decision to furlough 82% of Hornblower crew members at Piers 15, 40 and 61, including Mr. Molina and his supervisor Executive Chef Scott Hauser, was based on the unprecedented Covid-19 pandemic and its direct results, including resulting governmental restrictions (including the Executive Orders passed by then Governor Andrew Cuomo), which significantly impacted Hornblower's ability to operate their business.

26.     Placing plaintiff on a furlough had absolutely nothing to do with his alleged left big toe injury three (3) days prior to the issuance of the Notice of Furlough, and only related to the onset of Covid-19 pandemic and its resulting constraints of Hornblower's operations.

27.     Subsequently, in mid-May of 2020, due to the direct impacts of Covid-19, Hornblower made the difficult decision to terminate a substantial part of their crew staff at their Pier 15, 40 and 61 locations, including Mr. Molina.   At that time, in mid-May, Hornblower made the decision to terminate approximately 25% of its employees at these locations.   Hornblower selected the less exemplary workers for termination at that time.

28.     Thereafter, in August of 2020, Hornblower made the difficult decision to terminate all but a relatively small portion of the remaining Pier 15 and 40 crew.   This included the termination of plaintiff's supervisor Executive Chef Scott Hauser.

29.     On May 18, 2020, Hornblower's General Manager Nilda Bracero sent Mr. Molina a "Change in Employment Relationship" letter, which served as Mr. Molina's notice of termination of his employment with Hornblower effectively immediately.   (Annexed as **Exhibit "H"** is a true and accurate copy of the May 18, 2020 "Change in Employment Relationship" letter drafted by and signed by Nilda Bracero).   Human Resources drafted the Change in Employment Relationship letter and I can confirm its authenticity.

30.     The May 18, 2020 "Change in Employment Relationship" letter notes Hornblower "is restructuring and reducing its workforce in response to Covid-19 and resulting business circumstances that were not reasonably foreseeable." *Id.* The termination letter also indicates that although Mr. Molina termination was effective on May 18, 2020, his medical, dental, vision, or other insurance coverage through Hornblower would end on May 31, 2020. *Id.* At that time, Mr. Molina was advised that he had the option of continuing his health benefits at his own expense under the Consolidated Omnibus Budget Reconciliation Act (COBRA). *Id.*

31.     Further, the May 18, 2020 termination letter advised Mr. Molina that he may be eligible for Unemployment Insurance ("UI"), and the letter advised Mr. Molina how he could obtain additional information regarding UI and other resources available for workers on New York State's Department of Labor website. *Id.* The termination letter indicates Hornblower would not dispute Mr. Molina's unemployment insurance claim. *Id.*

32.     The decision to involve Mr. Molina in the employee terminations on May 18, 2020, was solely a non-discriminatory, legitimate business decision, due to the above three (3) write-ups Mr. Molina received and not due to his alleged left toe injury, disability or in retaliation resulting from Mr. Molina's March 14, 2020 alleged accident.    In addition, the indication from Hornblower's Food and Beverage Director Mark Steiner and Human Resources was that Mr. Molina was an inconsistent and below average worker during his employment with Hornblower. Hornblower's Food and Beverage Director Mark Steiner and Human Resources provided me with multiple examples of Mr. Molina's ongoing performance issues during his employment with Hornblower, which support the decision to terminate Mr. Molina in May of 2020.

33.     In addition, Hornblower made the decision to not include the four (4) other Pier 15, 40 and 61 Sous Chefs in the May 2020 terminations because those Sous Chefs' performance levels were significantly higher than Mr. Molina's. I personally reviewed the four (4) other Sous Chefs'

employment files (specifically, Sous Chefs Roschan Sealey, Orif Vahobov, Earnie Carrasquillo and Ayana Hogg) and their files reveal that they were outstanding employees and did not have any verbal or written warnings, including Counseling Sessions or Disciplinary Action write ups, unlike Mr. Molina who had multiple issues with his work performance and received several verbal and written warnings, providing the basis for his termination in May of 2020.

34.    Hornblower's crew terminations in May of 2020 were a direct result of the unprecedented Covid-19 pandemic, including the resulting governmental restrictions (including the Executive Orders passed by then Governor Andrew Cuomo), and the resulting economic and business constraints.

