UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LENNY MOLINA,

                                              **Case No.: 1:20-cv-10821 (GHW) (OTW)**

                      Plaintiff,

          -against-

HORNBLOWER GROUP, INC., HORNBLOWER
NEW YORK, LLC, and HORNBLOWER CRUISES
AND EVENTS, LLC

                      Defendants.
------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


**SHALOM LAW, PLLC**

Jonathan Shalom, Esq.
10513 Metropolitan Avenue
Forest Hills, NY 11375-6737
(718) 971-9474 (office)
(718) 865-0943 (facsimile)
jonathan@shalomlawny.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

LEGAL STANDARD ................................................................................................2

FACTS        .............................................................................................................4

ARGUMENT .............................................................................................................7

I. PLAINTIFF'S INJURY QUALIFIES AS A DISABILITY UNDER THE LAW ...............7

    A.    ADA Discrimination ........................................................................................7

        i. Plaintiff was disabled within the meaning of the law ...................................8
        ii. Defendants had notice of Plaintiff's disability...........................................11
        iii. Plaintiff could have performed his job with reasonable accommodations....................................................................................................12
        iv. The Defendants refused to make any accommodations, and instead fired Plaintiff ........................................................................................................12

    B.    ADA Failure to Accommodate…………………………………………………13

        i. Defendants are subject to the Americans with Disabilities Act...................14
        ii. Plaintiff was disabled within the meaning of the law .................................14
        iii. Plaintiff was qualified for his position as a PM Sous Chef ........................15
        iv. Plaintiff was terminated due to his disability and the proffered, non-discriminatory reasons are pretextual ................................................................16

    C.    ADA Retaliation…………………………………………………………………18

        i. Plaintiff engaged in protected activity ........................................................18
        ii. Defendants terminated Plaintiff .................................................................19
        iii. The temporal proximity establishes a causal connection...........................19

    D.    New York State and New York City Human Rights Law Claims.......................20

CONCLUSION ..........................................................................................................22

# TABLE OF AUTHORITIES

Adams v. Citizens Advice Bureau,
    187 F.3d 315, 317 (2d Cir. 1999)…...……………………………………………………10

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 249 (1986)…………………………………………………………………….3

Bertuzzi v Copiague Union Free School Dist.,
    No. 17-CIV.-4256 (SJF) (AKT), 2020 WL 5899949, at *9 (E.D.N.Y. Mar. 9, 2020),
    report and recommendation adopted as mod., 2020 WL 3989493 (E.D.N.Y. Jul. 15,
    2020)………………………………………………………………………………….…..19

Borkowski v. Valley Cent. Sch. Dist.,
    63 F.3d 131, 140 (2d Cir. 1995)…...……………………………………………………15

Brady v. Wal-Mart Stores, Inc.,
    531 F.3d 127, 134 (2d Cir. 2008)…..…………………………………………………8, 13

Brown v. City of NY,
    188 A.D.3d 518, 519 (1st Dept. 2020)…..…………………………………………………21

Celotex Corp. v. Catrett,
    477 U.S. 317, 323 (1986)………………………………………………………………….3

Clark v. Coca-Cola Beverages Northeast, Inc.,
    20-4040-CV, 2022 WL 92060, at *4 (2d Cir. Jan. 10, 2022)……………………………13

Cortes v. MTA N.Y.C. Transit,
    802 F.3d 226, 231 (2d Cir. 2015)……………………………………………………………7

Cruz v. City of New York,
    21CV1999 (DLC), 2021 WL 5605139, at *6 (S.D.N.Y. Nov. 30, 2021)……………….12

Francis v. City of Meriden,
    129 F.3d 281, 283 n.1 (2d Cir. 1997)…………………………………………………...9

Ford v. Bernard Fineson Dev. Ctr.,
    81 F.3d 304, 309 (2d Cir. 1996))………………………………………………………9

Fox v. Costco Wholesale Corp.,
    918 F.3d 65, 72–73 (2d Cir. 2019)…………………………………………………………18

Garces v New York City Hous. Auth.,
    No. 16-CIV.-2811 (LTS), 2017 WL 3025888, at *2 (S.D.N.Y. Jul. 17, 2017)………….19

Giscombe v. N.Y.C. Dep't of Educ.,
    39 F. Supp. 3d 396, 403 (S.D.N.Y. 2014)……………………………………………16

Gonzalez v. New York City Health & Hosp. Corp.,
    No. 18-CV-2645 (JPO), 2019 WL 2435622, at *12 (S.D.N.Y. June 11, 2019)………20

Goonan v. Fed. Reserve Bd. of N.Y.,
    916 F. Supp. 2d 470, 479 (S.D.N.Y. 2013)…..…………………………………………15

Gorzynski v. JetBlue Airways Corp.,
    596 F.3d 93, 110 (2d Cir. 2010)…..……...…………………………………………….20

Graves v. Finch Pruyn & Co.,
    457 F.3d 181, 185 n.5 (2d Cir. 2006)…..………………………………………….18, 21

Ibok v. Sec. Indus. Automation Corp.,
    369 Fed. Appx. 210, 213 (2d Cir. 2010)…..……………………………………………20

Kelly v. Ret. Plan Comm.,
    No.3:11-CV-01890 (WGY), 2016 WL 2963417, at *15 (D. Conn. May 20, 2016)……..3

Kronish v. United States,
    150 F.3d 112, 126 (2d Cir. 1998)………………………………………………….......3

