```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   LENNY MOLINA,

 4                    Plaintiff,

 5          v.                            20 CV 10821 (GHW)

 6   HORNBLOWER GROUP, INC.;
     HORNBLOWER NEW YORK, LLC; and
 7   HORNBLOWER CRUISES AND EVENTS,
     LLC,
 8
                     Defendants.         Decision
 9                                       (via Telephone)
     ------------------------------x
10                                       New York, N.Y.
                                         September 22, 2022
11                                       12:30 p.m.

12   Before:

13                    HON. GREGORY H. WOODS,

14                                       District Judge

15                    APPEARANCES

16   SHALOM LAW, PLLC
          Attorneys for Plaintiff
17   BY:  JONATHAN SHALOM

18   GORDON REES SCULLY MANSUKHANI LLP
          Attorneys for Defendants
19   BY:  RYAN E. DEMPSEY
          MICHAEL J. SCHACHER
20

21

22

23

24

25
```

```
1              (Case called)
2              THE COURT:  Let's begin.  First, apologies for
3    starting late.  Thank you joining.
4              Let me begin by taking appearances from the parties.
5    First, who is on the line for the plaintiff?
6              MR. SHALOM:  This is plaintiff's counsel Jonathan
7    Shalom for plaintiff, Lenny Molina.
8              THE COURT:  Thank you very much.
9              Who is on the line for defendants?
10             MR. DEMPSEY:  Ryan Dempsey, your Honor, with the law
11   firm of Gordon Rees for the defendants.
12             MR. SCHACHER:  Michael Schacher, your Honor, Gordon
13   Rees, also for defendants.  Good afternoon.
14             THE COURT:  Thank you very much.
15             Let me begin with a few brief instructions about the
16   rules I would like the parties to follow during this
17   conference.
18             At the outset, please remember that this is a public
19   proceeding.  Any member of the public or press is welcome to
20   dial into this call.  I'm not currently monitoring whether
21   third parties are auditing the conference.  I ask you to just
22   please keep that fact in mind.
23             Second, please place your phones on mute.  I'm hearing
24   a little bit of background noise.  If you just place your
25   phones on mute, that will deal with it.  Thank you very much
```

```
1    for doing that.

2         Third, please state each name you speak.  You should

3    do that regardless of whether or not you have spoken

4    previously.

5         Fourth, please abide by instructions from our court

6    reporter that are designed to help the court reporter do their

7    job.

8         Finally, I am ordering that there be no recording or

9    rebroadcast of all or any portion of today's conference.

10        Counsel, with that out of the way, I scheduled this

11   conference to take up defendants' motion for summary judgment.

12   I reviewed the parties' submissions.

13        Is there anything that either of you would like to add

14   with respect to your written submissions?

15        Let me begin with counsel for defendants.

16        MR. SCHACHER:  I don't have anything to add, your

17   Honor.  My colleague, Mr. Dempsey, might, but I don't.

18        MR. DEMPSEY:  No, your Honor.  Nothing to add.

19        THE COURT:  Thank you.

20        Counsel for plaintiff.

21        MR. SHALOM:  Yes, your Honor.  I have nothing to add.

22        THE COURT:  Thank you very much.

23        I am going to rule on the motion orally.  I am going

24   to do that now.  Please place your phones on mute as I describe

25   the reasoning for my decision.
```

1    I am going to deny Defendants' motion for summary

2 judgment.  Fundamentally, there are disputed issues of fact

3 that preclude the entry of summary judgment.  I am going to

4 grant Defendants' motion to exclude any expert testimony on

5 Plaintiff's behalf because he has failed to comply with the

6 scheduling order in this case without justification.

7    On December 29, 2021, Defendants filed a motion for

8 summary judgment, seeking the dismissal of all of Plaintiff's

9 claims.  Dkt. No. 40.  The motion also requested that the Court

10 exclude any prospective expert testimony to be offered by

11 Plaintiff.  Plaintiff filed his opposition on February 4, 2022.

12 Dkt. No. 44.  In support of the opposition, Plaintiff submitted

13 an affidavit (the "Molina Aff.").  Dkt. No. 45.  Plaintiff

14 argued that dismissal of his claim was inappropriate due to

15 disputed issues of material fact regarding whether he suffered

16 from a disability and whether it, and his request for an

17 accommodation as a result of it, had resulted in his

18 termination.  Plaintiff did not oppose Defendants' motion to

19 exclude expert testimony.  Defendants filed their reply on

20 February 11, 2022.  Dkt. No. 46.

21    The parties are familiar with the underlying facts.

22 Therefore, I will not recite those in detail.  To the extent

23 that any of the facts presented in the parties' submissions are

24 pertinent to my decision, those facts are embedded in my

25 analysis.

1           II. SUMMARY JUDGMENT STANDARD OF REVIEW

2           Summary judgment is appropriate when "the movant shows

3  that there is no genuine dispute as to any material fact and

4  the movant is entitled to judgment as a matter of law."  Fed.