35.    Between the date of Mr. Molina's furlough in March 2020 and his layoff in May 2020, Hornblower was not operating any of the cruises that were supported by the Pier 15, 40 and 61 crew, due to the Covid-19 pandemic.  Therefore, there was no need for plaintiff's services as a PM Sous Chef, and there were no comparable temporary positions in any other of Hornblower's Departments for plaintiff to serve in during that time.  Training Mr. Molina in different field or department, such as Human Resources or IT, would have been nonsensical and placed a burden on Hornblower, considering he had no experience.

36.    During Mr. Molina's furlough, he had the ability to email multiple Human Resources mailboxes (EC People mailbox, HCE payroll mailbox, HRHCE mailbox).  Following his receipt of the Notice of Furlough, Hornblower has no record of Mr. Molina contacting Hornblower's Human Resources Department to engage in any dialogue about his March 14, 2020 injury, a return to work, and/or any request for any comparable accommodations, despite being offered to contact Human Resources in his notice of furlough letter.

37.     The Covid-19 pandemic presented unprecedented business constraints and Hornblower was forced to take extraordinary measures in regards to furloughing and subsequently terminating all but a relatively small number of employees at this worksite.

38.     Hornblower's decision to furlough, and ultimately terminate Mr. Molina was based on legitimate, non-discriminatory business considerations, and not based on his March 14, 2020 alleged accident and injury.

39.     In sum and based upon the foregoing, I submit that Hornblower's motion for summary judgment and complete dismissal of plaintiff's Complaint should be in all respects granted.  I hereby certify that the statements made herein are true and correct.

<br>

_____
**CHRISTINE METIVIER**

Sworn to before me this
27 day of December, 2021

_____
Notary Public

> ZOILA R. VARGAS
> NOTARY PUBLIC OF NEW JERSEY
> Commission # 2374097
> My Commission Expires 5/27/2023

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

LENNY MOLINA,                                  Civil No.: 1:20-cv-10821-GHW

                        Plaintiff,             **ATTORNEY CERTIFICATE OF**
                                               <u>**CONFORMITY**</u>

        -against-

HORNBLOWER GROUP, INC., HORNBLOWER
NEW YORK, LLC and HORNBLOWER CRUISES
AND EVENTS, LLC,

                        Defendants.

-------------------------------------------------------------- X
STATE OF NEW YORK                  )
                                   ) SS:
COUNTY OF WESTCHESTER              )

        Michael J. Schacher, Esq., being duly sworn, declares, certifies, deposes and says:

1.      I am an associate with the law firm Gordon Rees Scully Mansukhani, with offices located
        at 500 Mamaroneck Avenue, Suite 503, Harrison, New York 10528.

2.      I am an attorney duly admitted to practice law before the Courts of the State of New
        Jersey and The United States District Court for the District of New Jersey.

3.      I am qualified to make this certificate of conformity pursuant to Section 299-a of the New
        York Real Property Law.

4.      I am fully acquainted with the laws of the State of New Jersey pertaining to the
        administration and taking of oaths and affirmations.

5.      The oath by Christine Metivier, named in the foregoing instrument, taken before Zoila R.
        Vargas, State of New Jersey notary public, on December 27, 2021, was taken in the
        manner prescribed by the laws of the State of New Jersey.

6.      The oath noted above conforms to the laws of New Jersey, and is in all respects valid
        and effective in the State of New Jersey.

        Harrison, New York
        December 29, 2021

MICHAEL J. SCHACHER, ESQ.

Sworn to before me this
29 day of December, 2021

Notary Public

JASON C. SCOTT
Notary Public, State of New York
No. 02SC6246606
Qualified in Orange County
Commission Expires August 15, 20__23

2

EXHIBIT "A"

GORDON REES SCULLY
MANSUKHANI, LLP
Ryan E. Dempsey, Esq. (RD-8201)
Attorneys for Defendants
HORNBLOWER GROUP, INC.,
HORNBLOWER NEW YORK, LLC and
HORNBLOWER CRUISES AND EVENTS, LLC
500 Mamaroneck Avenue, Suite 503
Harrison, New York 10528
(914) 777-2225

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| LENNY MOLINA, | Civil No.: 20-cv-10821(GHW) (OTW) |
| Plaintiff, | **DEFENDANTS' AUTOMATIC DISCLOSURE PURSUANT TO RULE 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE** |
| -against- | |
| HORNBLOWER GROUP, INC., HORNBLOWER NEW YORK, LLC and HORNBLOWER CRUISES AND EVENTS, LLC, | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**C O U N S E L O R S:**

Defendants, HORNBLOWER GROUP, INC., HORNBLOWER NEW YORK, LLC and

HORNBLOWER CRUISES AND EVENTS, LLC (hereinafter "Hornblower" or "responding

defendants"), by and through their attorneys, GORDON REES SCULLY MANSUKHANI, LLP,

submit, upon information and belief, the following disclosure pursuant to Rule 26 of the Federal

Rules of Civil Procedure.