Kwan v. Andalex Grp., LLC,
    737 F.3d 834, 847 (2d Cir. 2013))……………………………………………………16

Littlejohn v. City of New York,
    795 F.3d 297, 319 (2d Cir. 2015)………………………………...............18, 19

Loeffler v. Staten Island University Hosp.,
    582 F.3d 268, 278 (2d Cir. 2009)…..……………………………...............21

Mazza v. Bratton,
    108 F. Supp. 2d 167, 174 (E.D.N.Y.2000), aff'd 9 Fed. Appx. 36 (2d Cir. 2001), cert.
    denied 534 U.S. 887 (2001)...………………………………………………………10

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)……………………………………………………...............7

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
    715 F.3d 102, 110 (2d Cir. 2013)……………………………………...............21

Natofsky v. City of New York,
    921 F.3d 337, 353 (2d Cir. 2019)……………………………………...............19

Parada v. Banco Indus. De Venezuela, C.A.,
    753 F.3d 62 (2d Cir. 2014)…...…………………………………...............7 n. 3

Parris v. New York City Dept. of Educ.,
    111 A.D.3d 528, 529 (1st Dept. 2013)……………………………...............21

Pesce v. New York City Police Dept.,
    159 F. Supp. 3d 448, 457 (S.D.N.Y. 2016)…..………………….............15

Petrone v. Hampton Bays Union Free Sch. Dist.,
    568 Fed. Appx. 5, 7 n.2 (2d Cir. 2014)……...…………………….............18

Sheng v. M&TBank Corp.,
    848 F.3d 78, 87 (2d Cir. 2017)...………………………………………12

Sista v. CDC Ixis N. Am., Inc.,
    445 F.3d 161, 169 (2d Cir. 2006)………………………………………7

Szuszkiewicz v. JPMorgan Chase Bank,
    257 F. Supp. 3d 319 (E.D.N.Y. 2017)………………………………………7

Tufariello v. Long Island R. R. Co.,
    458 F.3d 80, 85 (2d Cir. 2006)………………………………………3

Verint Sys. Inc. v. Red Box Recorders Ltd.,
    No.14-CIV.-5403 (KBF), 2016 WL 7177844, at *1 (S.D.N.Y. Dec. 7, 2016)………........3

Weixel v. Bd. of Educ. of City of N.Y.,
    287 F.3d 138, 149 (2d Cir. 2002)………………………………………...19

Williams v. KFC Nat'l Mgmt. Co.,
    391 F.3d 411, 422 (2d Cir. 2004)………………………………………3

Williams v. New York City Hous. Auth.,
    872 N.Y.S. 2d 27, 39 (1st Dep't 2009)..………………………………………21

**Statutes**

29 C.F.R. § 1630.1…..............................................................................8, 9

29 C.F.R. § 1630.2...................................................................8, 9, 10, 14, 14 n. 5, 18

42 U.S.C. § 12102…..……...............................................................................8

42 U.S.C. § 12111…..……...............................................................14 n. 5

N.Y.C. Admin. Code § 8-107(1)(a)…..……… ................................................................. 20

N.Y.C. Admin. Code § 8-130…..……… ...................................................................... 21

**Rules**

Fed. R. Civ. P. 56 ...................................................................................................... 2

**Other Sources**

United States Equal Employment Opportunity Commission ("EEOC"): Enforcement Guidance:
Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities
Act, Question 40 .............................................................................. 13, 13 n. 4

EEOC: What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and
Other EEO Laws ............................................................................. 17, 17 n. 6

## PRELIMINARY STATEMENT

Defendants violated the law when they terminated Plaintiff Lenny Molina (hereinafter "Lenny" or "Plaintiff") from his employment. Lenny worked as a PM Sous Chef and injured his left toe so badly while at work that he was required to be on crutches for two weeks and wear a boot for six to seven months thereafter. He immediately notified his employer of his injury and took the time he needed to heal. Lenny sought treatment with a podiatrist who gave him Excuse/Return/Activity Slips after every visit to provide to his employer. After every visit, Plaintiff provided these notes to Defendants.

The April 14, 2020 note Plaintiff provided to Defendants excused him from work for three weeks through May 5, 2020. The May 5, 2020 note Plaintiff provided to Defendants excused him from work for an additional three (3) weeks through June 2, 2020.

Notwithstanding the fact Plaintiff was disabled within the meaning of the law because he could not stand and walk – two activities that are crucial to the essential functions of his job as a PM Sous Chef, and the fact that Plaintiff provided the foregoing notes to his employer – the Defendants terminated Lenny on May 18, 2020, before he could even be evaluated to return to work with his doctor on June 2, 2020!

Summary judgment should thus be denied because there exists an issue of fact as to whether Plaintiff provided his doctor's notes to his employer, as Defendants aver in their papers that Lenny did not contact their Human Resources Department to engage in any dialogue about his March 14, 2020 injury. The existence of this genuine dispute of a material fact warrants denial all on its own.

Separately, Defendants' arguments in support of summary judgment are meritless.

Lenny was disabled within the meaning of the Americans with Disabilities Act because was unable to perform the major life activity of standing and walking.

Lenny was qualified for his job as a PM Sous Chef because he went to culinary school, has extensive prior experience (nearly a decade) as a Sous Chef, and the purported disciplinary forms he sporadically received during his employment do not rise to warrant his termination. In fact, his second and final disciplinary notice was a mere warning with an admonition that future failures to deliver salmon on time at a wedding party will result in suspension, not termination!