5  R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S.

6  317, 322 (1986) ("[S]ummary judgment is proper 'if the

7  pleadings, depositions, answers to interrogatories, and

8  admissions on file, together with the affidavits, if any, show

9  that there is no genuine issue as to any material fact and that

10 the moving party is entitled to a judgment as a matter of

11 law.'" (quoting former Fed. R. Civ. P. 56(c))).  A genuine

12 dispute exists where "the evidence is such that a reasonable

13 jury could return a verdict for the nonmoving party," while a

14 fact is material if it "might affect the outcome of the suit

15 under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477

16 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or

17 unnecessary will not be counted." *Id.*

18          The movant bears the initial burden of demonstrating

19 "the absence of a genuine issue of material fact," and, if

20 satisfied, the burden then shifts to the non-movant to present

21 "evidence sufficient to satisfy every element of the claim."

22 *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing

23 *Celotex*, 477 U.S. at 323).  To defeat a motion for summary

24 judgment, the non-movant "must come forward with 'specific

25 facts showing that there is a genuine issue for trial.'"

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted) and she "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236 (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury,

1  not for the court on summary judgment." *Jeffreys v. City of*

2  *New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

3  　　　　　In employment discrimination cases, where direct

4  evidence of intentional discrimination is rare, "affidavits and

5  depositions must be carefully scrutinized for circumstantial

6  proof" of discrimination.  *Turner v. NYU Hosps. Ctr.*, 784 F.

7  Supp. 2d 266, 275 (S.D.N.Y. 2011).  "However, even in such

8  cases, a plaintiff must provide more than conclusory

9  allegations of discrimination to defeat a motion for summary

10  judgment and show more than some metaphysical doubt as to

11  material facts." *Id.* at 275-76 (internal quotations omitted)

12  (citing *Schwapp v. Town of Avon*, 118 F. 3d 106 (2d Cir. 1997);

13  *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 101 (2d Cir.

14  2010)); *Brown v. Johnson & Johnson Consumer Products Inc.*, 1994

15  WL 361444, at *3 n.3 (S.D.N.Y. July 11, 1994) ("To assert that

16  [defendant's] witnesses may be lying, without any evidence to

17  contradict the witnesses' testimony, cannot defeat a motion for

18  summary judgment.") (citation omitted).

19  　　　　　III.  DISCRIMINATION CLAIMS

20  　　　　　Plaintiff has raised a number of claims arising from

21  his injury on March 14, 2020.  I will first address the federal

22  claims brought under the Americans with Disabilities Act, 42

23  U.S.C. § 12101, *et seq.* (the "ADA"), and then turn to the

24  related state claims.

25  　　　　　A. ADA

1        1.  Discrimination claim

2            A motion for summary judgment with respect to a claim

3    of discrimination under the ADA is analyzed using the

4    burden-shifting framework set forth in *McDonnell Douglas Corp.*

5    *v. Green*, 411 U.S. 792, 802-04 (1973). *See Widomski v. State*

6    *Univ. of N.Y. (SUNY) at Orange*, 748 F.3d 471, 476 (2d Cir.

7    2014).  Under this framework, "the plaintiff bears the initial

8    burden of establishing a prima facie case of discrimination.

9    If the plaintiff does so . . . the defendant [must] articulate

10   some legitimate, nondiscriminatory reason for its action.  If

11   such a reason is provided, plaintiff . . . may still prevail by

12   showing . . . that the employer's determination was in fact the

13   result of . . . discrimination." *Holcomb v. Iona Coll.*, 521

14   F.3d 130, 138 (2d Cir. 2008) (internal quotations omitted).

15           To establish a prima facie case of discrimination

16   under the ADA, a plaintiff must show (i) that his employer is

17   subject to the statute; (ii) that he is disabled within the

18   meaning of the statute or perceived to be so by his employer;

19   (iii) that he was otherwise qualified to perform the essential

20   functions of the job with or without reasonable accommodation;

21   and (iv) that he suffered an adverse employment action because

22   of his disability.  *See Jacques v. DiMarzio Inc.*, 386 F.3d 192,

23   198 (2d Cir. 2004).

24           A plaintiff who is able to make out a *prima facie* case

25   creates a presumption of discrimination and shifts the burden

of production to the defendant.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000).  The defendant must meet this burden by articulating a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  If the defendant can present a nondiscriminatory explanation, the presumption of discrimination drops out of the analysis and the burden of proof shifts back to the plaintiff.  *Id.* at 142-43.  The plaintiff must then show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143.  To defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).

A reasonable jury could find that Plaintiff is disabled under the ADA.  To establish a disability, a plaintiff must (1) "show that she suffers from a physical or mental impairment," (2) "identify the activity claimed to be impaired and establish that it constitutes a major life activity," and (3) "show that her impairment substantially limits the major life activity previously identified." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 147 (2d Cir. 2002) (cleaned up).

An impairment need not be permanent or chronic to

qualify as a "disability" under the ADA. *Hamilton v.*
*Westchester County*, 3 F.4th 86, 93 (2d Cir. 2021) ("[U]nder the
expanded definition of 'disability' under the [2008 ADA
Amendments Act], which now covers impairments lasting or
expected to last less than six months, a short-term injury can
qualify as an actionable disability under the ADA.") (emphasis
in original) (cleaned up).