**A.   The name and, if known, the address and telephone number of each individual likely to have discoverable information that disclosing party may use to support its claims or defenses.**

Plaintiff;

Nilda Bracero, Hornblower;

Christine Metivier, Hornblower;

Mark Steiner, Hornblower;

Elizabeth Tornatore, Hornblower;

Rebecca Rose, Hornblower;

Darin Altilio, Hornblower;

Scott Hauser, Hornblower;

Cordell Tillman, Hornblower;

Bryan Miranda, Hornblower.

Responding defendants reserve their right to supplement, amend and/or correct the foregoing disclosure based on the development of additional facts or information obtained through discovery and responding defendants' continuing investigation.

B.  **A copy of, or a description by category and location of, all documents, data compilation, and tangible things that are in possession, custody or control of the disclosing party and that the disclosing party may use to support its claims or defenses:**

- Annexed hereto as **Exhibit "A"** please find plaintiff's personnel file;
- Annexed hereto as **Exhibit "B"** please find Hornblower's furlough notification and e-mail to plaintiff, dated and effective March 17, 2020;
- Annexed hereto as **Exhibit "C"** please find Hornblower's separation letter to plaintiff, dated May 18, 2020;
- Annexed hereto as **Exhibit "D"** please find Hornblower's incident report, dated March 14, 2020;
- Annexed hereto as **Exhibit "E"** please find e-mail communications between plaintiff and Hornblower, dated March 15, 2020, regarding plaintiff's alleged injury;
- Annexed hereto collectively as **Exhibit "F"** please find Hornblower's disciplinary action forms regarding plaintiff, dated July 5, 2019 and February 24, 2020;
- Annexed hereto as **Exhibit "G"** please find plaintiff's payroll statement, dated May 22, 2020;
- Annexed hereto as **Exhibit "H"** please find plaintiff personalized benefit details, dated May 22, 2020;

- Annexed hereto as **Exhibit "I"** please find plaintiff's furlough deduction agreement;
- Annexed hereto as **Exhibit "J"** please find plaintiff's unemployed insurance form.

Responding defendants reserve their right to supplement, amend and/or correct the foregoing disclosure based on the development of additional facts or information obtained through discovery and responding defendants' continuing investigation.

**C.**   **A computation of any category of damages claimed by disclosing party.**

Not applicable to responding defendants.

**D.**   **Any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment.**

Responding defendants have sufficient insurance coverage in the amount of $7,500,000, with a $250,000 retention. Coverage was issued by Everest National Insurance Company. The policy number is PCIP000145-201 and is effective from April 27, 2020 to April 27, 2021.

The above automatic disclosure is made prior to the completion of discovery and responding defendants' investigation of the facts pertaining to this action. Accordingly, responding defendants reserve the right to supplement, amend and/or correct each of the foregoing disclosures based on the development of additional facts or information obtained through discovery and responding defendants' continuing investigation.

Dated: July 9, 2021

Respectfully Submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

By:

Ryan E. Dempsey (RD-8201)
Attorneys for Defendants
HORNBLOWER GROUP, INC., HORNBLOWER
NEW YORK, LLC and HORNBLOWER
CRUISES AND EVENTS, LLC

- 3 -

500 Mamaroneck Ave Suite 503
Harrison, NY  10528
T: (914) 777-2209
File No.: EVR-1224573

TO:     Jonathan Shalom, Esq.
        SHALOM LAW PLLC
        Attorneys for Plaintiff
        105-13 Metropolitan Avenue
        Forest Hills, New York 11375
        T: (718) 971-9474

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK          )
                           )  ss.:
COUNTY OF WESTCHESTER      )

BRITTANY BLOUNT, being duly sworn, deposes and says:

I am not a party to the action, am over the age of 18 years of age, and am employed in Westchester County, New York.