Finally, it cannot be disputed that Lenny was terminated on May 18, 2020 because of his disability because he was the _only_ PM Sous Chef let go, despite the fact that Defendants maintain the COVID-19 pandemic shut their business down. Indeed, Defendants' proffered reason for terminating him due to alleged performance issues is pretextual because the July 5, 2019 and February 24, 2020 writeups substantially predate his May 18, 2020 termination, let alone the fact that each of the two were mere warnings over inconsequential issues concerning _food storage_ and preparation, and the most recent writeup warned that a suspension was to follow any future disciplinary issues – not termination.

A jury must be called upon to make credibility determinations in light of the aforesaid holes in Defendants' position. If the reason for terminating Plaintiff was due to these issues, why was he merely issued a warning? If the coronavirus pandemic was the reason for terminating Plaintiff, why was he the only PM Sous Chef termination?[1] Summary judgment must therefore be denied.

## LEGAL STANDARD

A court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed. R. Civ. P. 56(c).

---

[1] Similarly, Defendants appear to argue out of both sides of their mouths by claiming performance issues and the coronavirus pandemic were the reasons for Lenny's termination. Which one is it?

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). On a summary judgment motion, the Court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving any ambiguities in the non-moving party's favor. See Tufariello v. Long Island R. R. Co., 458 F.3d 80, 85 (2d Cir. 2006).

Defendants may argue that there is no direct evidence supporting Plaintiff's claims. However, the Second Circuit has consistently held that "[c]ases are often proved by way of circumstantial evidence—and there is no reason why such evidence cannot raise a triable issue of fact for trial." See Verint Sys. Inc. v. Red Box Recorders Ltd., No. 14-CIV.-5403 (KBF), 2016 WL 7177844, at *1 (S.D.N.Y. Dec. 7, 2016) (in deciding a summary judgment motion) (citing, e.g., Williams v. KFC Nat'l Mgmt. Co., 391 F.3d 411, 422 (2d Cir. 2004) (concluding that plaintiff presented "sufficient circumstantial evidence" to survive summary judgment); Kronish v. United States, 150 F.3d 112, 126 (2d Cir. 1998) (holding that plaintiff's "circumstantial evidence" was sufficient to "entitle him to proceed to trial"). In that regard, Courts deny summary judgment to a moving party that misrepresents the record. See Kelly v. Ret. Plan Comm., No. 3:11-CV-01890 (WGY), 2016 WL 2963417, at *15 (D. Conn. May 20, 2016) (denying summary judgment for misrepresentation of the record).

For the reasons set forth below, Defendants' motion for summary judgment must be denied.

## FACTS

Lenny was hired and began his position as a PM Sous Chef for Hornblower on March 27, 2019.  See Plaintiff's Counterstatement of Facts ("CSF") at ¶ 1.  To obtain the job, Lenny submitted his resume to Defendants, which showed that he was certified by A.A.S. Culinary Arts school in 2011, and has worked as a cook or a chef since September 2010 through March 2019 for seven (7) employers with no significant gaps in his employment.  CSF ¶¶ 2, 46; see also Defendants' Exhibit ("Def. Ex.") M at Ex. A, at HORNBLOWER043-HORNBLOWER044.

During his employment for Defendants, Lenny received documentation of crew coaching and counseling session and two disciplinary writeups, dated May 15, 2019, July 5, 2019, and February 24, 2020, respectively.  See CSF ¶¶ 3, 6, and 9; see also Def. Exs. D, E, and F.

Each documented writeup is benign and does not indicate any real performance issue with Plaintiff.  Though Defendants refer to the May 15, 2019 documentation as a writeup and a "warning," Lenny denies that it was a warning and served more as a review of his work performance thus far.  There was no notation of his alleged failure to follow up on menu and production analysis, nor was there any mention of his alleged failure to walk through and follow up with staff, as he had just been working there for two (2) months at that time.  The May 15, 2019 document thus served as a review of his work performance since beginning his employment, with noted areas for improvement (for which similar issues never again arose).  See CSF ¶¶ 4-5.

Similarly, the July 5, 2019 disciplinary action form constitutes a warning issued by Defendants for Lenny's failure to see that a tray of salad and watermelon was not removed from the boat when he left the vessel at 3:00 AM that evening because he instructed a subordinate employee to ensure that it was removed.  See CSF ¶¶ 6-7.  This was the first warning that Plaintiff ever received.  See CSF ¶ 8.

Over seven (7) months later, Plaintiff received a disciplinary writeup for, among other things, not having salmon ready on time.  See CSF ¶ 9.  However, the salmon *was* ready for all guests on time, and it was only a replenishment of salmon that was delayed for six (6) minutes because additional guests arrived and the bride and groom requested more salmon; the bride and groom were ultimately pleased, and the mother of the bride Karen stated that she was happy and that the guests appeared to be happy.  Id.; see also CSF ¶ 10.

The July 5, 2019 and February 24, 2020 disciplinary forms were the only disciplinary issues Lenny faced and, as set forth further below, neither can serve as a basis to terminate him on May 18, 2020 because of both the long passage of time and because of their benign nature.