The 2008 ADA Amendments Act (ADAAA) "ma[d]e clear that
the substantial-Limitation requirement in the definition of
'disability' is not an exacting one," *Hamilton*, 3 F.4th at 92
(cleaned up); *see* 29 C.F.R. § 1630.2(j)(1)(i), and "should not
demand extensive analysis," 29 C.F.R. § 1630.2(j)(1)(iii); *see*
*Brtalik v. S. Huntington Union Free Sch. Dist.*, 2012 WL 748748,
at *4 (E.D.N.Y. Mar. 8, 2012).

An impairment is a disability within the meaning of
this section if it substantially limits the ability of an
individual to perform a major life activity as compared to most
people in the general population. An impairment need not
prevent, or significantly or severely restrict, the individual
from performing a major life activity in order to be considered
substantially limiting. Nonetheless, not every impairment will
constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(1)(ii); *see Parada v. Banco*
*Indus. De Venez., C.A.*, 753 F.3d 62, 69 (2d Cir. 2014). This
inquiry "usually will not require scientific, medical, or

statistical analysis," although such evidence is of course not prohibited, 29 C.F.R. § 1630.2(j)(1)(v); *Clark v. Stop & Shop Supermarket Co.*, 2016 WL 4408983, at *4 (D. Conn. Aug. 16, 2016), and is made "without regard to the ameliorative effects of mitigating measures," 42 U.S.C. § 12102(4)(E); 29 C.F.R. § 1630.2(j)(1)(vi).  In determining whether an individual is disabled under the ADA, the Second Circuit has "rejected bright-line tests" and instructed courts to engage in a "fact-specific inquiry." *Parada*, 753 F.3d at 69.  Appropriate considerations include "the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function." 29 C.F.R. § 1630.2(j)(4)(ii).  As applicable here, the ADA provides that "major life activities include, but are not limited to ... walking, standing, and sitting." *See* 29 C.F.R. § 1630.2(i)(1)(i)-(ii); *see also Parada*, 753 F.3d at 69.

Plaintiff provided evidence that his injury substantially affected his ability to walk and stand—both major life activities.  His affidavit asserts that he broke his toe in five places and that he was not able to walk at all after his injury.  Affidavit of Lenny Molina, Dkt. No. 45 ("Molina. Aff."), ¶ 38.  After a period in which he was unable to walk at all, he was required to use crutches for two weeks.  *Id.* ¶ 39.

After that, he was required to wear a boot for six to seven months.  *Id.* ¶ 40.  During that time, he was not able to stand for more than ten minutes at a time, and without a boot, he was not able to put his foot on the ground at all.  *Id.* ¶¶ 41–42. Because his injury resulted in a substantial impairment of his ability to walk for a substantial period of time, a reasonable jury could conclude that Plaintiff was disabled for at least some period of time following his injury.  Defendants dispute the extent of Plaintiff's injury as a matter of fact—submitting an independent medical examination from a podiatrist contradicting Plaintiff's account of the seriousness and effects of his injury.  Dkt. No. 40–14.  But, of course, I do not weigh the evidence or make findings of fact in the context of a motion for summary judgment.  The contradictory evidence presented by Defendants merely serves to highlight the existence of a disputed issue of material fact regarding plaintiff's asserted disability.

A reasonable jury could also find that the Plaintiff suffered an adverse employment action because of his disability.  The Second Circuit has "defined adverse employment action broadly to include 'discharge, refusal to hire, refusal to promote, demotion, reduction in pay and reprimand.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)).  Plaintiff's termination was an adverse employment

action.  Dkt. No. 45, Molina Aff. ¶ 28; Dkt. No. 40, Ex. J.  A

reasonable jury could find that this termination was caused by

his disability for two principal reasons:  First, because he

was the only sous chef fired.  Molina Aff. ¶ 49.  A reasonable

jury could conclude that he was singled out for termination on

account of his disability.  Second, because of the timing of

his termination––a mere two weeks after he submitted his second

medical note asking for leave because of his injury.  *Id.* ¶¶

30–34.  Defendants assert that they fired other sous chefs and

Plaintiff's supervisor and that they never received the medical

notes.  But for purposes of the motion, I must accept

Plaintiff's sworn account of events as true.  Plaintiff has

thus established his prima facie claim for discrimination.

        Defendants have clearly articulated a legitimate,

nondiscriminatory reason for terminating the plaintiff on May

18, 2020.  After all, that was the outset of the COVID–19

pandemic in New York City, and Defendants assert that they

furloughed, then terminated staff, on account of the pandemic.

The assert that they terminated other sous chefs and that the

only sous chefs that were not fired had better performance

records than Plaintiff.  Affidavit of Christine Metivier, Dkt.

No. 40-15 ("Metivier Aff."), ¶¶ 27–28, 13, 15, 16, 27–28;

affidavit of Scott Hauser, Dkt. No. 40-17 ("Hauser Aff."), ¶¶

12, 14, 15, 20.  Defendants have met their burden.