On July 9, 2021, I served the within **DEFENDANTS' AUTOMATIC DISCLOSURE PURSUANT TO RULE 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE** by depositing a true copy thereof enclosed in a postpaid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

TO:   Jonathan Shalom, Esq.
      SHALOM LAW PLLC
      Attorneys for Plaintiff
      105-13 Metropolitan Avenue
      Forest Hills, New York 11375
      T: (718) 971-9474

Brittany Blount

Sworn to before me this
9th day of July, 2021

Notary Public

AMY J. CURLEY
Notary Public, State of New York
No. 02CU6210819
Qualified in Westchester County
Commission Expires October 20, 2021

EXHIBIT "B"



**HORNBLOWER**
CRUISES & EVENTS

DOCUMENTATION OF
CREW COACHING & COUNSELING SESSION

Crew Name: Lenny Molina   Department: Galley   Date: 5/15/19

Date of Problem: 5/11/19   Time: PM Sus Chef   Location:

SPECIFIC NATURE OF PROBLEM

☐ Dishonesty          ☐ Absenteeism/Tardiness   ☐ Carelessness
☐ Performance Below Par   ☐ Unsafe Actions       ☐ Not Following Orders
☐ Breaking House Rules (explain)   ☐ Under the Influence   ☒ Other (explain)

Details regarding this problem: Better communication follow up
with menus & production sheets. Hostial when
things are not correct. Needs to tone it down
toward staff.

Has this person been warned on this or a similar problem?   ☐ Yes   ☒ No
If Yes, How?   ☐ Verbal   ☐ Written   ☐ Suspension   When?_____ (date)

Summation of counseling session: Understand Better communication and
Support. Une down attitude to get respect from staff
training schedule setup with chef Scott
menus & Production sheets analyze
walk vessel & follow up with Leads & Euros
Direct staff Better
→ we will have a staff meeting next week

Action taken:   ☐ Verbal   ☐ Written   ☐ Suspension   ☐ Other
Plan for the Future:

"I understand that my signature on this form indicates that this matter has been discussed with me. I also understand that I may discuss this matter with Crew Resources and submit written comments in response if I feel it is incorrect or unfair. I have received a copy of this communication."

Supervisor _____   Date 5/15/19
Witness (if any) _____   Date 5/15/19
Crew member _____   Date 6/15/19

**NOTE: CONTINUANCE OF IMPROPER CONDUCT MAY RESULT IN HARSHER DISCIPLINARY ACTION, UP TO AND INCLUDING SUSPENSION AND DISMISSAL**

EXHIBIT "C"



**HORNBLOWER**
CRUISES & EVENTS
*between the sea and the sky®*

## DISCIPLINARY ACTION FORM

Employee Name: Lenny Molina                    Date of Notice: 7/5/19
Employee #: 4404          Department: Food&Beverage      Date of Hire: 3/25/19

| Type of Violation | | |
|---|---|---|
| ☐✓ Attendance | ☐ Tardy/Early Quite | ☐ Inappropriate Behavior |
| ☑ Unsatisfactory Performance | ☐ Insubordination | |
| ☐ Willful Damage to Company Property | ☐✓ Violation of Company Policies/Procedures | |
| ☐ Other: _____ | | |

### Description of Violation

Date of Incident: 7/4 - 7/5/19      Time of Incident: 10pm-4am

Description: Employee DiD Not conduct a proper walkthrough when
closing their assigned vessel. Leaving behind a tray of
coslaw & watermelon. Pics attached.

### Employee Statement

☐ I agree with Employer's statement.
☐ I disagree with Employer's description of violation for these reasons: _____

### Actions to be Taken

☐✓ Warning  ☐ Probation  ☐ Suspension  ☐ Discharge  ☐ Other: _____

Consequences should incident occur again: Probation

**I HAVE READ AND UNDERSTAND THIS EMPLOYEE WARNING NOTICE.**

Lenny Molina _____                    * _____            7/17/19
Employee Name (Print)                   Employee Signature           Date

_____                                  _____                 7/17/19
Supervisor/Manager who issued warning (Print)   Signature of Supervisor/manager   Date

Bryan Miranda                            _____                 7/19/19
Human Resources Name (Print)            Human Resources Signature        Date

* My Signature does not represent agreement with the comments herein, merely acknowledgement that I received the warning.