On March 14, 2020, Lenny injured his toe as a result of an on-the-job accident at Pier 15, wherein he fractured his toe in five places.  See CSF ¶ 14.  He immediately notified Cordell Tillman, who completed an incident report on the same date.  Id.  The following day, Lenny sent an email reporting the March 14, 2020 accident from his Hornblower e-mail to a group email, "HNY EVM Reports."  See CSF ¶ 15.  On March 17, 2020, just three (3) days later, Defendants furloughed Lenny.  See CSF ¶ 16.  Notably, Defendants provided no proof of anyone else being furloughed except for Scott Hauser, and it is evident that others remain employed.  Id. (the "*majority* of Hornblower's salaried crew … were furloughed").

In order for Plaintiff to be able to continue to work for Defendants, he had to be able to complete a full shift entirely on his feet, such that walking was regularly required. See CSF ¶ 33. When Plaintiff injured his toe and fractured it in five (5) places on March 14, 2020, he was no longer able to walk.  See CSF ¶ 34.  Specifically, Plaintiff could not walk at all in the beginning, and was on crutches for a couple of weeks.  See CSF ¶ 35.  After Plaintiff stopped using crutches, he was required to wear a boot for six to seven months.  See CSF ¶ 36.

During the entire time Plaintiff wore a boot, except in the last couple of months, he could not stand for more than ten minutes at a time.  See CSF ¶ 37.  Without the boot on, Plaintiff could not his foot down on the ground at all. See CSF ¶ 38.

In fact, Plaintiff was only cleared for light duty on July 7, 2020, almost two months after he was terminated.  See CSF ¶ 39.  Once Plaintiff was cleared for light duty, he would have requested an accommodation to sit at the computer in the office to focus on paperwork, which he regularly did nearly half of his shift on a day-to-day basis before his injury.  See CSF ¶ 40.

While cooking is also a responsibility of Plaintiff's, in addition to the supervision of employees, Plaintiff could have received assistance from other employees who were in the kitchen anyway. See CSF ¶ 41.

On May 18, 2020, Defendants terminated Lenny.  See CSF ¶¶ 19-21. Defendants terminated him despite his notice to Defendants of his injury and the need for time off from work. See CSF ¶¶ 26, 44; see also Pl. Ex. C at MOLINA024 dated April 14, 2020 ("Due to evaluation, patient *must be out of work* until next evaluation, *please excuse patient until May 5th, 2020*") and at MOLINA025 dated May 5, 2020 ("…due to evaluation *patient will not be allowed to return to work* for the next 3 week[s], please *excuse patient until 6/2/2020*")[2] (emphasis added).

Crucially, Defendants did not terminate any other PM Sous Chefs other than Plaintiff. See CSF ¶ 45.

Plaintiff first returned to work for another employer in the early winter months of 2021 as a driver.  See CSF ¶ 42.  Driving required use of Plaintiff's right foot, and his injured left toe was substantially healed by that point – nearly a year later. See CSF ¶ 43.

---

[2] While three (3) weeks from May 5, 2020 would fall on May 26, 2020, it appears that Dr. Britto miscalculated and sought an additional week before Plaintiff would be permitted to return to work.

Defendants violated Plaintiff's rights by terminating him after Plaintiff informed Defendants of his injury and his attendant need for leave, as set forth in Dr. Britto's notes (which Plaintiff gave to Defendants) so that he can heal from his injury, which injury caused him to be disabled for a substantial period of time. See CSF ¶ 47.

## ARGUMENT

## I.     PLAINTIFF'S INJURY QUALIFIES AS A DISABILITY UNDER THE LAW

In order to survive a motion for summary judgment on a disability discrimination claim under ADA, plaintiff must establish a genuine issue of material fact as to whether the employer's reason for discharging him is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision; to meet this burden, plaintiff must do more than show that employer's reason is false, and at the very least, point to evidence that reasonably supports finding of prohibited discrimination. See Szuszkiewicz v. JPMorgan Chase Bank, 257 F. Supp. 3d 319 (E.D.N.Y. 2017).

Here, sufficient disputes as to genuine issues of material fact require Defendants motion for summary judgment to be denied.

## A.     ADA Discrimination

ADA discrimination claims are analyzed according to the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Cortes v. MTA N.Y.C. Transit, 802 F.3d 226, 231 (2d Cir. 2015). Under this framework, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." See Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006).

To establish a *prima facie* case of ADA discrimination, "a plaintiff must show (a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." See Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008).

      i.    Plaintiff was disabled within the meaning of the law

The ADA defines a disability as any of the following: (i) a physical or mental impairment that substantially limits one or more major life activities of an individual (that is, an actual disability); (ii) a record of this kind of impairment; or (iii) being regarded as having such an impairment.  See 42 U.S.C. § 12102(1); see also 29 C.F.R. § 1630.2(g)(1).  Here, actual disability is at play because Plaintiff was unable walk, stand, or sit for long periods of time.  See 42 U.S.C. § 12102(2)(A); see also 29 C.F.R. § 1630.2(i)(1)(i).  The regulations under the ADA Amendments Act of 2008 ("ADAAA") provide nine (9) rules of construction to help employers assess whether an impairment substantially limits a major life activity:

- Construe the term "substantially limits" broadly. Do not interpret it as a demanding standard.[3]

- Judge the ability of an individual to perform a major life activity as compared to most people in the general population. To be substantially limiting, an impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity.

- *Focus on the employer's ADA obligations* (to accommodate and to not discriminate), and do not extensively analyze the "substantially limits" test.

- Make assessments of impairment on an individual basis. Interpret and apply "substantially limits" to require a lower degree of functional limitation than before the ADAAA.