        A reasonable jury could find that Defendants' reason

is pretextual and Plaintiff's termination was more likely than

not based, in whole or in part, on discrimination for the same

reasons that Plaintiff was able to show causation in his prima

facie case.  Plaintiff was the only sous chef fired on May 18,

2020, a short couple of weeks after he submitted his second

medical note requesting leave.  Accordingly, Defendants'

summary judgment motion fails as to the plaintiff's

discrimination claim under the ADA.

        2. Failure to accommodate.

        Summary judgment is also not warranted with respect to

Plaintiff's claim for failure to accommodate under the ADA.

Disability discrimination under the ADA includes a failure to

provide an employee with a reasonable accommodation for his or

her disability.  *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181,

183-84 (2d Cir. 2006).  These types of claims are also analyzed

using the burden-shifting scheme set forth in *McDonnell

Douglas.  McDonnell v. Schindler Elevator Corp.*, No. 12-cv-4614

(VEC), 2014 WL 3512772, at *4 (S.D.N.Y. July 16, 2014).  In

discrimination claims based on failures to accommodate, the

plaintiff "bears the burdens of both production and persuasion

as to the existence of some accommodation that would allow

[him] to perform the essential functions of [his] employment."

*McMillan v. City Of New York*, 711 F.3d 120, 126 (2d Cir. 2013).

To establish a case of discrimination based on a failure to

accommodate, a plaintiff must show by a preponderance of the

evidence that "(1) he is disabled within the meaning of [the relevant statute]; (2) his employer is a covered entity; (3) he could perform the essential functions of his job with an accommodation; and (4) the defendants refused to provide such an accommodation despite being on notice." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73 (2d Cir. 2019) (quoting *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96–97 (2d Cir. 2009)).

A court must conduct "a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013). Once the essential work functions of the position have been identified based on the employer's determination as to what functions are essential, the plaintiff must demonstrate that he could have performed these functions with an accommodation. *Id.* at 127. The burden on the plaintiff is not heavy—he must simply "suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.* "Reasonable accommodations" may include adjustments to work schedules or other job restructuring. See 45 C.F.R. § 84.12(b) (2005). Of course, "[a] reasonable accommodation can never involve the elimination of an essential function of a job." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003). If an employee "cannot show that a reasonable accommodation existed

at the time of his [or her] dismissal," the employee cannot

recover. *McElwee v. Cty. of Orange*, 700 F.3d 635, 642 (2d Cir.

2012). Once a plaintiff suggests a plausible accommodation,

the burden shifts back to the defendant to demonstrate that

such accommodations would present undue hardships and would

therefore be unreasonable. *See McMillan*, 711 F.3d at 128. An

"undue hardship" is "an action requiring significant difficulty

or expense." 42 U.S.C. § 12111(10)(A).

Plaintiff has sufficiently established his disability,

as described above. Defendants do not dispute that they are

covered entities.

Defendants' summary of the essential work functions of

Plaintiff's former position is undisputed by the plaintiff.

See Hauser Aff. ¶ 11.

A reasonable jury could find that the Plaintiff could

have performed the essential functions of his job with a

reasonable accommodation. First, Plaintiff asserts that all he

needed to do his work was to receive assistance "from other

employees who were in the kitchen anyway." Molina Aff. ¶ 45.

Drawing all inferences in favor of Plaintiff, I understand this

to be a statement of fact that there were other employees in

the kitchen and that, with their assistance, he could have

performed his work as a cook. Again, I understand that

Defendants assert that there were not other people in the

kitchen at the time, but I am required to accept Plaintiff's

sworn facts as true for purposes of evaluating the motion.
Plaintiff also asserts that despite his injury, he could have
worked at a computer in an office to focus on paperwork, which
he avers in his affidavit he regularly did nearly half of his
shift on a day-to-day basis.  Molina Aff. ¶ 44.

Defendants assert that an accommodation would have
been impossible rather than reasonable because they had to
terminate a majority of the crew where Plaintiff worked, and he
could not have relied on other employees.  Metivier Aff. ¶ 35.
But again, I must accept Plaintiff's version of events—in his
version of events, there were other employees in the kitchen
anyway who could have helped him.  He stated that he was the
only sous chef terminated.

Plaintiff has also produced sufficient evidence to
show that the defendants refused to provide such an
accommodation, despite being on notice.  An employer has
sufficient notice of a disability so that they are required to
engage in an interactive process to determine whether any
reasonable accommodation may be made if the disability is
obvious.  *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d
Cir. 2008).  A disability can be considered obvious when the
employer knew or reasonably should have known that the employee
was disabled.  *Id.*  Plaintiff offered evidence that Defendants
were on notice of his disability because he (1) notified them
by email the day after the incident on March 15, 2020; (2) an

incident form was created on the day of his injury on March 14, 2020; and (3) he provided several medical notes asking for leave due to his injury.  Molina Aff. ¶¶ 23, 31-34; Dkt. No. 45, Ex. C.  Plaintiff avers in his affidavit that they refused to provide the accommodation because they terminated him on May 18, 2020.  Defendants dispute these facts, but, again the existence of such a disputed issue of fact requires resolution by a finder of fact.  Metivier Aff. ¶ 36. Accordingly, Defendants' summary judgment motion fails as to Plaintiff's failure to accommodate claim under the ADA.