Hornblower NY - Confidential



EXHIBIT "D"

**HORNBLOWER®**
CRUISES & EVENTS

*between the sea and the sky®*

## DISCIPLINARY ACTION FORM

Employee Name: Lenny Molina          Date of Notice: 2/24/2020

Employee #: 4464     Department: Galley     Date of Hire: _____

### Type of Violation

- [ ] Attendance
- [ ] Tardy/Early Quite
- [ ] Inappropriate Behavior
- [x] Unsatisfactory Performance
- [ ] Insubordination
- [ ] Willful Damage to Company Property
- [ ] Violation of Company Policies/Procedures
- [ ] Other: _____

### Description of Violation

Date of Incident: 2/7 & 2/6/2020   Time of Incident: 5:30pm-10pm

Description: on 2/7 did not plan accordingly. Salmon was not ready on time. he did not check vessel or our order to make sure it was on. But no milk 2/6/20 chocolate cake or bread - order or manifest - See Attached

### Employee Statement

- [ ] I agree with Employer's statement.
- [ ] I disagree with Employer's description of violation for these reasons: _____

### Actions to be Taken

- [x] Warning
- [ ] Probation
- [ ] Suspension
- [ ] Discharge
- [ ] Other: _____

Consequences should incident occur again: Suspension

**I HAVE READ AND UNDERSTAND THIS EMPLOYEE WARNING NOTICE.**

Lenny Molina
Employee Name (Print)        Employee Signature          Date 2/24/2020

Scott Krause
Supervisor/Manager who issued warning (Print)   Signature of Supervisor/manager   Date 2/24/2020

Bryan Miranda
Human Resources Name (Print)    Human Resources Signature    Date 2/05/2020

\* My Signature does not represent agreement with the comments herein, merely acknowledgement that I received the warning.

Hornblower NY - Confidential

Luigi Doige
F and B Director                                            02/24/2020.

# FOH After Action Reporting

| | | | |
|---|---|---|---|
| Boat/Day Part/Date | Lexington/charter/2.7.2020 | # of Servers | 0 |
| Manager/Supervisor: | Tracee Abbott | # of SA's/Back Servers | 2 |
| Captain: | Jon LaBarge | # of Bartenders | 1 |
| Chef/Supervisor: | Lenny Molina | # of Cooks | 1 |
| Entertainment: | Outside Band | # of Dishwashers | 1 |
| Expected Ticket Count: | 60 | # of Mates | 1 |
| Final Ticket Count: | 58 | # of Security | 0 |

Weather: Windy/slight drizzle

Safety Topic:

Weekly OSS FOCUS: FOH Sanitation

Milk Duds Executed:

Decibel Meter Reading during Dance Set:

| Dk 1 Bow | | Dk 1 Stern | | Dk 2 Bow | | Dk 2 Stern | | Dk 3 Bow | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

Boarding:        5:47pm                                    Sailing time: 6:30pm

Food (Buffets /Plated) (When they opened/closed- when each course started and any issues): Hors D' passed from 5:47pm-7:00pm –

Beverage Service: Buffet opened at 7:15pm/buffet closed at 9:00pm. Buffet service was a little slow due to waiting for some hot items to be cooked and replenished.

On Board Sales: N/A

Cash Sales: N/A

Voids: N/A

Comps:

| Soda | | J&S | | BWJS | | Prem | | Plat | 58 | Other | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |

Group Comments (Include any WOW'S): Karen (mother of bride) boarded first to welcome her guest on board. Karen requested with Manager and Broker of the event to remove chairs and place settings, due to some guest not showing up for the dinner. As guest were coming down for dinner she discovered that 4 more guest showed up for the cruise and requested to have chairs and place settings placed back at the tables. Manager was able to accommodate. During dinner service Karen stated that she was told there would be drink service at the tables i.e. wine service and drinks. This was not stated in the report, however management was able to bring drinks for some guest at their tables. Salmon was delayed for replenishing. Bride and Groom questioned Manager about it. Manager apologized and stated it will be 6 minutes before the Salmon is ready and will personally deliver the salmon to their table. Bride and Groom was pleased with the texture and taste of the salmon. Guest were invited upstairs to enjoy their dessert station with coffee and tea. Unfortunately during this time manager was informed

# FOH After Action Reporting

by the chef that there was no milk delivered to the vessel.  Manager had to apologize and make sure dessert station remained replenished.  At the end of the night, Karen stated she was happy and guest appeared to be happy and excited about the upcoming nuptials taking place the next day.  Crew was able to help Karen pack up her decorations and remove them off the vessel.

Indy Comments (Include and WOW's):

**City Specific:**
Entertainment: trio band showed up at the vessel at 5:15pm.  Mark stated they texted him and told them this will be their time of arrival instead of 4:30pm

Call Offs:

Tardies:

NCNS:

R&M Issues: ADOS and Broker spoke with Bride to apologize about their cake.  She stated that it was ok and she understood. However, the bride and groom did not appear to be having fun or entertaining during the cruise. Karen (mother of the bride) was showing her guest onboard the pictures they took of the cake and explaining to her guest what happened to the cake and how much effort and money was put into making the cake.