---

[3] See Parada v. Banco Indus. De Venezuela, C.A., 753 F.3d 62 (2d Cir. 2014).

- Comparing an individual's performance of a major life activity to others usually should not require scientific, medical, or statistical analysis (although this type of analysis is not prohibited).

- Do not consider mitigating measures (like medication).

- An impairment that is in remission or reoccurs sporadically is a substantial limitation if it would substantially limit a major life activity when active.

- An impairment that limits one major life activity is sufficient; it does not need to limit more than one major life activity.

- Even if an impairment lasts six months or less, it can still substantially limit a major life activity.

See 29 C.F.R. § 1630.2(j)(1)(i)-(ix).  The Equal Employment Opportunity Commission's ("EEOC") regulations that expand upon the definition of disability are to be "accord[ed] 'great deference' to the EEOC's interpretation of the ADA [by courts in the Second Circuit], since it is charged with administering the statute." See Francis v. City of Meriden, 129 F.3d 281, 283 n.1 (2d Cir. 1997) (quoting Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 309 (2d Cir. 1996)). The EEOC regulations define "major life activities" as including, but not limited to:

> [c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, **_walking, standing_**, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working;
>
> and
>
> [t]he operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. The operation of a major bodily function includes the operation of an individual organ within a body system.

See 29 C.F.R. § 1630.2(i)(1)(i)–(ii) (emphasis added).  Notably, the ADA Amendments Act of 2008 (the "ADAAA") had the "primary purpose" of making "it easier for people with disabilities to obtain protection under the ADA." See 29 C.F.R. § 1630.1(c)(4).

Accordingly, "the definition of 'disability' ... shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA." Id.   Therefore, the EEOC regulations instruct that "the term 'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." Id. § 1630.2(j)(1)(iv).

In accordance with the ADAAA's purpose of expanding ADA coverage, the regulations specify that "'[s]ubstantially limits' is not meant to be a demanding standard[,]" and "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." Id. § 1630.2(j)(1)(i), (iii). "*An impairment is a disability ... if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.*" Id. (emphasis added).   In addition, the Second Circuit has explicitly left open the question of "whether temporary injuries are *per se* unprotected under the ADA." See Adams v. Citizens Advice Bureau, 187 F.3d 315, 317 (2d Cir. 1999) (*per curiam*).

Here, Lenny has offered significant evidence that he had a disability within the meaning of the ADA.  See CSF ¶¶ 14-15, 26-27, 33-39.  The medical records support that he suffered from a fracture in five (5) places and was unable to walk or stand for approximately six months.  See CSF ¶ 14; see also Pl. Exs. A and B.  Indeed, Lenny's work required him to stand and walk frequently, which he could not do with crutches or a boot on.  See CSF ¶¶ 33-39.

Lenny saw a doctor who provided notes to his employer stating that he cannot work from April 14, 2020 through July 7, 2020.  See CSF ¶¶ 26, 39.

Crucially, a determination whether a person is substantially limited in her ability to perform a major life activity is fact specific. See Mazza v. Bratton, 108 F. Supp. 2d 167, 174 (E.D.N.Y.2000), aff'd 9 Fed. Appx. 36 (2d Cir. 2001), cert. denied 534 U.S. 887 (2001).

Because Lenny was unable to walk or stand for at least six months, as his job requires, this Court should find that he was disabled within the meaning of the law, or – at a minimum – that a jury must decide this fact-specific issue.  Indeed, Dr. Britto specifically provided medical notes for Plaintiff to provide to his employer that Lenny was to remain out of work until at least June 2, 2020, and Defendants nonetheless terminated him on May 18, 2020.  See CSF ¶¶ 26, 39.

Defendants' reliance on their expert to prove that Plaintiff was not disabled is misplaced. Plaintiff was able to return to work to perform light duties in July 2020, at which point he was fired already, and he reentered the workforce as a driver in early 2021.  However, Defendants' expert only examined Lenny on August 5, 2021 – many months after he already recovered.  See Docket Entry 40-14 at 12.  As such, the fact that he is fully functional as of that date is meaningless.

Crucially, Defendants expert opined that "[s]ome patients with this injury return to work immediately, *others may be out for a few weeks or months depending on the demands of their occupation, i.e., are they sitting or standing for work.  Mr. Molina is a chef who works on his feet.* Id. at 15 (emphasis added).  Thus, while Lenny's injury healed without incident and he is now working with no evidence of permanent disability or functional limitation, these findings are not mutually exclusive of the fact that Lenny was at least temporarily disabled for many months before he could even return to Defendants to perform light duty work as set forth in Dr. Britto's July 7, 2020 medical note.  See Pl. Ex. C at MOLINA027.  Moreover, Lenny's work requires him to be on his feet and he thus fell into the latter category of one who is out for months due to the demands of his occupation.  There is no question that Plaintiff was disabled within the meaning of the law.

ii.    Defendants had notice of Plaintiff's disability

There is no dispute that Defendants had notice of Plaintiff's injury.  See CSF ¶¶ 14-15.

However, there appears to be a dispute as to whether Defendants received Plaintiff's doctor notes.  See CSF ¶ 27.  This issue of fact alone militates in favor of denying summary judgment.

      iii.     Plaintiff could have performed his job with reasonable accommodations

Plaintiff was terminated on May 18, 2020 before he was able to return to work to perform light duties as authorized by his doctor in July 2020.  See CSF ¶¶ 21, 39.  Had he not been terminated, Lenny would have requested an accommodation to sit at the computer in the office to focus on paperwork, which he regularly did nearly half of his shift on a day-to-day basis before his injury. See CSF ¶ 40.