        3. Retaliation.

        A motion for summary judgment with respect to a retaliation claim brought under the ADA is also analyzed under the *McDonnell Douglas* burden shifting framework.  *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006).

        To establish a *prima facie* case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action.  *Id.* "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence, such as

disparate treatment of fellow employees who engaged in similar

conduct; or (2) directly, through evidence of retaliatory

animus directed against the plaintiff by the defendant.'"

*Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir.

2015) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117

(2d Cir. 2000)).  If the plaintiff sustains his initial burden

of demonstrating a prima facie case, "a presumption of

retaliation arises."  *Hicks v. Baines*, 593 F.3d 159, 164 (2d

Cir. 2010) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d

166, 173 (2d Cir. 2005)).  "If a plaintiff sustains the initial

burden, a presumption of retaliation arises."  *Jute*, 420 F.3d at

173.  At the second step of the *McDonnell Douglas* analysis, the

burden then shifts to the defendant to rebut the presumption of

retaliation "by 'articulat[ing] a legitimate, non-retaliatory

reason for the adverse employment action.'"  *Ya-Chen Chen v.*

*City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015).  "If the

defendant provides such an explanation, 'the presumption of

retaliation dissipates.'"  *Id.* (quoting Jute, 420 F.3d at 173).

     At the third and final step of the analysis, "[t]he

plaintiff must . . . come forward with [proof that the]

non-retaliatory reason is a mere pretext for retaliation."

*Misas v. N. Shore-Long Island Jewish Health Sys.*, 2017 WL

1535112, at *9 (S.D.N.Y. Apr. 27, 2017) (internal quotation

omitted).  To satisfy this burden, "the plaintiff must prove

'that the desire to retaliate was the but-for cause of the

challenged employment action,'"  *Ya-Chen Chen*, 805 F.3d at 70

(quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct.

2517, 2528 (2013)), and "not simply a 'substantial' or

'motivating' factor in the employer's decision." *Zann Kwan v.*

*Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013)

(citing *Nassar*, 133 S. Ct. at 2526, 2533).  Nevertheless, as

the Second Circuit has explained, "[t]he determination of

whether retaliation was a 'but-for' cause, rather than just a

motivating factor, is particularly poorly suited to disposition

by summary judgment, because it requires weighing of the

disputed facts, rather than a determination that there is no

genuine dispute as to any material fact." *Id.* at 846.

         Plaintiff has established his prima facie case of

retaliation.  Under the ADA, "[r]equests for disability

accommodation and complaints, whether formal or informal, about

working conditions related to one's alleged disability are

protected activities." *Limauro v. Consol Edison Co. of New*

*York, Inc.*, 2021 WL 466952, at *10 (S.D.N.Y. Feb. 9, 2021).

Plaintiff has presented sufficient evidence that he engaged in

a protected activity and that Defendants knew of this protected

activity.  Plaintiff avers that he submitted requests for

accommodation to Defendants through medical notes.  Molina Aff.

at ¶¶ 23, 31-34.  As I discussed before, Plaintiff suffered an

adverse employment action because he was terminated.  Molina

Aff. ¶ 28.  Plaintiff also established a causal relationship

1    between the protected activity and the termination because of

2    the temporal relationship between the two.  A temporal

3    relationship between the protected activity and the adverse

4    action suffices to establish a prima facie claim of

5    retaliation, even when the activity and action are as much as

6    five months apart.  *Gorzynski v. JetBlue Airways Corp.*, 596

7    F.3d 93, 110 (2d Cir. 2010) (noting that, though a "bright line

8    defining, for the purposes of a prima facie case, the outer

9    limits beyond which a temporal relationship is too attenuated

10   to establish causation, we have previously held that five

11   months is not too long to find the causal relationship.").

12   Plaintiff was terminated only two weeks after his request for

13   an accommodation.

14           As I have already described, Defendants have

15   articulated a legitimate, nonretaliatory reason for the adverse

16   employment action—the onset of the global COVID-19 pandemic

17   combined with what they assert to be Plaintiff's poor

18   performance.  Metivier Aff. ¶¶ 27-28, 13, 15, 16; Hauser Aff.

19   ¶¶ 12, 14, 15, 20.

20           Plaintiff has presented sufficient evidence to support

21   the conclusion that Defendants' explanation is mere pretext. As

22   I described before, the adverse employment action followed

23   close on the heels of his request. "The temporal proximity of

24   events may give rise to an inference of retaliation for the

25   purposes of establishing a prima facie case of retaliation . .

Without more, such temporal proximity is insufficient to satisfy [a plaintiff's] burden to bring forward some evidence of pretext." *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237 262-63 (S.D.N.Y. 2015) (quoting *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010)).  But here, Plaintiff has presented evidence of more than temporal proximity.  Plaintiff has shown that he was treated differently than the other employees because he was the only sous chef fired.  Molina Aff. ¶¶ 30-34.  Again, I must accept Plaintiff's evidence as true for this purpose.  That differential treatment, together with the temporal connection, suffice to defeat Defendants' motion for summary judgment.