Lost and Found:

**Scott Hauser**

| | |
|---|---|
| **From:** | David Mena |
| **Sent:** | Sunday, February 16, 2020 10:29 PM |
| **To:** | HNY EVM Reports; +NY_FoH |
| **Subject:** | AAR AA5 JJA 02.16.20 |
| **Attachments:** | AAR AA5 JJA 02.16.20.docx |

Good evening,
Attached is the AAR for AA5 JJA 02.16.20
The event went well and without incident.

As noted in the report:
Suzette Singh 18pax:

Guest had 1 Bottle of Chandon in their package. Guest stated that most of their group did not drink and had requested a substitution of non-alcoholic cider with salesperson Corey. Notes state guest wanted to purchase cider on board. None was available. Two guests were comped a round of drinks and the rest of the guests were given soda instead.

Guest had reserved a chocolate celebration cake. Only one vanilla cake was onboard. Guest did not make any remarks about this however she stated that the salesperson had promised a 9"x13" cake and birthday decorations.

In the end Suzette was happy that I made accommodations for her and that her guests were happy. I managed to get 18 pieces out of the small cake and she was glad everyone got a piece, albeit a very small one. I offered to take several pictures and attended to them a number of times throughout the evening, giving them extra attention to smooth out the situation. Her daughter, the birthday girl seemed happy too. I advised Suzette that I would make a note of this and request that salesperson Corey contact her.

Please have the appropriate salesperson contact her. I do not have a res# on my paperwork.

David Mena
Restaurant Manager

 HORNBLOWER
CRUISES AND EVENTS

Hornblower Landing, Pier 40
353 West Street , New York, NY 10014
Cell: 917.686.8712 | David.Mena@hornblower.com
www.hornblowerny.com

1







EXHIBIT "E"

| HR Use Only | |
|---|---|
| Il | |
| Submitted: | |


**HORNBLOWER**
CRUISES & EVENTS

## INCIDENT REPORT

All incidents are to be emailed to incident@hornblower.com the same day the incident occurs. The form should be completed by the Captain or First Officer. It should then be submitted to a Port Captain the same day. Follow-up will be made as deemed necessary. Remember to FILL OUT COMPLETELY and with as much detail as possible as soon as the incident has been safely resolved and reported.

### I. INCIDENT INFORMATION: PRELIMINARY REPORT, SUBJECT TO CHANGE

| | |
|---|---|
| Vessel or Facility: Pier 15 | Time/Date of Incident: 3:30 pm  3/14/20 |
| Location of Vessel: Pier 15 | Type of Incident: |
| Where on the vessel or facility did the incident occur? off the pier on the sidewalk | |

### II. INJURED / ILL PARTY: Select Option

| | |
|---|---|
| Name of Injured / Ill: Lenny Molina | Name of Witness: |
| Contact Number: 201-788-8197 | Contact Number: |
| Address: 390 Greenwood Av | Address: |
| Pottsville PA. 17901 | |
| Gender: Select Option Male  Date of Birth: 05/12/1980 | Body Part Affected: |
| Injury Type: Select Option Left toe injury | |

### III. INCIDENT DETAILS: Select Option

Was lifting a Cambro from the van when the Cambro was placed on the ground it tipped over and fell onto Lenny's left Big toe.

| | | |
|---|---|---|
| 1. Did an HCE Employee witness the incident? Select Option No | 1a. Name(s): | |
| 2. Total Passengers on board: NA | 3. Underway: Select Option | 4. Deck/Floor Condition: Select Option |
| 5. Lighting Conditions: Select Option Sunny | 6. Signage Posted: Select Option | |
| 7. If Damage to Property: Include type of damage, type of property, owner of property. NA | | |

### IV. NOTIFICATIONS MADE: (Who was called?)

| | | |
|---|---|---|
| 1. Was Port Captain notified: Select Option | 1a. Name: | 1b. Time of Notification: |
| 2. Was USCG notified: No Select Option | 2a. CG 2692 Incident Report Required: Select Option | |
| 3. Police notified: No Select Option | 3a. Report taken: Select Option | |
| 4. Was EMS called: No Select Option | 4a. Time Called: | |