Accordingly, Plaintiff has established that he could have performed his job with reasonable a accommodation – to allow him to sit to handle paperwork, and by permitting the chefs to exclusively handle the cooking.  See CSF ¶ 41.

      iv.     The Defendants refused to make any accommodations, and instead fired Plaintiff

Rather than engage with Plaintiff in an interactive dialogue to determine whether any reasonable accommodation can be made, Defendants instead terminated Lenny.  While the failure to engage in the interactive process is not a violation of the ADA in itself, it can be evidence of a failure to accommodate. See Sheng v. M&TBank Corp., 848 F.3d 78, 87 (2d Cir. 2017).

As such, this is another issue of fact that a jury must decide – whether Defendants had sufficient notice of Plaintiff's disability such that they were required to engage in an interactive process with him to determine whether any reasonable accommodation may be made.  Further, under the NYCHRL, an employer's failure to engage in an interactive process is independently actionable.  See Cruz v. City of New York, 21CV1999 (DLC), 2021 WL 5605139, at *6 (S.D.N.Y. Nov. 30, 2021).

**B.     ADA Failure to Accommodate**

To establish a *prima facie* case of ADA discrimination based on an employer's failure to accommodate a disability, a plaintiff must demonstrate that: (1) [the] plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." See Clark v. Coca-Cola Beverages Northeast, Inc., 20-4040-CV, 2022 WL 92060, at *4 (2d Cir. Jan. 10, 2022).

An employer's obligation to provide a reasonable accommodation is triggered by notice of a disability.  See Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008).  In Brady, the Second Circuit held that an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious—which is to say, if the employer knew or reasonably should have known that the employee was disabled.

Here, Defendants concede that they were notified of Plaintiff's injury, and Lenny then routinely submitted medical records from his health care providers indicating that he is unable to return to work; this triggered Defendants' duty to provide a reasonable accommodation.   Indeed, even if Plaintiff himself did not actually request a reasonable accommodation, because Defendants *knew* of his disability, they were required to engage in an interactive process with the Plaintiff to determine the nature and extent of his disability in order to attempt to fashion a reasonable accommodation.   See   United States Equal Employment Opportunity Commission ("EEOC"): Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, Question 40[4] ("an employer should initiate the reasonable accommodation

---

[4]    https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#other

interactive process(109) *without being asked* if the employer: (1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, and (3) knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation. If the individual with a disability states that s/he does not need a reasonable accommodation, the employer will have fulfilled its obligation") (emphasis added).  This never happened.

Establishing that the Defendants' obligation to provide a reasonable accommodation has been triggered by the Plaintiff's notice of injury, the law requires – as set forth above – that the employer engage in an interactive process, an informal practice in which the Plaintiff and the Defendants would determine the precise limitations created by the disability and how best to respond to the need for accommodation.  See 29 C.F.R. § 1630.2(o)(3).  As set forth in the complaint and incontrovertibly by the evidence adduced in discovery, Defendants have engaged in a wholesale failure to comply with their obligations under the law and instead terminated Plaintiff on May 18, 2020 after he submitted medical notes stating that he needs to be out of work until at least June 2, 2020.  As set forth further below, Defendants failed to accommodate Plaintiff.

    i.    Defendants are subject to the Americans with Disabilities Act

Defendants concede that they are subject to the ADA.[5]  See Docket Entry 40-2 at 15.

    ii.    Plaintiff was disabled within the meaning of the law

It has also been established that Lenny was disabled under the ADA.  See Point I(A)(i), *supra*.

---

[5] A private employer is covered under the ADA if it has fifteen (15) or more employees on its payroll for twenty (20) or more calendar workweeks (which do not need to be consecutive) in either the current or preceding calendar year.  See 42 U.S.C. § 12111(5)(A); see also 29 C.F.R. § 1630.2(e)(1)).

iii.    Plaintiff was qualified for his position as a PM Sous Chef

Lenny went to culinary school and has about a decade of experience working as a Sous Chef.  See CSF ¶ 46.  Notwithstanding, because Lenny once left a tray of watermelon on the boat at 3:00 AM and prepared seconds of salmon six minutes late, Defendants castigate him as the worst sous chef in the world.  See CSF ¶¶ 6, 9.  There is thus a genuine dispute of material fact as to whether Plaintiff was qualified for his position, and this material disputed issue of fact must be decided by a jury.  See Pesce v. New York City Police Dept., 159 F. Supp. 3d 448, 457 (S.D.N.Y. 2016) (finding that a genuine dispute of material fact concerning an employee's qualifications precludes summary judgment).

Moreover, Defendants altogether failed to outline the description of Plaintiff's position and how his job is performed such that this Court could make a determination as to Lenny's qualifications.  The law provides that, when determining the essential functions of a given job, courts engage in a *fact-specific* inquiry of both the employer's own description of the position and "how the job is actually performed in practice."  See Goonan v. Fed. Reserve Bd. of N.Y., 916 F. Supp. 2d 470, 479 (S.D.N.Y. 2013) (citation omitted) (quoting Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 140 (2d Cir. 1995)).