        B. NYSHRL and the NYCRHL state claims

        Claims brought under the NYCHRL must be reviewed "independently from and 'more liberally' than their federal and state counterparts." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (quoting *Williams v. N.Y. City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)).

        The NYCHRL is a "one-way ratchet," by which interpretations of state and federal civil rights statutes can serve only "'as a floor below which the City's Human Rights law cannot fall.'"  *Mihalik v. Credit Agricole Cheuvreux N. Am.*, *Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  Because the Court ruled that Defendants are not entitled to summary judgment under the more stringent standards applicable to the ADA,

1    summary judgment is not warranted with respect to the more

2    liberal standard under the NYCHRL for the discrimination,

3    failure to accommodate, and retaliation claims.

4             The same result applies to Plaintiff's claims under

5    the New York State Human Rights Law (the "NYSHRL").  The New

6    York state legislature amended the NYSHRL on August 12, 2019,

7    to "establish that its provisions should be construed liberally

8    even if federal civil rights law, including those laws with

9    provisions worded comparably to the provisions of this article,

10   have been construed narrowly.  The effect of that amendment is

11   to render the standard for claims closer to the [more liberal]

12   standard under the NYCHRL."  *Talbott-Serrano v. Iona Coll.*,

13   2022 WL 3718346, at *8 (S.D.N.Y. Aug. 29, 2022).  "[T]hese

14   amendments only apply to claims that accrue on or after the

15   effective date of October 11, 2019."  *Id.*  "[A] cause of action

16   for discrimination under the NYSHRL accrues and the limitation

17   period begins to run on the date of the alleged discriminatory

18   act."  *Fair Hous. Just. Ctr., Inc. v. JDS Dev. LLC*, 443 F.

19   Supp. 3d 494, 504 (S.D.N.Y. 2020), *reconsideration denied*, 2020

20   WL 5018349 (S.D.N.Y. Aug. 25, 2020) (citing *Flaherty v.*

21   *Massapequa Pub. Sch.*, 752 F. Supp. 2d 286, 293 (E.D.N.Y. 2010))

22   (alterations omitted).  As such, the amendments apply to

23   Plaintiff's claims as the alleged discriminatory acts occurred

24   months after October 19, 2019.  Because the more liberal

25   standard applicable to the NYCHRL apples to the NYSHRL as well,

summary judgment is not warranted with respect to Plaintiff's

claims arising under that statute.

IV. MOTION TO EXCLUDE EXPERT TESTIMONY.

Defendant's motion to exclude any expert testimony on

behalf of Plaintiff is granted.  On March 31, 2021, the Court

entered a case management plan and scheduling order in this

case.  Dkt. No. 25.  The order contained deadlines for the

completion of discovery in this case.  Among other things, the

order established a deadline for production of Plaintiff's

expert disclosures:  The deadline was July 30, 2021.  The order

also established a deadline for the completion of expert

discovery:  September 29, 2021.  The Court discussed those

deadlines and their import at length during the initial

pretrial conference, and reminded the parties of those comments

in an order issued by the Court on July 24, 2021.  Dkt. No. 28.

In an August 9, 2021 letter to the Court, Plaintiff's counsel

wrote that "Plaintiff determined that he does not wish to offer

expert testimony."  Dkt. No. 31.  Consistent with that

assertion, I understand that Plaintiff has never disclosed an

expert in this case.

Rule 26 provides that at the start of the case,

parties must disclose "the name and, if known, the address and

telephone number of each individual likely to have discoverable

information – along with the subjects of that information –

that the disclosing party may use to support its claims or

defenses, unless the use would be solely for impeachment[.]"

Fed. R. Civ. P. 26(a)(1)(A)(i).  These disclosures must be

supplemented as new information comes to light.  *See* Fed. R.

Civ. P. 26(e)(1).  The rules also require disclosure of expert

witnesses.  *See* Fed. R. Civ. P. 26(a)(2).  If a party does not

identify a witness in the initial disclosures or otherwise,

that party is "not allowed to use that . . . witness to supply

evidence on a motion, at a hearing, or at a trial, unless the

failure was substantially justified or is harmless."  Fed. R.

Civ. P. 37(c)(1).

      "If a party fails to provide information or identify a

witness as required by Rule 26(a) or (e), the party is not

allowed to use that information or witness to supply evidence .

. . at a trial, unless the failure was substantially justified

or is harmless."  Fed. R. Civ. P. 37(c).

      While the language of Rule 37 provides for automatic

exclusion of expert testimony that falls outside the scope of a

Rule 26(a) disclosure and report, the Second Circuit requires

district courts to consider four factors prior to the exclusion

of such evidence: "(1) the party's explanation for the failure

to comply with the [disclosure requirement]; (2) the importance

of the testimony of the precluded witness; (3) the prejudice

suffered by the opposing party as a result of having to prepare

to meet the new testimony; and (4) the possibility of a

continuance."  *Design Strategy, Inc., v. Davis*, 469 F.3d 284,

296 (2d Cir. 2006) (Citing *Patterson v. Balsamico*, 440 F.3d

104, 117 (2d Cir. 2006)).