### V. CREW / VI. WEATHER CONDITIONS

| V. CREW | Crew Onboard: | Knowledge of Incident: | Alcohol/Drug Test Given: | VI. WEATHER CONDITIONS | |
|---|---|---|---|---|---|
| Captain: | | Select Option | Select Option | Weather: | |
| First Officer: | | Select Option | Select Option | Visibility: | |
| Event Manager: | | Select Option | Select Option | Tide: | |
| Chef: | | Select Option | Select Option | Current: | |
| Bartender: | | Select Option | Select Option | Wind Speed/Dir: | |

### VII. DETAILS OF INJURY / ILLNESS AND TREATMENT

| | |
|---|---|
| 1. Was First Aid Administered: Select Option Yes   1a. What? Ice Pak   1b. By Whom? Abdul Godfrey | |
| 2. Did party DECLINE First Aid Treatment? Select Option   3. Did the injured person refuse to give info regarding the incident? Select Option No | |
| 4. Was the injured person unable to give info regarding the incident? Select Option No   5. Did the person lose consciousness? Select Option No | |
| 6. Was Automated External Defibrillator (AED) used? Select Option   7. Body Ailments? Select Option Foot Pain | |

| 8. Was the person taken to a hospital or medical facility? Select Option   N O | 8a. Name of Hospital / Facility: |
|---|---|
| 9. Were they taken by ambulance: Select Option   No | 9a. From where: |
| 10. Was the person consuming alcohol prior to the incident? Select Option   N O | 10a. If so, how much? |
| 11. Alcohol/Drug Test Given: Select Option   N O | 12. Type of footwear being worn:  Kidaxa Shoes |

### VIII.   VIDEO FOOTAGE/PICTURE(S) OF INCIDENT

| 1. Was the incident captured on our security system?  Select Option | |
|---|---|
| 2. Was footage requested?  Select Option | 3. Who was notified? |

4. If footage was not pulled, please explain why:

Please submit video footage via google drive to incident@hornblower.com.  If the file is too large to send, notify your local HR contact. Submit any photos of the area of the incident and attach when submitting incident report to incident@hornblower.com.

*I have completed this form to the best of my ability regarding the incident at hand. I have made honest and accurate accounts to the best of my knowledge and I have not provided any false or dishonest statements or information.*

| Report Filled out by: Cordell Tillman | Position: Senior Pier Manager |
|---|---|
| Signature: Cordell Tillman | Date: 3/14/20 |

### INCIDENT REPORT WITNESS STATEMENT:
The section below should be offered to a witness of the incident. If accepted, allow the witness to complete. Have each individual complete a witness statement and attach to this report.

CONTACT INFORMATION:

| 1. Name: Henry McKina | |
|---|---|
| 2. Address: 390 Greenwood Ave | |
| 3. Telephone: 201-780-8197 | 3a. Best time to reach you: |
| 4. Name of Injured Person: Len | 4a. Relationship to Injured Person: |
| 5. Date and Time of Incident: | 5a. Are you a(n):  Select Option |

6. Did you personally observe the incident:  Select Option

7. Please describe what you saw in as much detail as possible:

*I have completed the form as completely and accurately as possible. To the best of my ability, I have reported the incident as accurately and completely as possible. I have not made any false statements or inaccurate statements.*

| Signature: | Date: |
|---|---|

EXHIBIT "F"

Begin forwarded message:

> **From:** Lenny Molina
> **Date:** March 15, 2020 at 1:55:24 PM EDT
> **To:** HNY EVM Reports
> **Cc:** Rebecca Rose , Elizabeth Tornatore
> **Subject: Injured**
>
>
> Hello team
> Last night I hurt my big toe on pier 15 i went to the ER and the x-ray showed is
> broken, I will follow up with the ortho Drs first thing Monday for the follow up.
> I'll keep everyone informed. I'll be available by cell phone for anything
> Sorry for the inconvenience
> Thank You
> **Lenny J. Molina**
>
> PM Sous Chef
>
>
> Hornblower Landing, Pier 40
> 353 West Street , New York, NY 10014
> Cell: 201-780-8197 | lenny.molina@hornblower.com
> www.hornblowerny.com

HORNBLOWER 107

EXHIBIT "G"



Re:     <u>Notice of Furlough Effective March 17th, 2020</u>

Dear Valued Crew Member:

The recent news and uncertainty surrounding the COVID-19 situation has caused unprecedented challenges that are affecting many businesses across the travel, hospitality and entertainment industries. Hornblower Cruises and Events has unfortunately, despite our best efforts, not been immune to this. The company is having to make difficult decisions that directly impact our valued crew members like yourself. This letter serves as an official notice of furlough, which we believe will be temporary and hopefully short lived, so that we can get you back to work. Please note that this is not a termination of employment, but a pause in employment until we are able to get the operation back up and running.