The Defendants have not met their burden in establishing that Plaintiff was unqualified by pointing to a couple of write-ups for leaving food out one time.  Nor have they met this burden by showing that Plaintiff once provided salmon six (6) minutes late.  These preposterous examples of disciplinary issue border on frivolity, and do not nearly rise to the level of conduct actually worthy of employee discipline.  In addition, Defendants have altogether failed to discuss Plaintiff's qualifications by way of his resume, which – as set forth *supra* – indicates nearly a decade of experience  as a sous chef.

Defendants have thus failed to establish that Plaintiff was unqualified for his job by pointing to his leaving watermelon out one night and delivering a second helping of the delicious salmon he cooked for a bride and groom at their wedding.

      iv.    Plaintiff was terminated due to his disability and the proffered legitimate, non-discriminatory reasons are pretextual

Similarly, Defendants proffer two conflicting but purportedly legitimate, non-discriminatory reasons for firing Lenny: (i) COVID-19; and (ii) his alleged poor performance. Both are pretextual. COVID-19 cannot serve as a refuge for Defendants because all other PM Sous Chefs remained employed throughout the pandemic. Separately, the evidence offered in support of the notion that Lenny was a poor performer is belied by the sporadic nature of the issues raised, the fact that the most recent disciplinary write up warned of suspension for future incidents (not termination) and no evidence of other incidents exists. Further, Plaintiff was not terminated right after the last writeup, which indicates that his termination was because of something else.

At the pretext stage, a plaintiff "may rely on evidence comprising his *prima facie* case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment[.]" See Giscombe v. N.Y.C. Dep't of Educ., 39 F. Supp. 3d 396, 403 (S.D.N.Y. 2014) (quoting Kwan v. Andalex Grp., LLC, 737 F.3d 834, 847 (2d Cir. 2013)). Because the proffered reasons for his termination are belied by the circumstances, Plaintiff submits that there exists sufficient circumstantial evidence to conclude that his May 18, 2020 termination, which came on the heels of his May 5, 2020 request for additional time off due to his disability, was due to his disability.

The Defendants also wield the coronavirus pandemic and its attendant shutdown Orders as a means to establish a legitimate, non-discriminatory reason for Lenny's termination. Setting aside the fact they incongruently argue he was terminated for performance reasons, this argument fails.

Indeed, the EEOC issued guidance that demonstrably eliminates any question that the pandemic and its effects somehow alleviate the employer's obligations under the ADA.  See EEOC: What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws.[6]

Indeed, the guidance provides that:

> Prior to the COVID-19 pandemic, most accommodations did not pose a significant expense when considered against an employer's overall budget and resources (always considering the budget/resources of the entire entity and not just its components). But, the sudden loss of some or all of an employer's income stream because of this pandemic is a relevant consideration. Also relevant is the amount of discretionary funds available at this time—when considering other expenses—and whether there is an expected date that current restrictions on an employer's operations will be lifted (or new restrictions will be added or substituted). *These considerations do not mean that an employer can reject any accommodation that costs money; an employer must weigh the cost of an accommodation against its current budget while taking into account constraints created by this pandemic.* **For example, even under current circumstances, there may be many no-cost or very low-cost accommodations.**

See Id. at D.11 (emphasis added).

Here, the only reasonable accommodation sought by Lenny was to be provided unpaid leave while he recovered from his foot injury.  However, Defendants completely failed to engage in an interactive process with Lenny and summarily fired him despite the fact he was entitled to job-protected leave.

This is despite the fact that, as set forth above, the pandemic provides no shelter to the Defendants in the dereliction of their duties under the statutory obligations posed on them.  To add insult to injury, unpaid leave is a no-cost accommodation.

---

[6] Available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last accessed on February 4, 2020).

Indeed, the Defendants could have easily provided Plaintiff with a reasonable accommodation in the form of unpaid leave. See 29 C.F.R. § 1630.2(o)(2) and 29 C.F.R. § Pt. 1630, App; see also, e.g., Petrone v. Hampton Bays Union Free Sch. Dist., 568 Fed. Appx. 5, 7 n.2 (2d Cir. 2014) ("we have never resolved the question of whether paid or unpaid leave can constitute a reasonable accommodation under the ADA") (citation omitted)); Graves v. Finch Pruyn & Co., 457 F.3d 181, 185 n.5 (2d Cir. 2006) ("Most other circuits and the Equal Employment Opportunity Commission have concluded that, in some circumstances, an unpaid leave of absence can be a reasonable accommodation under the ADA").

As such, Defendants' proffered legitimate, non-discriminatory reasons are pretextual, and summary judgment must be denied so that a jury may decide whether Defendants are credible.

## C.   ADA Retaliation

To establish a retaliation claim under the ADA, an employee "must show that he engaged in a protected activity, that he suffered an adverse employment action, and that a causal connection exists between that protected activity and the adverse employment action." See Fox v. Costco Wholesale Corp., 918 F.3d 65, 72–73 (2d Cir. 2019).

A causal connection can be demonstrated either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." See Littlejohn v. City of New York, 795 F.3d 297, 319 (2d Cir. 2015).

### i.   Plaintiff engaged in protected activity

By notifying Defendants of his disability, Plaintiff engaged in a protected activity.