The first factor weighs heavily in favor of

preclusion.  Plaintiff intentionally chose not to present

expert disclosures in this case.

The second factor is neutral.  Plaintiff has made a

determination that he does not wish to use expert testimony in

this case.  Based on that appraisal, the Court does not

understand the evidence to be of significance.  While expert

testimony can be helpful in a disability case, as I have

outlined, it is not necessary.

The third factor weighs heavily in favor of

preclusion.  Because Plaintiff did not disclose an expert,

Defendant will not have the opportunity to depose any expert

later revealed by him.

Finally, the fourth factor weighs in favor of

preclusion.  As I explained earlier, this case will have been

pending for a substantial amount of time by the time that the

case is tried.  The circuit has warned that "a court must not

let its zeal for a tidy calendar overcome its duty to do

justice." *Winston v. Prudential Lines, Inc.*, 415 F.2d 619, 621

(2d Cir. 1969) (quotation omitted).  Though the disclosures

were due over a year ago, Plaintiff has never asked for a

continuance.  *See Balsamico*, 440 F.3d at 118.

Furthermore, "[t]o permit entirely unexplained Rule 26

violations to go unsanctioned whenever the evidence at issue is

sufficiently important would give parties the perverse

incentive to spring especially large and surprising disclosures

on their adversaries on the eve of trial—an extreme version of

the 'sandbagging' that Rule 26 attempts to avoid." *Agence*

*France Presse v. Morel*, 293 F.R.D. 682, 687 (S.D.N.Y. 2013).

Weighing the *Design Strategies* factors, the Court

finds that exclusion of expert testimony is warranted here to

the extent that Plaintiff were to seek to introduce the

testimony of an expert at this stage of the case or a later

stage of the case.  Defendants' request to exclude Plaintiff's

expert testimony or evidence is granted.

V. CONCLUSION AND NEXT STEPS

For the foregoing reasons, Defendants' motion for

summary judgment is denied in its entirety.  I am granting

Defendants' motion with respect to the exclusion of any

unnoticed expert testimony.  I will issue a short summary order

later today or tomorrow pointing to the transcript of today's

proceeding for the basis for my decision.

Just a brief note.  As you have heard, much of my

decision here rests on the fact that I'm required to credit

plaintiff's statements in his affidavit as true.  He stated,

under penalty of perjury, that no other sous chefs were

terminated.  He states that other people in the kitchen were

there anyway to help.  Those are both assertions made by

1   plaintiff under penalty of perjury in the affidavit presented

2   to me.  I understand that there is a question of fact about

3   whether or not those statements are true, but I have to credit

4   plaintiff's assertions for purposes of evaluating the motion

5   for summary judgment.  If, of course, it turns out that they

6   are not true and plaintiff perjured himself, that's a different

7   problem.  But for purposes of the summary judgment motion

8   practice, I accept his assertions as true.

9           Let's talk a little bit about next steps.  I am going

10  to schedule a trial date.  I am going to do that relatively

11  promptly.  I don't know what the parties' expectations are.

12  I'd like to give you some time to talk about the possibility of

13  settling this case.  I am not going to put my finger on the

14  scale about what I think about the merits of the case.  But I

15  would certainly be happy to refer you to the mediation office

16  or to our magistrate judge so that you can get some kind of an

17  independent assessment of the value of this case involving a

18  broken toe and the termination of somebody in the hospitality

19  industry on the eve of COVID.

20          I will try to schedule trial in a way that gives you

21  time to do that work, if you'd like to do that.  Let me begin

22  with that.  Then I am going to spend a little bit of time with

23  you talking about the pretrial submissions that my order

24  scheduling trial are going to require that the parties provide

25  to me.

1          First, counsel for plaintiff, would it be helpful, in
2     your view, for me to refer the parties to mediation, either
3     before the magistrate judge or otherwise?
4          MR. SHALOM:  Your Honor, plaintiff would be open to
5     proposed mediation to see if the parties can amicably resolve.
6     If not, plaintiff would be ready, willing, and able to continue
7     with trial.
8          THE COURT:  Thank you.
9          I am going to refer the parties to mediation.  I'll
10    put a little bit of extra time into the schedule so that you
11    can focus on that, and I'll call it the next couple of months.
12    I will set a schedule for trial that will give you some, I'll
13    call it, runway to talk about resolution.  I encourage you to
14    talk about it.
15          Let me spend a little bit of time talking about what
16    my order will provide.  My order will establish a trial date.
17    My understanding is that the parties anticipate that this is a
18    trial that will last about three days.  I think that's probably
19    about right, based on what I know about the case.  I am going
20    to pick a week when I have a full week that I can give you.  I
21    don't expect, given the nature of the case, that it will take
22    longer than that to try.
23          I am going to include in my order directions regarding
24    the pretrial submissions.  Principally, I am going to pointing
25    you to my individual rules of practice in civil cases,

1  particularly Rule 5.  They are pretty self-explanatory, but I

2  just want to take a few more moments of your time to elaborate

3  on a couple of things about those rules.