You will be paid 16 hours of regular pay and 40 hours of PTO, paying you through Tuesday, March 24th. The 40 hours will come from your available PTO bank as applicable. You will not be able to use additional PTO during this period. The State, local, and Federal governments are acting quickly to ease the hardship for those employees that are affected by COVID-19. We will do our best to reach out regularly to inform you of these changes, but we encourage you to learn more and apply for any benefits you may be eligible for. A full list of all local and regional U.S. Department of Labor (DOL) programs and services including unemployment benefits by state can be found here: https://www.dol.gov/general/location

To help you during this difficult time we wanted to remind you that Hornblower Cruises & Events offers an Employee Assistance Program (EAP) to help with the obstacles you or your dependent(s) may face.  This program is not only **free of charge to all crew** but is completely confidential. From finding childcare to assistance with legal and financial matter, our EAP program is available 24 hours a day, 7 days a week. To learn more visit http://guidanceresources.com (Username: LFGSupport Password: LFG Support), download the GuidanceNow mobile app or talk with a specialize at 888-628-4824.

Your elected benefits and your qualification for future elected benefits will not be affected by this furlough, and we want to do everything we can to work with you through this difficult time. Until further notice the company will pay both the employer portion and the employee portion of health insurance costs.  The company will recoup the employee portion of those payments over time upon your return to work. However, before we can make this accommodation, you will be required to sign and return the attached to the People Team via email at hce.people@hornblower.com or via fax at 312-264-0401. The alternative would be to send a personal check made payable to *Hornblower Cruises & Events Attn: Payroll.* Should you decide to leave the company during this furlough, those monies for the employee contributions will then be owed to the company at the time of your notice. Please be on the lookout for open enrollment changes coming next week as we will be using UltiPro to elect benefits during our Active Open Enrollment Period.

You may continue to access UltiPro during this furlough through OKTA.
                Website - https://entertainmentcruises.okta.com/login/default for HCE, LLC Crew
                https://hornblower.okta.com/ for HBNY, LLC Crew

Other pertinent information that may or may not pertain your situation. If you are currently on WComp, PFL, STD or LTD leave the furlough will not affect the payments you are receiving. Should you have a 401k loan, you will be receiving further communication regarding the status of your loan during the furlough period and next steps.

Hornblower sincerely appreciates your understanding during this difficult time, and we will be in contact with you regularly to update you on this very rapidly evolving situation. We hope this to be over quickly so that we can resume operations and get you back to work as soon as possible.

Sincerely,

Christine Metivier
Regional Vice President

EXHIBIT "H"



May 18th, 2020

**CONFIDENTIAL INFORMATION**

Lenny Molina
390 Greenwood Ave
Pottsville, PA 17901

      Re:    <u>Change in Employment Relationship</u>

Dear Lenny:

As you know, Hornblower Cruises & Events, LLC ("Hornblower Cruises & Events" or "Company") is restructuring and reducing its workforce in response to COVID-19 and resulting business circumstances that were not reasonably foreseeable.  While we sincerely appreciate your work on behalf of the Company, your employment is ended effective May 19th, 2020.  Your final paycheck includes any accrued but unused vacation pay.

If you have medical, dental, vision, or other insurance coverage through the Company, it will end on May 31, 2020.  At that point, you will have the option of continuing your health benefits at your own expense under the Consolidated Omnibus Budget Reconciliation Act (COBRA) if you complete and return the COBRA election forms in a timely fashion.  Information regarding COBRA, including COBRA election forms, will be mailed to you at the above address.

If you have lost your job or been laid off temporarily, you may be eligible for Unemployment Insurance ("UI").  More information on UI and other resources available for workers is available at https://labor.ny.gov/ui/how_to_file_claim.shtm.  If you wish to file for UI, we will not dispute the claim.

All Company property including but not limited to keys, badges, access cards, Company-issued laptop, files, records, documents, supplies, and similar items in your possession, must be immediately returned to the Company.  You should not take any copies of these or similar items with you.  As a reminder, you may not use or disclose any confidential, proprietary, or trade secret information of the Company after you leave your employment with us.

Hornblower Cruises & Events, sincerely appreciates your service, and we wish you the best with your future endeavors.

Thank you.

Sincerely,


Nilda Bracero
General Manager