Indeed, Lenny's notice to the employer dated March 15, 2020 said he will be seeking medical treatment for his broken toe and he provided his cellular phone number, indicating that he needs time off from work, such that this sufficiently establishes his request for leave due to his disability.  See Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 149 (2d Cir. 2002) ("[S]eeking reasonable accommodation ... constitutes protected activity…"); see also Bertuzzi v Copiague Union Free School Dist., No. 17-CIV.-4256 (SJF) (AKT), 2020 WL 5899949, at *9 (E.D.N.Y. Mar. 9, 2020), report and recommendation adopted as mod., 2020 WL 3989493 (E.D.N.Y. Jul. 15, 2020) (finding that providing medical documentation was sufficient to serve as a request for medical documentation); Garces v New York City Hous. Auth., No. 16-CIV.-2811 (LTS), 2017 WL 3025888, at *2 (S.D.N.Y. Jul. 17, 2017).

### ii.      Defendants terminated Plaintiff

There is no dispute that Defendants terminated Plaintiff on May 18, 2020, less than two (2) weeks after he provided his May 5, 2020 doctor's note requesting time off from work until June 2, 2020.  The element of an adverse employment action has therefore been established.

### iii.     The temporal proximity establishes a causal connection

"A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'"  See Natofsky v. City of New York, 921 F.3d 337, 353 (2d Cir. 2019) (quoting Littlejohn v. City of New York, 795 F.3d 297, 319 (2d Cir. 2015)).

Here, a causal connection exists because Lenny's protected activity was followed closely by discriminatory treatment.

The close timing of a mere two (2) months between Plaintiff's March 14, 2020 injury and his May 18, 2020 termination, as well as the two (2) weeks between Plaintiff's last sent medical update on May 5, 2020 and his May 18, 2020 termination strongly evidence termination.

While the Second Circuit "has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation," it "has previously held that five months is not too long to find the causal relationship." See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010).

Here, there is only – at max – a two (2) month gap between the date of injury and Plaintiff's termination, which is more than sufficient to establish a causal connection based on temporal proximity.  See Ibok v. Sec. Indus. Automation Corp., 369 Fed. Appx. 210, 213 (2d Cir. 2010) ("A temporal relationship between the protected activity and the adverse action—even when they are as much as five months apart—can establish a prima *facie case* of retaliation." (citing Gorzynski, 596 F.3d at 110-11)); Gonzalez v. New York City Health & Hosp. Corp., No. 18-CV-2645 (JPO), 2019 WL 2435622, at *12 (S.D.N.Y. June 11, 2019) ("[T]he Court concludes that the gap of five months at the outmost between [plaintiff's] protected activity and the onset of the retaliatory conduct is not too long to establish indirect causation for the purposes of the prima facie case of retaliation at the pleading stage").

Accordingly, Plaintiff has established a claim for retaliation based on the evidence adduced in discovery and Defendants' motion for summary judgment must be denied.

**D.    New York State and New York City Human Rights Law Claims**

The New York City Human Rights Law ("NYCHRL") prohibits discrimination based on, *inter alia*, disability. See N.Y.C. Admin. Code § 8-107(1)(a).

The NYCHRL expressly provides that it is to be "construed liberally" to accomplish its "uniquely broad and remedial purposes" regardless of whether federal and state law are similarly construed. See N.Y.C. Admin. Code § 8-130. In order to state a claim under the NYCHRL, a "plaintiff need only show differential treatment—that [he] is treated 'less well'—because of a discriminatory intent." See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013) (citing Williams v. New York City Hous. Auth., 872 N.Y.S. 2d 27, 39 (1st Dep't 2009)). The plaintiff must allege "that the conduct is caused by a discriminatory motive." Id.

Here, Lenny was the only one who was disabled and was the only PM Sous Chef who was terminated.  All other PM Sous Chefs remained employed even through the pandemic.  As such, for these reasons and those stated above, Plaintiff must prevail on his NYCHRL claims.

Because "[a] claim of disability discrimination under the [New York State Human Rights Law ("NYSHRL")] ... is governed by the same legal standards as govern federal ADA claims," Graves v. Finch Pruyn & Co., 457 F.3d 181, 186 n.3 (2d Cir. 2006) (citation omitted), Plaintiff has stated a claim under the NYSHRL. Additionally, although Plaintiff's NYCHRL discrimination claim – unlike the NYSHRL and the ADA – requires application of a broader standard than the ADA, the NYCHRL at least covers any conduct that constitutes discrimination under the ADA. See Loeffler v. Staten Island University Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (the "federal and state civil rights laws" are "a floor below which the [NYCHRL] cannot fall.").

Therefore, for the reasons stated *supra*, Plaintiff has stated a claim for relief under the NYSHRL as well.  In addition, the First Department has made clear, though, that in appropriate cases, temporal proximity alone can raise a sufficient inference of discrimination. See Brown v. City of NY, 188 A.D.3d 518, 519 (1st Dept. 2020); see also Parris v. New York City Dept. of Educ., 111 A.D.3d 528, 529 (1st Dept. 2013).

Accordingly, for the same reasons set forth in this brief, Plaintiff must prevail on his more lenient state and local law claims under the NYSHRL and NYCHRL, respectively.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Defendants' motion for summary judgment as too many issues of fact are present.

Dated:   Forest Hills, New York
         February 4, 2022                    **SHALOM LAW, PLLC**

                                             By:  */s/Jonathan Shalom, Esq.*_____
                                             Jonathan Shalom, Esq.
                                             10513 Metropolitan Avenue
                                             Forest Hills, NY 11375-6737
                                             (718) 971-9474 (office)
                                             jonathan@shalomlawny.com

                                             *Attorneys for Plaintiff*

22