4       The first thing that I want to highlight is just that

5  it requires a substantial amount of advance work to put

6  together the pretrial materials that will be due on a date

7  certain in accordance with my order.  So I am going to be

8  ordering that you provide to me those pretrial submissions.

9  Implicit in that is an order that the parties do the joint work

10 prior to the date so that you can meet that deadline.  Let me

11 give you just one brief example of the kind of things that

12 require substantial advance work.  Not that this is unknown to

13 you, but let me just make sure that you have at least heard one

14 illustration.

15      The joint pretrial order requires that the parties

16 provide the Court with a bunch of information.  Among that is a

17 list of all of the exhibits that each side will use at trial.

18 That is to be presented to me in a chart.  The first column has

19 the exhibit letter or number that will refer to the document or

20 other evidence at trial.  The second column describes that

21 exhibit.  The third column will state whether or not there is

22 an objection to the introduction of the exhibit.  The fourth

23 column will describe the basis for the objection.

24      So you can see, just to put together that part of the

25 joint pretrial order, the parties are going to need to figure

1  out what exhibits you want to use, you are going to need to

2  share them with one another, and you will need to do that

3  sufficiently in advance of the deadline so that the other side

4  can tell you what any objections might be so you can include

5  that information in the chart.

6        Similarly, in the joint pretrial order, you will need

7  to identify any deposition designations, and that means that

8  you must identify the deposition designations by line, page and

9  line.  You will need to share them with your adversary so that

10  they can object to any designations and also present any

11  counterdesignations and so that a responsive objection to the

12  counterdesignations can be included in the joint pretrial

13  order.

14        Just to put it very simply, to provide the Court with

15  the information that must be included in the joint pretrial

16  order, the parties need to do a lot of advance work.  That

17  advance work is necessarily collaborative, and I'm directing

18  that you do that work so you can meet the deadline.

19        The second thing that I want to just elaborate on is

20  that my individual rules of practice require the presentation

21  of a joint charge and a joint voir dire set of questions.  I

22  want to just make it very clear that I'm not requiring that the

23  parties agree on everything.  That would be inappropriate.  I'm

24  not asking you for you to agree on everything when I ask you to

25  provide me with a joint charge.

1        Instead, what I am doing is I'm asking you to provide

2   me with a single document that contains all of the parties'

3   proposed charges.  If there are objections to or proposed

4   alternative language with respect to an aspect of the charge, I

5   ask that you include it in the same document with as much

6   specificity as possible.

7        To the extent that there is an objection or an

8   alternative formulation of language, again, it should be

9   presented with as much specificity as possible and it should be

10  supported by reference to relevant precedent or secondary

11  sources.

12       The reason why I'm doing this is because, as you know,

13  frequently parties will provide two complete dueling sets of

14  charges, which will be different but which will have very few

15  substantive differences, and to find the substantive

16  differences the parties and the Court have to pick through each

17  of the proposed charges.

18       Rather than doing that, I'm asking that the parties

19  work together and identify those areas with specificity where

20  you have substantive disagreements and present those

21  substantive disagreements in a way that will make it most

22  efficient for the Court and the parties to focus on and resolve

23  them.  That may mean that you'll present alternative

24  formulations of language in, for example, strikeout in a

25  blacklined version, or you may include a footnote noting the

1    language that is problematic.

2          Understand that I'll be evaluating the language that's

3    presented based on the merits of the language, not based on

4    where it's presented in the document.  So if your proposal is

5    in a footnote rather than in a mainline text, don't be

6    concerned that I will discredit it or undervalue it merely

7    because of its placement in that jointly submitted document.

8          The same is true for the joint voir dire requests.  I

9    do not deal with duplicate submissions.  Rather than having

10   each party give me a series of questions, many of which

11   substantially overlap, I am asking you to prepare a joint set

12   of voir dire questions.  Again, if one of you thinks that the

13   question proposed by your adversary is inappropriate in any

14   way, you should just note that in a footnote, and that will

15   make it easier for all of us to evaluate the requests and see

16   where there are real disputes.

17         That's all I have.  I will find a trial date for us

18   shortly.  I think that, thankfully, where we are in the

19   pandemic now, I hope that I'll be able to give you a firm,

20   fixed trial date.  It won't be in the near term.  It will

21   probably be sometime in spring of 2023, is my guess, looking at

22   the calendar now.  Your pretrial submissions will be due

23   substantially before that, though, so that I can resolve them

24   at the pretrial conference.

25         As I said, I'll refer you to the magistrate judge for

1    settlement conference, and I will provide about two months

2    between now and the time I think that you need to start working

3    on your pretrial submissions to allow you to focus on

4    settlement rather than trial.

5           That's it.  Anything else that we need to talk about

6    here before we adjourn?  Again, I apologize for starting so

7    late.  I thank you for your flexibility.

8           Counsel for plaintiff, anything else from you?

9           MR. SHALOM:  No, your Honor.

10          THE COURT:  Thank you.

11          Counsel for defendant.

12          MR. DEMPSEY:  No, your Honor.

13          THE COURT:  Thank you all.  This proceeding is

14   adjourned.

15          (Adjourned)

16

17

18

19

20

21

22

23

24

25